SHORT RECORD
NO. 24-8020
FILED 09/11/2024

No. _____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

JAMES G. THOMAS and ROXANNE G. THOMAS, individually and on behalf of all others similarly situated,

     *Plaintiffs – Petitioners,*

v.

GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY,

     *Defendants – Respondents.*

On Petition for Permission to Appeal from the
U.S. District Court for the Northern District of Illinois,
Case No. 20-cv-4306 – Hon. Sharon Johnson Coleman

**PETITION FOR PERMISSION TO APPEAL PURSUANT TO
FED. R. CIV. P. 23(f) FROM ORDER DENYING CLASS CERTIFICATION**

Robert L. Schug
   *Counsel of Record*
Matthew H. Morgan
Martin A. Sandberg
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200

Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
STEPHAN ZOURAS, LLC
222 W. Adams Street
Suite 2020
Chicago, IL 60606
Telephone: (312) 233-1550

David A. Neiman
ROMANUCCI & BLANDIN LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
Telephone: (312) 313-7543

*Counsel for Plaintiffs-Petitioners*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Thomas, et al. v. GEICO Casualty Company, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

James G. Thomas, Roxanne G. Thomas, and the putative class
_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Nichols Kaster, PLLP; Stephan Zouras, LLC; Romanucci & Blandin LLC
_____

(3)   If the party, amicus or intervenor is a corporation:

i)   Identify all its parent corporations, if any; and

N/A
_____

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A
_____

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A
_____

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A
_____

Attorney's Signature: s/Robert L. Schug          Date: September 11, 2024

Attorney's Printed Name: Robert L. Schug

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑   **No** ☐

Address: Nichols Kaster, PLLP, 4700 IDS Center, 80 South 8th Street, Minneapolis, MN 55402
_____

Phone Number: (612) 256-3200          Fax Number: (612) 338-4878

E-Mail Address: schug@nka.com

rev. 12/19 AK

# TABLE OF CONTENTS

APPEARANCE AND CIRCUIT RULE 26.1 DISCLOSURE STATEMENT .............. ii

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ............................................................................................... 1

FACTS NECESSARY TO UNDERSTAND THE APPEAL ........................................ 2

QUESTION PRESENTED ................................................................................ 12

RELIEF SOUGHT ........................................................................................... 12

REASONS FOR GRANTING THE PETITION ...................................................... 12

    I.    The legal standard for a petition for permission to appeal under Rule 23(f) of the Federal Rules of Civil Procedure .............................................. 12

    II.   Review under Rule 23(f) is warranted because the district court's decision to deny class certification sounds the death knell for the litigation and is a manifest abuse of discretion ......................................... 13

CONCLUSION .................................................................................................. 18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..................... *post*

ATTACHMENTS:

Exhibit A: Memorandum Opinion and Order, ECF No. 208, 3/12/24 ..................... *post*

Exhibit B: Minute Order, ECF No. 215, 8/28/24 ....................................... *post*

Exhibit C: Report of Birny Birnbaum, ECF No. 122-7, Ex 10 ................................ *post*

Exhibit D: Supplemental Decl. of Birny Birnbaum, ECF No. 210-1, Ex A ............ *post*

CERTIFICATE OF SERVICE ................................................................................ post

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Int'l Truck & Engine Corp.*,
    358 F.3d 469 (7th Cir. 2004) .................................................................. 18

*American Honda Motor Co., Inc. v. Allen*,
    600 F.3d 813 (7th Cir. 2010) .................................................................. 14

*Blair v. Equifax Check Services, Inc.*,
    181 F.3d 832 (7th Cir. 1999) ............................................................ 12–14

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) .................................................................. 14

*Clausen v. M/V NEW CARISSA*,
    339 F.3d 1049 (9th Cir. 2003) ................................................................ 17

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..................................................................................... 9

*Daubert v. Merrell Dow Pharms.*, Inc.,
    509 U.S. 579 (1993) ..................................................... 2, 9, 12, 14–17

*Kogl v. Goodyear Tire & Rubber Co.*, No. 1:20-CV-01193-RMR-MDB,
    2023 WL 7458358 (D. Colo. Mar. 13, 2023) ......................................... 17

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................... 15, 18

*Lapsley v. Xtek, Inc.*,
    689 F.3d 802 (7th Cir. 2012) ........................................................ 2, 14–15

*Manpower, Inc. v. Ins. Co. of Pa.*,
    732 F.3d 796 (7th Cir. 2013) .................................................................. 15

*Orange Cnty. Water Dist. v. Unocal Corp.*, No. SA-CV-0301742-CJC-ANX,
    2017 WL 11626204 (C.D. Cal. Jan. 31, 2017) ...................................... 18

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
    704 F.3d 489 (7th Cir. 2013) ........................................................... 12–13

*Scott v. Dart,*
99 F.4th 1076 (7th Cir. 2024) ................................................. 14

*Smith v. Ford Motor Co.,*
215 F.3d 713 (7th Cir. 2000) ................................... 15, 17–18

*Stollings v. Ryobi Techs., Inc.,*
725 F.3d 753 (7th Cir. 2013) ............................................. 18

*Wendell v. GlaxoSmithKline LLC,*
858 F.3d 1227 (9th Cir. 2017) ........................................... 17

**Rules**

Fed. R. Evid. 702 ............................................... 9, 15, 17

# INTRODUCTION

This is the type of case that warrants interlocutory review under Rule 23(f). Plaintiffs bring class action claims under the Illinois Consumer Fraud Act challenging GEICO's misapplication of pre-pandemic auto insurance rates during the changed circumstances of the COVID-19 pandemic. In support of their motion for class certification, Plaintiffs offered the opinions of their expert, Birny Birnbaum, a former insurance regulator with more than 30 years of experience in insurance with a particular focus on rates and risk classifications. Mr. Birnbaum provided a pre-certification expert report outlining the common methodologies that he would employ at the merits stage to establish liability and calculate damages for the entire class.

On Plaintiffs' motion for class certification, the district court agreed that Plaintiffs' claim of unfair conduct presented common questions for trial and that the requirements of Rule 23(a) were satisfied. The court concluded that "GEICO's allegedly unfair practice, which was applied to every GEICO customer, has the potential of satisfying or not satisfying Plaintiffs' claims of the practice offending public policy, is immoral or unethical, or resulted in substantial injury." (ECF No. 208, Order (attached to petition as Exhibit A) at 9.) Despite this, the district court found deficiencies under Rule 23(b)(3) because, in the court's view, Mr. Birnbaum had not provided a reliable methodology for establishing classwide proof of damages. The court granted GEICO's motion to strike Mr. Birnbaum's expert report and denied class certification.

The district court erred. The district court acknowledged that Mr. Birnbaum's proposed methodology cited to recognized industry standards of insurance ratemaking. (Ex. A at 6-8.) And the court made clear that there was no issue with "the accuracy of the methodology or its conclusion[.]" (*Id.* at 7.) Yet the court nonetheless held that Mr. Birnbaum's methodology was somehow unreliable as applied to the unique circumstances presented by the COVID-19 pandemic. (*Id.*) The district court's *Daubert* analysis cast aside well-worn law requiring a fact-dependent and flexible framework for the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012). Instead, the district court employed a rigid and restrictive approach, striking Mr. Birnbaum's opinions merely because he proposed to apply well-settled principles and analyses to new and novel circumstances.

This case presents a textbook example of why Rule 23(f) exists. The district court's flawed decision to strike Plaintiffs' expert and deny class certification is plainly erroneous and sounds the death knell for this case. Now is the time for this Court to remedy the district court's error.

## FACTS NECESSARY TO UNDERSTAND THE APPEAL

**1. The facts.** As the COVID-19 pandemic reached the United States in early 2020, many states, including Illinois, took measures to slow the virus's spread. (ECF No. 79, 2d Am. Compl. ¶¶ 10–17.) Beginning on March 13, 2020, the Governor issued a series of social-distancing orders, including a prohibition of non-essential travel and

the closure of schools and businesses.[1] As a result, the number of miles driven in Illinois dropped dramatically. For instance, miles driven in late March 2020 and April 2020 were down more than 60%. (ECF No. 120-3, Ex. 8 at 5-8.) There were also fewer accidents and auto insurance claims. (ECF No. 79 ¶¶ 18-24.) The Illinois State Police reported that between April 1, 2020 and April 26, 2020 alone, statewide car crash rates had dropped by more than half. (ECF No. 120-4, Ex. 9.)

This reduction in driving and accidents resulted in a dramatic decrease in the frequency of insurance claims, and fewer losses for insurers to cover. (ECF No. 122-7, Ex. 10 (Birnbaum Report) (attached to petition as Exhibit C)[2] ¶¶ 41–47.) As a result, the price that insurers charged for automobile insurance immediately became excessive, creating the need for insurers to issue premium credits or refunds. (*Id.*) One report issued after the onset of the COVID-19 pandemic conservatively estimated that, at minimum, a 30% refund of premiums would be necessary to correct the resulting unfair windfall to insurers for just the first six weeks of the pandemic alone. (ECF No. 120-3, Ex. 8 at 12–13.) And many insurers did issue some form of premium relief. But it was far from enough. For instance, as of mid-2021 it was reported that Illinois insurers still owed their policyholders an estimated additional refund of about $99 per car on average for 2020 alone. (ECF

---

[1] *See* COVID-19 Executive Orders, Illinois.gov, https://www.illinois.gov/government/executive-orders.html.
[2] Petitioner cites to the March 3, 2022 Report of Birny Birnbaum, an unredacted and sealed version of which was filed in conjunction with Plaintiffs' Motion for Class Certification as Exhibit 10 at ECF No. 122-7. A copy of the same was later filed unredacted publicly with Plaintiffs' Response to Motion to Strike as Exhibit 1 at ECF No. 145-2.

No. 120-6, Ex. 11.)

GEICO is among the auto insurers that failed to issue adequate COVID-19 premium relief and, as a result, enjoyed a substantial windfall in profits. GEICO dubbed its premium relief program the "GEICO Giveback." On April 6, 2020, GEICO's Executive Vice President Greg Kalinsky emailed other GEICO executives, including CEO Todd Combs, referencing insurance competitor Allstate's decision to provide premium relief and suggesting that GEICO do something similar. (ECF No. 122-8, Ex. 14.) The purpose of such premium relief, according to Kalinsky, was to avoid cancellations by "announcing a potential dividend in advance" and to respond to "external pressure." (*Id*.) GEICO's Rule 30(b)(6) witness acknowledged that it "didn't want people talking a lot about Allstate or State Farm or Progressive giving them back money and have nothing to say about GEICO." (ECF No. 122-1, Hackman 30(b)(6) Dep. 82:6–9.) GEICO generally considered internal summaries of daily claims data and its own cashflow in creating the Giveback program, but GEICO's witness could identify no specific actuarial principles that were used to determine the appropriate amount of premium relief based on reduced risk from the pandemic. (*Id*. at 79:1–80:4.)

On April 7, 2020, the day after Kalinsky's email, CEO Todd Combs internally announced the GEICO Giveback. (*Id*. at 53:4–10.) The program provided a one-time, forward-looking 15 percent premium credit on all new and renewal 6-month personal auto and RV policies starting on or after April 8 and before October 8, 2020, and for all 12-month motorcycle policies starting on or after April 8, 2020, to

4

April 7, 2021. (ECF No. 122-6, Ex. 7 at GEICO-030636.)

But GEICO offered no retroactive relief for consumers who had paid excessive premiums since the start of the pandemic and provided no additional premium relief as the pandemic continued. (*See id.* at GEICO-030636; *see also* Hackman 30(b)(6) Dep. 36:22-37:18, 38:16-20; ECF No. 122-5, Ex. 6.)

 **2. Plaintiffs' case**. The Complaint was filed on July 22, 2020.[3] (ECF No. 1.) Plaintiffs, two GEICO policyholders, brought claims challenging GEICO's unfair and deceptive application of pre-pandemic auto insurance rates during the changed circumstances of the COVID-19 pandemic. (2d Am. Compl., ECF No. 79.) GEICO moved to dismiss. The district court denied GEICO's motion with respect to Plaintiffs' counts under the Illinois Consumer Fraud Act for unfair conduct and deceptive conduct. (ECF No. 43.)

Following an initial period of bifurcated discovery, Plaintiffs filed their motion for class certification on May 5, 2022. (ECF No. 122, 133, 137.) GEICO opposed and filed a motion to strike the opinions of Plaintiffs' liability and damages expert, Birny Birnbaum. (ECF Nos. 129, 145, 151.) Mr. Birnbaum's opinions are the focal point of this petition and are summarized below.

**3. The expert opinions of Birny Birnbaum.** Birny Birnbaum is an economist and former insurance regulator with more than 30 years of experience in insurance issues, and with a particular focus on rates and risk classifications. (Ex. C ¶¶ 17–29

---

[3] The current Plaintiffs, James and Roxanne Thomas, were later substituted for the original Plaintiff. (*See* 2d Am. Compl., ECF No. 79.)

and App'x B.) Mr. Birnbaum provided a pre-certification expert report outlining the

common methodology that he would employ at the merits stage of the litigation to

establish liability and calculate damages for the members of the putative classes.

(*Id.* ¶¶ 30–73.)

First, Mr. Birnbaum outlined how auto insurance rates are calculated, and

that rates should accurately reflect the cost of the transfer of risk from the

consumer to the insurance company. (*Id.* ¶¶ 5–7, 30–40.) He explained that, under

industry standards, rates may not be "excessive, inadequate or unfairly

discriminatory." (*Id.* ¶¶ 5, 34.) Reasonable rates should reflect the expected costs of

acquiring, servicing, and providing benefits under the policy. (*Id.* ¶ 5.) Mr.

Birnbaum noted that, in general, ratemaking is "a prospective estimate of the

future costs associated with the transfer of risk." (*Id.* ¶ 31.) It is "an effort to

estimate the future costs of insurance coverage provided." (*Id.* ¶ 40.) He explained

that "[i]n estimating the future costs for rates for PPA insurance, the insurer relies

largely on historical experience with relatively minor adjustments to project that

historical experience into expected future experience." (*Id.* ¶ 32.)

Mr. Birnbaum next set out the basic formula for calculating an insurance

rate: **(Expected Claim Costs + Fixed Expense) / (1 – Variable Expense)**

(*Id.* ¶ 38.) He outlined each of the major components of an auto insurance rate, and

how they are used by insurers to develop reasonable rates. (*Id.* ¶¶ 33–39.) He cited

industry authorities and standards including, for instance, the Casualty Actuarial

Society's Statement of Principles Regarding Property Casualty Ratemaking, and

the Model Laws of the National Association of Insurance Commissioners. (*Id*. ¶¶ 30–34 n.5–7, 9–11.)

Second, Mr. Birnbaum discussed the effect of the COVID-19 pandemic on auto insurance rates. (*Id*. ¶¶ 8–9, 41–47.) He noted that because of the pandemic and the related stay-at-home orders, then-existing rates immediately became excessive due to the sudden and drastic reduction in driving and resulting drop in the likelihood of claims. (*Id*.) As Mr. Birnbaum explained:

> The pandemic rendered PPA rates excessive practically overnight. The pandemic also rendered traditional ratemaking methods unreliable because the recent past was no longer a reliable basis for estimating future insurance costs. A program of temporary premium relief was necessary to avoid excessive rates resulting in windfall profits to PPA insurers.

(*Id*. ¶ 45.)

Third, Mr. Birnbaum analyzed the specific premium relief provided by GEICO through its "Giveback" program, the company's stated rationale, and the insufficiency of the relief provided. (*Id*. ¶¶ 10–13, 48–54.) For instance, the Giveback did not provide any relief to existing policyholders and failed to provide adequate prospective relief. (*Id*. ¶¶ 53–54.)

Fourth, Mr. Birnbaum set forth in detail the methodology that he would use at the merits stage to calculate the damages owed to each of the class members. (*Id*. ¶¶ 55–73.) Specifically:

- The damage methodology will start with the claim and expense assumptions embedded in GEICO's rates in effect on March 21, 2020, examine the information reviewed by or reasonably available to GEICO regarding changes in expected claims and expenses, and quantify the difference or amount of decline in expected costs of the

transfer or risk.

- The reasonable premium relief is the amount of premium reduction reasonably determined based on the facts known or that should have been known at the time GEICO initially decided on the amount and method of application of their premium relief program and as events unfolded throughout the pandemic.

(*Id.* ¶¶ 62–63.) Mr. Birnbaum outlined the standard data and business records that he would use in his analysis and explained that his methodology is "grounded in industry standards for the reasonableness of insurance rates and will be based on information produced by GEICO's systems." (*Id.* ¶ 67) Because the district court had bifurcated discovery into class certification and merits phases, the data needed to perform these calculations would not be obtained until the merits phase of the case. Nevertheless, Mr. Birnbaum provided detailed examples of his calculations based on the experience of the Named Plaintiffs and using assumptions for the amount of premium relief that may be owed. (*Id.* ¶¶ 70–73.)

**4. The class certification order.** On March 12, 2024, the district court denied Plaintiffs' motion for class certification and granted GEICO's motion to strike Mr. Birnbaum's expert report. (Order, Ex. A.) The district court correctly held that each of the elements of Rule 23(a) were satisfied with respect to Plaintiffs' claims for unfairness under the Illinois Consumer Fraud Act. (*Id.* at 8-12.) The court concluded that "GEICO's allegedly unfair practice, which was applied to every GEICO customer, has the potential of satisfying or not satisfying Plaintiffs' claims of the practice offending public policy, is immoral or unethical, or resulted in substantial injury." (*Id.* at 9.)

But the district court found that Plaintiffs failed to satisfy predominance under Rule 23(b)(3) because they could not show that their damages model is "capable of measurement on a classwide basis." (*Id.* at 12-13 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).) This was true, according to the court, because Mr. Birnbaum had not provided a reliable damages methodology under *Daubert* and Fed. R. Evid. 702. (*Id.* at 5-8.) The court reasoned that Mr. Birnbaum's proposed methodology did not satisfy *Daubert* because he cited only the standards for "ordinary PPA insurance ratemaking," and not standards for determining what a "reasonable rate" should have been during the COVID-19 pandemic. (*Id.* at 7.) Because, in the court's view, Mr. Birnbaum had not shown that his methodology was "supported by industry standards," the court granted GEICO's motion to strike. (*Id.* at 7-8.) The district court made clear, however, that the court did "not disagree with the accuracy of the methodology or its conclusion[.]" (*Id.* at 7.)

The district court gave Plaintiffs 30 days to "produce a sound method to prove damages" and cure the identified deficiencies. (*Id.* at 8, 13.)

**5. Plaintiffs' supplemental brief.** In response to the district court's invitation, Plaintiffs filed a supplemental brief and supporting declaration from Mr. Birnbaum on April 11, 2024. (ECF No. 210; ECF No. 210-1, Ex. A (Supp. Decl. of Birny Birnbaum) (attached to petition as Exhibit D).) Plaintiffs confirmed that Mr. Birnbaum's methodology was, in fact, supported by recognized industry standards. Plaintiffs explained, for instance:

- **Mr. Birnbaum's methodology evaluates the components of**

**traditional ratemaking.** Mr. Birnbaum's analysis would begin with the assumptions embedded in the components to GEICO's rates that were in effect on March 21, 2020, at the onset of the pandemic. (Ex. C ¶ 62.) This includes historical trends in claim frequency (the number of claims divided by the number of insured vehicles), claim severity (the average cost of claims divided by the number of claims), expenses (such as the cost of settling claims, operational and administrative costs, taxes, licenses, fees, and commissions), and profit. (*Id.* ¶ 35)

Next, he would evaluate the data reviewed by, or reasonably available to, GEICO regarding how the pandemic was expected to affect each rate component at the time GEICO made the decision to offer premium relief. (*Id.* ¶ 62.) Specifically, Mr. Birnbaum would review the daily number of new claims filed and claim frequencies from January 1, 2018, through the pandemic period; GEICO's internal analyses of claim frequency and severity before and after March 21, 2020; and GEICO's internal analyses of actual and expected changes in claim settlement expenses and other expenses as a result of the pandemic. (*Id.* ¶ 64.) Third, Mr. Birnbaum would quantify the difference or amount of decline in expected costs of the transfer of risk. (*Id.* ¶¶ 62.) This decline would be expressed as a percentage of premium, *i.e.* reasonable premium relief. (*Id.* ¶ 70.)

- **Mr. Birnbaum's methodology is consistent with standard practices in the insurance industry.** In his supplemental declaration, Mr. Birnbaum confirmed that his methodology is grounded in bedrock guidance, including the Principles of Casualty Actuarial Ratemaking and other fundamental texts, that

represent an industry standard used by insurers and insurance regulators. (Ex. D ¶¶ 7-9.) Mr. Birnbaum explained that insurance regulators and others routinely review insurance rate filings for completeness and for the reasonableness of the rate development assumptions and, consequently, the reasonableness of the proposed rates. (*Id.* ¶ 16-17.) He explained that this methodology—reviewing the insurer's rate development assumptions for reasonableness—is standard across most property-casualty lines of insurance including homeowners, personal and commercial auto, and credit-related insurance, such as force-placed property insurance. (*Id.* ¶ 19.) Plaintiffs and Mr. Birnbaum provided specific examples of this, both from GEICO's own rate filings, and from other insurers conducting refund analyses in response to the COVID-19 pandemic. (*Id.* ¶¶ 17-19; *see also* ECF No. 210 at 7-8.)

- **Mr. Birnbaum's methodology is not a retroactive calculation of "excess profits."** Plaintiffs explained that Mr. Birnbaum's proposed damages methodology did not compute "excess profits," or attempt to calculate a "return" as the district court surmised. (ECF No. 210 at 9.) Mr. Birnbaum's analysis and damages methodology did not alter the targeted profit provision of 5% selected by GEICO in its most recent rate filing made prior to the pandemic. (Ex. D ¶¶ 20–28.) Instead, Mr. Birnbaum's methodology would assess the expected changes in claim, claim settlement, and expense costs as of the time GEICO announced the Giveback program. (*Id.* ¶ 24.)

**6. The court's second order; this petition.** Via minute order on August 28, 2024,

11

the district court affirmed its previous order. (ECF No. 215, Minute Order (attached to petition as Exhibit B).) This petition for review follows.

## QUESTION PRESENTED

Whether the district court erred in striking the opinions of Plaintiffs' expert and denying class certification based on a misapplication of the fact-dependent and flexible framework for analyzing the admissibility of expert testimony under *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993) and its progeny.

## RELIEF SOUGHT

This Court should grant review of the class certification order and motion to strike pursuant to Rule 23(f), order full merits briefing, and reverse the district court's orders.

## REASONS FOR GRANTING THE PETITION

**I.** **The legal standard for a petition for permission to appeal under Rule 23(f) of the Federal Rules of Civil Procedure.**

Under Fed. R. Civ. P. 23(f), this Court has "unfettered discretion" to permit an appeal from an order granting or denying class action certification. *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) (quoting 1998 advisory committee's notes). No "bright-line test or catalog of factors governs the wisdom of interlocutory appeal under Rule 23(f)." *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 497 (7th Cir. 2013) (quoting *Blair*, 181 F.3d at 834) (cleaned up). However, this Court has identified three situations when such an appeal may be appropriate.

The first is where the "denial of class status sounds the death knell of the

litigation, because the representative plaintiff's claim is too small to justify the expense of litigation." *Blair*, 181 F.3d at 834. "[W]hen denial of class status seems likely to be fatal, and when the plaintiff has a solid argument in opposition to the district court's decision, then a favorable exercise of appellate discretion is indicated." *Id.*

The second (not at issue here) is when class status "so greatly expands the defendant's potential liability so as to coerce a settlement, even if meritorious[.]" *Reliable Money Order*, 704 F.3d at 497 (citing *Blair*, 181 F.3d at 834-35). Here again, "the appellant must demonstrate that the district court's ruling on class certification is questionable—and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Blair*, 181 F.3d at 835.

The third is when an interlocutory appeal "may facilitate the development of the law." *Id.* "Because a large proportion of class actions settle[] or [are] resolved in a way that overtakes procedural matters, some fundamental issues about class actions are poorly developed." *Id.* "When the justification for interlocutory review is contributing to development of the law, it is less important to show that the district judge's decision is shaky." *Id.* This is because the "[l]aw may develop through affirmances as well as through reversals." *Id.*

## II. Review under Rule 23(f) is warranted because the district court's decision to deny class certification sounds the death knell for the litigation and is a manifest abuse of discretion.

**A. Death knell.** Review is warranted because the district court's flawed

*Daubert* analysis at class certification sounds the death knell for Plaintiffs' case. *See Blair*, 181 F.3d at 834. Absent interlocutory review, Plaintiffs will be required to proceed through merits discovery, summary judgment, and trial, all without the rest of the class members in tow. This is simply not a case where that makes sense. Mr. Birnbaum's preliminary analysis estimated Plaintiffs' <u>maximum</u> recovery to be around $700. (Ex. C ¶¶70-72.) The cost to take the case through trial on the merits would dwarf this amount. *See e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

**B. Abuse of discretion**. The district court's exclusion of Mr. Birnbaum's opinions is also plainly wrong. *See Blair*, 181 F.3d at 834. The district court cast aside well-settled law requiring "a fact-dependent and flexible" framework governing the admissibility of expert testimony. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012). Instead, the district court employed a rigid and inflexible approach, striking Mr. Birnbaum's opinions merely because he proposed to apply industry standard ratemaking principles and analyses to the novel circumstances of the COVID-19 pandemic. This was an abuse of discretion. *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 816 (7th Cir. 2010) (review of expert admissibility for abuse of discretion); *Scott v. Dart*, 99 F.4th 1076, 1088 (7th Cir. 2024) (same on decisions to deny class certification).

The legal standards for analyzing the admissibility of expert opinions are

well-worn. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.[4] The trial judge must "ensure that any and all expert testimony or evidence admitted 'is not only relevant, but reliable.'" *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). The testimony must have a reliable basis in the knowledge and experience of the relevant discipline. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

Critically, this analysis "is fact-dependent and flexible." *Lapsley*, 689 F.3d at 810. The Supreme Court in *Daubert* identified four factors for analyzing scientific evidence: whether the theory or technique has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field. *Daubert*, 509 U.S. at 593-94. However, "the Rule 702 test is a flexible one, and no single factor is either required in the analysis or dispositive as to its outcome." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). This flexibility makes sense. It allows for the test's

---

[4] Rule 702 was amended effective December 1, 2023. The parties briefed the *Daubert* issues in this case prior to the amendment and the district court did not distinguish between the old and new versions of the rule in its order.

adaptation to novel and unique situations, such as the once-in-generations COVID-19 pandemic at issue in the court below.

Yet the district court abandoned this flexibility in favor of a rigid approach to reliability. Although the court recognized that Mr. Birnbaum's methodology relied upon industry standards with respect to "ordinary PPA insurance, and/or determining what a *reasonable rate* would be[,]" and acknowledged that the court "[did] not disagree with the accuracy of the methodology or its conclusion," the court nevertheless held that the methodology was somehow unreliable as applied to novel circumstances of the COVID-19 pandemic. (Ex. A at 7-8.) The district court misapplied *Daubert* and its progeny and abused its discretion.

As the district court acknowledged, Mr. Birnbaum's proposed damages methodology involved (a) starting with the assumptions in GEICO's own pre-pandemic rates, including historical trends in claims frequency, severity, expenses, and profit; (b) evaluating how the pandemic was expected to affect each rate component at the time GEICO decided to offer premium relief; and (c) quantifying the difference, or amount of decline, in expected costs of the transfer of risk as a percentage of premium (i.e., reasonable premium relief). (Ex. C ¶¶ 62-70.) He cited to industry standards in support of his methodology, including the standard formula for calculating an insurance rate, the Casualty Actuarial Society's Statement of Principles Regarding Property Casualty Ratemaking, and Model Laws of the National Association of Insurance Commissioners. (Ex. C ¶¶ 30-39 & n.5-7, 9-11; *see also* Ex. D ¶¶ 16-19.) Not to mention the fact that GEICO had <u>itself</u> managed

to calculate premium relief for its policyholders in response to the COVID-19 pandemic, apparently without the aid of any actuarial methodology. (*See* ECF No. 122-1, Hackman 30(b)(6) Dep. 79:1–80:4.)

Contrary to the district court's reasoning, neither Rule 702 nor *Daubert* counsel against the admissibility of Mr. Birnbaum's methodology merely because it proposes to analyze industry-standard data, using industry-standard principles, within the context of the unique circumstances of the COVID-19 pandemic. Indeed, this Court and others have routinely warned against barring otherwise scientifically valid testimony just because it is new, novel, or has otherwise evaded the opportunity for scholarly review. *See Smith*, 215 F.3d at 720 (if an expert's "methodology is based on his extensive practical experience in [an] area, rather than novel methodology subject to publication, his failure to publish does not cast doubt on the reliability of his analytical technique."); *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1060 (9th Cir. 2003) ("Oil spills, fortunately, are a rare enough occurrence, and the opportunities for scholarly research are few. In such a situation, a lack of published studies should not bar otherwise scientifically valid testimony."); *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ("The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature . . . has not yet been completed."); *see also Kogl v. Goodyear Tire & Rubber Co.*, No. 1:20-CV-01193-RMR-MDB, 2023 WL 7458358, at *7 (D. Colo. Mar. 13, 2023) ("The Court is not surprised that [the expert's] opinions about the narrow issue of how the specific x-ray system used by

Goodyear for its own quality control purposes would be too particular, too new, or of too limited interest to be published and no susceptible to testing or peer review.") (cleaned up); *Orange Cnty. Water Dist. v. Unocal Corp.*, No. SA-CV-0301742-CJC-ANX, 2017 WL 11626204, at *14 (C.D. Cal. Jan. 31, 2017) (permitting use of models that were "slightly modified versions" of previously peer-reviewed models).

Because Mr. Birnbaum's opinions are reliably based on the knowledge and experience of the relevant discipline, *Kumho Tire Co.,* 526 U.S. at 149, the district court was not permitted "to decide whether [those opinions were] correct." *Smith*, 215 F.3d at 719. "The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Id.* "The jury must still be allowed to play its essential role as arbiter of the weight and credibility of expert testimony." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013).

## CONCLUSION

This Court should permit an appeal pursuant to Rule 23(f) in order to remedy the district court's manifest error in excluding the testimony of Plaintiffs' expert at class certification. Absent interlocutory review, the district court's order sounds the death knell for Plaintiffs' case. *See Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 470 (7th Cir. 2004) (review under Rule 23(f) where "the district court committed an error best handled by a swift remand").

September 11, 2024

s/Robert L. Schug
Robert L. Schug
   *Counsel of Record*
Matthew H. Morgan
Martin A. Sandberg
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200

Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
STEPHAN ZOURAS, LLC
222 W. Adams Street
Suite 2020
Chicago, IL 60606
Telephone: (312) 233-1550

David A. Neiman
ROMANUCCI & BLANDIN LLC
321 N. Clark Street
Suite 900
Chicago, IL 60654
Telephone: (312) 313-7543

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. I certify that this document complies with the type-volume limit of Fed. R. App. P. 5(c) because, excluding the parts of the document exempted by Fed. R. App., P. 32(f) this document contains 4,759 words.

2. I further certify that this document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century Schoolbook 12-point font size.

September 11, 2024                          s/Robert L. Schug
                                           Robert L. Schug

# EXHIBIT A

**to Petition for Permission to Appeal**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES G. THOMAS, et al.,            )
                                    )
                    Plaintiffs,     )      Case No. 20-cv-04306
                                    )
            v.                      )      Judge Sharon Johnson Coleman
GEICO, et al.,                      )
                                    )
                    Defendants.     )
                                    )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs James and Roxanne Thomas ("Plaintiffs"), on behalf of themselves and all others

similarly situated, brought suit against GEICO Casualty Company, GEICO Indemnity Company,

and GEICO General Insurance Company (collectively "GEICO" or "Defendants") for violating the

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").  Defendants move to

strike Plaintiffs' expert's testimony.  Plaintiffs oppose Defendants' motion to strike and seek class

certification.  For the reasons stated herein, the Court grants Defendants' motion [197] and denies

Plaintiffs' motion [196].

**Background**

Since 2013, Plaintiffs have been GEICO customers.  Plaintiffs renewed their insurance

policy with GEICO from January 22, 2020, to July 22, 2020.  Plaintiffs allege that Defendants

violated the ICFA when they engaged in unfair and deceptive practices.  Plaintiffs have been active

in litigating this case.

Plaintiffs assert that GEICO charged "excessive" premiums during the pandemic, which

failed to account for the dramatic reduction in driving during that time.  Specifically, Plaintiffs claim

the premiums were not reflective of driving risks, which insurance companies assess when

determining policy holders' premium rates.  Although GEICO instated a Giveback program, which

offered a potential premium credit of 15% upon new and renewal of customers 6- or 12-month policies, Plaintiffs allege the discount inadequately accounted for the diminished insurance risk pool during the pandemic. Plaintiffs state "GEICO provided no *retroactive* relief for consumers who had paid excessive premiums since the start of the pandemic and provided no additional premium relief as the pandemic continued." Plaintiffs allege such actions were unfair.

Plaintiffs' deception claim hinges on GEICO's FAQs section. In their FAQs, GEICO explained the Giveback program was created because "shelter in place laws have reduced driving," and they were "passing these savings on to [their] auto, motorcycle, and RV customers." Plaintiffs allege this description meant the customers would receive *all* savings, which was deceptive because customers only received a 15% discount and GEICO received a windfall of revenue. In his deposition, James Thomas stated GEICO probably guaranteed drivers more refunds.

Ultimately, Plaintiffs seek for GEICO to issue a refund for the "excessive" premiums. Plaintiffs seek monetary damages for (a) policies they entered or renewed with GEICO that had a start date of effectiveness before March 21, 2020, and before GEICO's Giveback program, but continued past March 21, 2020; and (b) policies they entered or renewed with GEICO after GEICO created its Giveback program. To determine what Plaintiffs' refund should be, or damages are, Plaintiffs rely on the testimony of Bernard "Birny" Birnbaum ("Birnbaum"), which Defendants move to strike.

In his report, Birnbaum explains that the *purpose* of his methodology is to calculate what refunds/damages Plaintiffs should receive for paying "excessive" insurance rates since the 2020 pandemic. The Court separates the methodology into two points for clarity. First, Birnbaum will calculate the rate GEICO should have charged for policies in effect on or after March 21, 2020, based on facts GEICO knew or should have known at the time it determined its rates, both related to policies entered before the pandemic and renewed or

2

new policies after GEICO implemented its Giveback program. This first step is the *reasonable rate*. The *reasonable rate* is like a standard calculation for a private passenger automobile ("PPA") insurance rate. One can argue that the two calculations differ because PPA rates determine rates based on *future* risks, whereas the *reasonable rate*, in this case, is *retroactive* since it determines today what rates should have been in 2020. However, both calculations analyze the transfer of risks. Birnbaum supports his *reasonable rate* calculation by citing to actuarial principles and model laws, which are rooted in PPA ratemaking. Second, Birnbaum will subtract the *reasonable rate* by the rate GEICO charged Plaintiffs. The difference between the first and second step is what GEICO would refund Plaintiffs. Birnbaum labels this refund *reasonable premium relief*.

Although the end date of the calculation is uncertain, as Birnbaum will need to assess GEICO's records at the merits stage, Birnbaum will perform his methodology to correspond with the relevant class members' policy dates of effectiveness.

Plaintiffs seek class certification for the following two classes:

<u>Unfairness class</u>. All Illinois residents who purchased or renewed personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the period from March 21, 2020, to present.

<u>Deception class</u>. All Illinois residents who purchased or renewed personal automobile, motorcycle, or RV insurance from GEICO during the period in which the GEICO giveback was in place and visited the "What if I'm driving less?" Or "Why are we doing this?" FAQs on GEICO's website.[1]

---

[1] The parties agree that not all unfairness class members visited the FAQs. In their class certification reply, Plaintiffs amended their original deceptive class definition with this present definition. During oral argument, Defendants did not object to such amendment. The Court therefore accepts the amendment.

**Legal Standard**

*Motion to Strike: Rule 702*

To rule on the admissibility of expert evidence the Court must decide whether the evidence offered is reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). When determining reliability, the Court's role is to assess whether the expert is qualified in the relevant field and to examine the methodology he used in reaching his conclusions. *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). When assessing reliability, the Court focuses on the expert's methodology, not his conclusions. *Kopplin v. Wisconsin Central Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). To be relevant, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795, 125 L. Ed. 2d 469 (referencing Fed. R. Evid. 702). The expert's proponent has the burden of establishing the admissibility of the expert's opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

*Class Certification: Rule 23(a) and Rule 23(b)*

To be entitled to class certification, Plaintiffs must satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternatives set forth in Rule 23(b). Rule 23(a) requires that a proposed class meet requirements of numerosity, typicality, commonality, and adequacy of representation. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also show that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)). The proponents need to further show that a class action is superior to other available methods of resolving the controversy. *Id.*

4

Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (internal quotation marks and citation omitted). Certification is proper only if, "after rigorous analysis," the Court is satisfied that the prerequisites of Rule 23 have been met. *Id.* at 33. Although Plaintiffs bear the burden of showing that a proposed class meets the Rule 23 requirements by preponderance of the evidence, they are not required to make that showing to a degree of absolute certainty. *Messner*, 669 F.3d at 811 (citations omitted); *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015).

**Discussion**

*Motion to Strike*

First, the Court will analyze Defendants' motion to strike Birnbaum's testimony. During oral argument, Defendants represented they do not dispute that Birnbaum is qualified. Similarly, Defendants do not dispute that his testimony is relevant. However, the parties disagree on whether Birnbaum's methodology is reliable, as required under *Daubert*, and whether it is admissible in this case.

Both in their briefing and oral argument, Defendants argue Birnbaum's methodology is unreliable and therefore cannot satisfy Federal Rule of Evidence 702. *See Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795, 125 L. Ed. 2d 469. Defendants argue that Birnbaum's methodology is not a recognized method. Defendants explain that the *reasonable premium relief* the Plaintiffs seek is applied retroactively, unlike other insurance calculations that are applied prospectively. Defendants argue such a method allows Birnbaum to determine what he believes GEICO should have charged for insurance rates based on what he knows now; whereas insurers usually issue premiums by assessing future risks based on information they know at that given time. According to Defendants, Plaintiffs seek to calculate excess profits. During oral argument, Defendants stated Birnbaum's methodology

is not sound because it is arbitrary, a novel calculation, not transparent, and has never been peer reviewed.

The Defendants support their assertions by showing that Birnbaum fails to cite to relevant examples, case law that found the method reliable, statutes, actuarial standards, model laws, or treatises that recognize *reasonable premium relief*. Defendants also argue that the sources Birnbaum does cite never reference the term *reasonable premium relief* or are not recognized in Illinois.

In response, Plaintiffs explain Birnbaum's methodology is rooted in industry standard and actuarial principles, which Birnbaum cites. Plaintiffs assert the standard Birnbaum will use is the same methodology that GEICO developed to create the Giveback program. Plaintiffs specify that the standards Birnbaum relies on explains that PPA rates may not be excessive, and thus should reflect the cost of the transfer of risks. Plaintiffs further attempt to clarify that the method is not applied *retroactively*, instead it is applied *prospectively*, as it is based on information GEICO knew at the time it decided the criteria and discount of the GEICO Giveback program.

The Supreme Court has provided a non-exhaustive list to aid courts when analyzing whether an expert's testimony is reliable. *Timm*, 932 F.3d at 994. Courts can consider (a) "whether the expert's theory 'can be (and has been tested),'" (b) if "it 'has been subjected to peer review or publication,'" (c) "the known or potential rate of error," and (d) "whether the expert's theory has achieved 'general acceptance' in the relevant expert community." *Id.* (quoting *Daubert*, 509 U.S. at 593–95, 113 S. Ct. at 2798, 125 L. Ed. 2d 4690). Ultimately, the correct assessment for courts to make when determining whether a methodology is scientifically valid is to focus on the soundness and care the expert demonstrated to draw their opinion. *Anderson v. Raymond Corp.*, 61 F.4th 505 (7th Cir. 2023) (holding that the expert's methodology was sound because it rested on recognized scientific principles).

Though not the focus of either party's argument, it is key that Birnbaum's methodology is sound *as a whole*. The only time Plaintiffs cited a standard to support their arguments is when referring to ordinary PPA insurance ratemaking, and/or determining what a *reasonable rate* would be. However, the methodology before the Court today is not an ordinary PPA insurance rate. Instead, determining the PPA rate is only *one* part to the methodology, as Birnbaum will first determine what the PPA rate or *reasonable rate* should have been and then subtract that rate by the rate GEICO charged the Plaintiffs.[2] The parties and Birnbaum agree that the methodology's purpose is to determine what *return* Plaintiffs should receive. Avoiding semantics, PPA rates determine *future costs*, while Birnbaum's methodology seeks to calculate *returns*. The two are hardly one in the same. The Court does not disagree with the accuracy of the methodology or its conclusion, but the Court cannot rule that Birnbaum's methodology is sound when the Plaintiffs only attempt to support half of his methodology.

To be clear, the Plaintiffs fail to raise in their briefing and oral argument that Birnbaum's report cites a recognized methodology that mirrors the *reasonable premium relief* methodology. It is not up to the Court to go on expedition to support or create Plaintiffs' arguments. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

The Court cannot simply rely on Plaintiffs' assertions that Birnbaum says that his methodology is rooted in industry standards. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (explaining "[t]he critical inquiry in determining the reliability of expert testimony under . . . *Daubert* is whether there is a connection between the data employed and the opinion

---

[2] The parties engage in extensive briefing on whether the *reasonable rate* is applied *retroactively* or *prospectively*. However, it is unnecessary for the Court to analyze these arguments because its decision does not depend on the definition of a *reasonable rate*.

offered; it is the opinion connected to existing data only by the ipse dixit of the expert that is properly excluded."). Plaintiffs must instead show how Birnbaum's methodology is supported by industry standards. They have not.

Plaintiffs argue that this Court should follow *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) (Freeman, J.), where a court found a different plaintiff's expert's testimony was reliable. However, that case involves a different expert, a different report, and is in a different state. The *Day* case is not binding on this Court and the Court does not find it persuasive for the same differentials above.

Related to Plaintiffs' damages methodology, the Court makes clear it did not "recognize" Plaintiffs' damages theory for its truth, when denying the Defendants' motion to dismiss. Instead, the Court gave Plaintiffs an opportunity to produce a sound method to prove damages. For now, Plaintiffs have failed to do so.

For these reasons, the Court grants Defendants' motion to strike.

*Class Certification[3]*

**1. Rule 23(a)**

*a. Numerosity*

Plaintiffs have demonstrated that their proposed classes are sufficiently numerous for class treatment. Numerosity requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). According to the Plaintiffs, the unfairness class will consist of 300,000 members and the deception class will consist of approximately 6,000, under the newly defined class. Obviously, joinder of thousands of plaintiffs would be impracticable. *See Marquez v.*

---

[3] The Court reminds the parties that a finding on the merits is inappropriate at this stage. The Court will consider the merits of this case only if they are relevant to determine if the Plaintiffs satisfy Rule 23's prerequisites for class certification. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

*Weinstein, Pinson & Riley, P.S.*, No. 14 C 739, 2017 WL 4164170, at *5 (N.D. Ill. Sept. 20, 2017) (Tharp, J.) ("Although there is no 'magic number' of class members for numerosity purposes, when a class reaches forty, joinder is typically considered impracticable."). Accordingly, Plaintiffs' proposed classes satisfy the numerosity requirement of Rule 23(a).

*b. Commonality*

Only a single common question is necessary to meet the Plaintiffs' burden of establishing commonality. *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016). Plaintiffs satisfy that there are common questions of law and fact related to the unfairness class but do not regarding the deception class.

*i. Unfairness Class*

Plaintiffs rely on seven questions of fact as to commonality for the unfairness class: (1) "[w]hether GEICO had a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;" (2) "[w]hether GEICO's insurance rates became excessive during the pandemic;" (3) "[w]hether the alleged conduct offends public policy, is immoral, unethical, oppressive, or unscrupulous, and/or causes substantial injury to consumers;" (4) "[w]hether GEICO intended for consumers to rely on the alleged unfair practices;" (5) "[w]hether the alleged unfair practices occurred in a course of conduct involving trade or commerce;" (6) "[w]hether the alleged conduct caused injury to the members of the Unfairness Class;" and (7) "[t]he proper calculation and measure of damages."

GEICO's allegedly unfair practice, which was applied to every GEICO customer, has the potential of satisfying or not satisfying Plaintiffs' claims of the practice offending public policy, is immoral or unethical, or resulted in substantial injury. Accordingly, Plaintiffs satisfy commonality concerning the unfairness class.

*ii. Deception Class*

Plaintiffs present five questions to establish commonality for the deception class: (1) "[w]hether GEICO's statement created a likelihood of deception or had the capacity to deceive;" (2) "[w]hether GEICO intended consumers to rely on the statement;" (3) "[w]hether the statement was made in the course conduct involving trade or commerce;" (4) "[w]hether the alleged conduct caused injury to the members of the Deception Class;" and (5) "[t]he proper calculation and measure of damages."[4]

Opposite of the unfairness class, the "common" questions Plaintiffs present for the deception class are mere recitals of the ICFA elements, which is insufficient for class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (explaining questions like "Is that an unlawful employment practice?" and "What remedies should we get?" are mere recitals, and thus insufficient to establish commonality). These questions do not demonstrate the extent of common injury suffered by the class members, and thus are insufficient for class certification.

*c. Typicality and Adequacy[5]*

Since Defendants have no direct objection to Plaintiff Roxanne Thomas serving as a class representative, the Court solely considers the typicality and adequacy of Plaintiff James Thomas.

Defendants argue that James Thomas is atypical and inadequate because (a) he testified that GEICO "probably" made a commitment to make additional refunds if the pandemic continued, which is not compensable under the ICFA, as such a belief is a breach of contract claim, and (b)

---

[4] Since the Court has accepted Plaintiffs' amendment to the deception class definition, Defendants' argument that the Plaintiffs have not demonstrated commonality since the proposed definition is overly broad is moot.
[5] Because the Defendants raise the same objections of James Thomas's adequacy and typicality, the Court analyzes the two factors together.

James Thomas renewed his GEICO policy and is still a GEICO customer today; therefore, he would be subjected to a materiality defense.

Rule 23 requires Plaintiffs' claims and defenses be typical to those of the entire class. Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) *(quoting Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)). Typicality is an important factor because it ensures the named plaintiffs vigorously litigate all classmates claims. *Id*. at 606.

Defendants' reasoning for its typicality opposition is unconvincing. Whether or not James Thomas's deposition testimony changes the nature of his claims, is not for the Court to decide now; such language interpretation will happen at the merits stage. *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 665 (N.D. Ill. 1996) (Castillo, J.) (explaining arguments presented regarding language interpretation of a document was pointless, as the case was at a class certification stage and not the merits stage). The cases that Defendants rely on to support their contention that James Thomas's claim is not compensable resolved issues at the motion to dismiss or summary judgment stage, after a trial, or is not binding on the Court. Too, the fact that James Thomas renewed his policy does not negate typicality, as the unfairness class's definition includes class members who renewed their policies.

Plaintiffs' and the potential unfairness class members' claims arise from the same course of action: GEICO not refunding the Plaintiffs for "excessive" premiums. Plaintiffs' claims and the potential class members claims arise from the same legal theory: a violation of ICFA. Accordingly, Plaintiffs have satisfied the typicality requirement.

The final requirement under Rule 23(a) is that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of

11

representation is composed of two parts: the adequacy of the named plaintiffs' counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). To be an adequate representative, the named plaintiffs must not have "antagonistic or conflicting claims." *Id.* at 598.

There is no dispute that the class counsel is experienced and qualified. Instead, Defendants assert the same arguments of James Thomas being inadequate as they do for him being atypical. For the reasons already stated, the Court rejects these arguments and finds James Thomas adequate because: (a) his claims are based on GEICO's allegedly unfair actions, a violation of the ICFA, which is the same for the proposed class; (b) he has shown his commitment to vigorously prosecuting the litigation, as he has sufficiently participated in the litigation; and (c) he does not have any interests antagonistic to the class, instead he shares the interest of receiving a refund for "excessive" premiums.

### 2. Rule 23(b)(3)

After determining Plaintiffs meet the Rule 23(a)'s requirement regarding the unfairness class, Plaintiffs must also show "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Plaintiffs assert that each essential element of the unfairness class will be met through common proof, applicable to the entire class.[6] "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). In addition, the Supreme Court has made clear that when a court evaluates class certification, plaintiff's

---

[6] Defendants did not raise direct arguments regarding this issue.

12

must show their damages model is capable of measurement on a class wide basis. *Comcast Corp.*, 569 U.S. at 34, 133 S. Ct. 1426. In *Comcast Corp.,* the Supreme Court found that the Third Circuit "ran afoul" to precedent when it did not conduct such an inquiry. *Id.*

Plaintiffs do not have a damages model. Like *Comcast Corp*, the Court reasons: without presenting a reliable methodology, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* Plaintiffs simply do not establish predominance; therefore, the Court need not analyze whether class treatment is the superior method of resolving the controversy. Consequently, the Court denies Plaintiffs' motion for class certification.[7]

**Conclusion**

For the reasons above, the Court grants Defendants' motion to strike Birnbaum's expert report and denies Plaintiffs' motion for class certification.[8] The Court gives Plaintiffs 30 days to cure these deficiencies.


IT IS SO ORDERED.


Date: 3/12/2024

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge

---

[7] Plaintiffs request that the Court bifurcate liability or other issues and grant their class certification motion if the Court found the individualization of issues is its basis for denying class certification. Because the outcome of this decision did not depend on the individualized issues, the Court denies Plaintiffs' request.

[8] Plaintiffs request for this Court to appoint David A. Neiman as additional class counsel. Since the Court denies Plaintiffs' motion for class certification, Plaintiffs' request for additional class counsel is moot.

# EXHIBIT B

**to Petition for Permission to Appeal**

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
### Eastern Division

James G Thomas, et al.

                        Plaintiff,

v.                                        Case No.: 1:20-cv-04306

                                        Honorable Sharon Johnson Coleman

GEICO Casualty Company, et al.

                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, August 28, 2024:

      MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs request this Court to reconsider its judgment granting Defendant's motion to strike expert Birny Birnbaum's testimony [208]. Plaintiffs label their current motion as a quot;supplemental brief," but request the Court reconsider its March 12, 2024, opinion. Therefore, the Court applies a motion to reconsider standard to this present motion. A court has broad discretion to revisit its interlocutory orders. See Solis v. Current Dev. Corp., 557 F.3d 772, 780 (7th Cir. 2009). A court will grant a motion to reconsider only for "compelling reasons," like a change in, or clarification of, the law, "not for addressing arguments that a party should have raised earlier." Id. Plaintiffs are not entitled to another bite at the apple. The Court was clear in its order when it stated that Birnbaum fails to cite a recognized methodology that mirrors Birnbaum's reasonable premium relief. When the Court gave Plaintiffs leave to "cure the deficiencies," it was to allow Plaintiffs to point to a methodology that Birnbaum relies on, which is reflective of reasonable premium relief. It was not an invitation for Plaintiffs to rehash old arguments, and insert some new, that do not address the Court's core discomfort with the presentation of Birnbaum's methodology. The Court acknowledges that Plaintiffs argue that Birnbaum's supplemental declaration suggests &quot;the difference between the premium calculated using the initial proposed rates versus the lower reasonable rates could be considered 'damages' to consumers who paid the excessive rates." But, again, such statement does not point to a methodology that says so, instead it is Birnbaum's statement. As the Court explained in its order, it cannot simply rely on Birnbaum's say so, "it is the opinion connected to existing data only by the ipse dixit of the expert that is properly excluded." See Gopalratnam v. Hewlett-Packard Co., 877 F.3d 771, 781 (7th Cir. 2017). The Court respectfully denies Plaintiffs motion [210]. Mailed notice. (ym)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and

criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT C

**to Petition for Permission to Appeal**

# EXHIBIT 10

## (Filed Under Seal)

*Thomas et al. v. GEICO Casualty Company, et al.*

**Case No. 1:20-cv-04306**

**In the United States District Court, Northern District of Illinois**

**March 3, 2022**

## I. Assignment

1. Attorneys for Plaintiffs James and Roxanne Thomas ("Plaintiffs") have asked me to provide analysis of and expert opinion on the following issues related to the certification of a proposed class of policyholders ("Class Members") in the above-captioned matter:

   a. The process and methods for developing private passenger automobile ("PPA")[1] insurance rates;

   b. The impact of the COVID-19 pandemic and related government responses on actual and expected PPA insurance claims on and after March 21, 2020;

   c. The impact of the COVID-19 pandemic and related government responses on PPA rates in effect on and after March 21, 2020;

   d. The GEICO[2] Giveback program for PPA insurance and the actuarial and economic analysis supporting the program;

   e. Whether the GEICO Giveback program provided reasonable and sufficient premium relief given information available to GEICO on and after March 21, 2020; and

   f. If the GEICO Giveback program was unreasonable and insufficient, whether the amount of reasonable and sufficient premium relief can be calculated using a uniform methodology across Class Members.

2. I am not offering an opinion on the merits of the case at this time. To the extent anything in this report may be construed as an opinion involving the merits, I reserve the right to amend or expand such opinions during the merits phase of the case.

---

[1] PPA includes all personal auto and recreational vehicle policies, including those for cars, motorcycles and RVs.
[2] As used in this report, "GEICO" refers to three subsidiary insurance companies of Berkshire Hathaway that offer and administer ("write") private passenger automobile insurance in Illinois and are the defendants in this lawsuit – GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company.

3.  I am being compensated at the rate of $675 per hour of professional time in this matter.  My compensation is not contingent on the outcome of any legal proceedings.

4.  Appendix A is a list of documents I relied upon in forming the opinions herein.  I reserve the right to expand upon or modify my analysis and opinions when additional information or evidence becomes available.

## II.  Summary of Opinions[3]

5.  An insurance rate is the price of insurance per unit of exposure.  Insurance rates should accurately reflect the cost of the transfer of risk from the consumer to the insurance company.  Industry standards require that rates not be excessive, inadequate or unfairly discriminatory.  Stated differently, reasonable rates should reflect the expected costs of acquiring, servicing and providing benefits under the policy of insurance.  Insurance rates are used to calculate the premium for a particular set of exposures – meaning a particular consumer and vehicle in the context of PPA.

6.  The biggest component of PPA insurance rates is the cost of benefits – claims payments – and claim settlement expenses, which are roughly 60% to 75% of the premium.  Other components of rates include commissions to insurance producers; other acquisition costs; general and administrative expenses; taxes, licenses and fees; other (non-commission) acquisition costs; and profit.

7.  The traditional process of developing PPA rates is based on the assumption that the near-future costs (for the period the rates will be in effect) will be similar to historical costs.  The development of the expected value of various rate components – claims, claims settlement expenses, acquisition costs, general and administrative – is largely based on historical experience projected into and adjusted for the future.

8.  Based on these principles, it was apparent that the pandemic and resulting government actions rendered current rates significantly excessive on and after March 21, 2020 because of the vast reduction in PPA claims. The frequency of PPA claims (and benefits paid under the policy) is closely tied to the number of motor vehicle accidents which, in turn, is closely tied to the number of vehicles on the road and miles driven in a particular area.  As government stay-at-home orders required some businesses to close and many employees to work from home, vehicle miles traveled dropped dramatically.  With the drop in miles driven and cars on the road, motor vehicle accidents and PPA claims also dropped dramatically.  The fact that PPA claims would decline dramatically as a result of the pandemic was obvious by mid-March 2020.

---

[3] Citations supporting these opinions are provided in the sections that follow.

9.  Because the assumptions underlying the rates in effect on March 21, 2020 were rendered unreliable and excessive due to the pandemic, the premiums that existing policyholders had paid became excessive. Absent premium relief for existing policyholders and ongoing relief from then-current rates, PPA insurers would reap windfall profits as a result of the pandemic.

10. Following other insurers, GEICO announced and implemented a PPA premium relief program, the "GEICO Giveback," in early April 2020. GEICO's Giveback program provided no premium relief for existing policyholders; rather, the credit was only applied to new and renewal auto insurance policies. GEICO applied a 15% credit to total premium to all personal auto and recreational vehicle policies with effective dates between April 8, 2020 and October 7, 2020 and all motorcycle policies with effective dates between April 8, 2020 and April 7, 2021.

11. According to the testimony of GEICO's corporate representative, the application of the credit was determined automatically and solely on the effective date of the policy. No individual consumer characteristics or considerations played a role in the application of the credit. No action was required of the consumer to receive the credit.

12. Based on the testimony of GEICO's corporate representative, there was little or no analysis supporting the amount or method of the GEICO Giveback program. Mr. Hackman testified that the amount and approach were selected by the CEO, based largely on an action a few days earlier by GEICO's competitor, Allstate, and a desire to retain existing customers by making the premium relief contingent upon a policy renewal.

13. GEICO's Giveback was unreasonable and inadequate for existing policyholders (those with policies with effective dates between October 8, 2019 and April 7, 2020) because no premium credit was provided even though the pandemic had made the premiums they paid excessive.

14. Whether GEICO's Giveback was reasonable and adequate for renewal and new policyholders requires analysis of information to be produced in the merits phase of discovery. But, based on analyses I had performed in 2020 of insurers' premium relief offerings, my preliminary review of the Giveback indicates that the 15% credit did not adequately reflect the amount that rates and premium had become excessive because of the pandemic and because, for personal auto and recreational vehicle policies, the credit was only applied for six months of coverage.

15. Based on a review of normal business records to be produced during the merits phase,[4] I will be able to identify each Class Member who falls within Plaintiffs' Class definition and will be able to calculate their individual damages as explained below.

---

[4] *See infra* at ¶¶ 64-69.

16. I will be able to calculate the amount of premium relief that was reasonable based on the information known to GEICO on or after March 21, 2020. The calculation of damages to Class Members is the difference between the reasonable premium relief and the amount of the GEICO Giveback credit, for Class Members who received the credit, or simply the amount of reasonable premium relief for Class Members who did not receive the credit. The damage methodology will be applied consistently and in a uniform manner based on the effective date of the Class Members' policies.

## III.    Qualifications

17. I am a consulting economist and former insurance regulator specializing in insurance regulatory issues, generally, and insurance rates and risk classifications, in particular. My knowledge and experience analyzing insurance rates as an insurance regulator and expert witness since 1991 is particularly relevant for this assignment.

18. I received my formal training at Bowdoin College and at the Massachusetts Institute of Technology ("MIT"). I received two Master's Degrees from MIT. The first degree was a Master of Management from the Sloan School with a concentration in applied economics and finance. The second degree was a Master of City Planning from the Department of Urban Studies and Planning with a concentration in community and regional economics.

19. Starting in 1991, I served as the Chief Economist for the Texas Office of Public Insurance Counsel ("OPIC"). OPIC is a Texas State agency dedicated to representing Texas insurance consumers as a class before the Texas Department of Insurance ("TDI"), the agency supervising insurance companies and producers. While employed at OPIC, I provided expert witness testimony in numerous contested case and rulemaking hearings regarding insurance rates and risk classifications, including rates for private passenger automobile insurance.

20. In November 1993, I began employment as Chief Economist and Associate Commissioner for Policy and Research for the TDI. My principal role at the TDI was senior adviser to the Insurance Commissioner on policy, ratemaking, data collection and other technical issues. I had responsibility and authority delegated from the Commissioner for the review and approval of insurance company rate and risk classification filings for several lines of insurance, including private passenger automobile insurance. I also represented the TDI on a variety of issues at the National Association of Insurance Commissioners ("NAIC").

21. In October 1996, I left TDI and began work as a consulting economist. Since then, I have had numerous consulting engagements with federal, state and local government agencies and consumer organizations. I have served as an expert witness on economic and actuarial matters in administrative, legislative and judicial proceedings involving insurance rates, risk classification and regulatory policy.

22. I have been retained by a number of public agencies. The Mayors of New York and Philadelphia retained me for expert analysis of private passenger automobile rates and risk classifications. The Federal Trade Commission retained me to assist in credit insurance litigation. The Florida Insurance Commissioner appointed me to arbitration panels reviewing homeowners' rate and risk classification filings. The Ohio Civil Rights Commission retained me to examine the impact of insurance companies' use of consumer credit information on the availability and affordability of residential property insurance to minority populations in Ohio. The United States Department of Housing and Urban Development retained me to analyze complaints of redlining in the sale of homeowners insurance in New York. The United States Department of Justice retained me as an expert in two lawsuits involving credit insurance sold by credit unions.

23. I also serve as the economic adviser to and Executive Director of the Center for Economic Justice ("CEJ"), an Austin, Texas-based non-profit that advocates on behalf of low income and minority consumers on credit, insurance and utility matters. CEJ's mission is to promote greater availability and affordability of basic services such as insurance, credit and utility products. I have written extensively on behalf of CEJ on a variety of insurance regulatory issues, including review of private passenger automobile insurance rates. Since March 2020, on behalf of the CEJ, I authored several analyses of the impact of the COVID-19 pandemic on current and future private passenger automobile insurance rates. I've also authored a primer on insurance ratemaking and insurance data for CEJ.

24. On behalf of the CEJ, I have served for many years as a designated consumer representative at the NAIC and have represented consumers on a wide variety of issues involving both financial regulation and market regulation, including regulation of insurance rates and risk classifications. I've made dozens of presentations to regulators at the NAIC on a variety of topics, including insurance data and insurance rates and risk classification. For example, I've recently made several presentations to the NAIC Casualty Actuarial and Statistical Task Force on review of complex ratemaking models, detecting and eliminating racial bias in insurance ratemaking and modernizing insurance regulatory data collection.

25. I have testified or been an invited speaker on insurance regulatory policy and practice before numerous legislative bodies, administrative agencies and professional organizations on a variety of insurance regulatory and policy issues, including presentations on insurance rates and risk classifications. I have testified before insurance commissioners and/or state legislatures in Alaska, Arizona, California, Colorado, Iowa, Florida, Georgia, Louisiana, Kansas, Massachusetts, Michigan, New Mexico, Nevada, Washington and Wisconsin. The Florida Insurance Commissioner appointed me as a member of the Florida Insurance Credit Scoring Task Force.

26. I have also been an invited speaker on insurance regulatory issues by the Casualty Actuarial Society, the National Conference of Insurance Legislators, the National Conference of State Legislators, the United Farmers Agents Association, the National Association of Professional Allstate Agents and the National Insurance Task Force of the National Reinvestment Corporation.

27. I have testified before Congress on insurance regulatory issues in 2007 on insurance credit scoring, in 2011 on insurance regulation, in 2012 on the impact of the Dodd Frank Act on insurance consumers and insurance companies and in 2013 and 2016 on federal flood insurance and lender-placed flood insurance.

28. Since 2011, I have served on the Federal Advisory Committee on Insurance ("FACI"). FACI advises the Director of the Federal Insurance Office. I have served as the Chair of the Subcommittee on Insurance Availability. From 2019 to 2021, I have served on the Federal Reserve Board's Insurance Policy Advisory Committee.

29. I have provided expert testimony on economic and actuarial issues in numerous civil cases involving insurance regulatory matters, including insurance rates. My resume detailing my experience, education, recent testimony and recent publications is attached to this report as Appendix B.

## IV.    Insurance Rates

30. An insurance premium is the price charged by an insurance company to a consumer for the transfer of risk from the consumer to the insurance company. The premium is calculated from rates developed by the insurance company to cover the expected costs of this transfer of risk.[5] A rate is the price per unit of risk exposure, while the premium is the price or charge for the particular risk exposure.[6]

31. In developing rates for PPA insurance (and most other lines of insurance), the insurer estimates the projected costs of insuring the members of its pool of risk for the period of time the rates will be in effect. Stated differently, ratemaking is a prospective estimate of the future costs associated with the transfer of risk.[7]

---

[5]  *See* "Statement of Principles Regarding Property Casualty Ratemaking" at
https://www.casact.org/sites/default/files/2021-05/Statement-Of-Principles-Ratemaking.pdf
[6]  *See* "Basic Ratemaking, Fifth Edition" at
https://www.casact.org/sites/default/files/old/studynotes_werner_modlin_ratemaking.pdf
[7]  *See* "Statement of Principles Regarding Property Casualty Ratemaking," *supra* at n.6.

32. In estimating the future costs for rates for PPA insurance, the insurer relies largely on historical experience with relatively minor adjustments to project that historical experience into expected future experience. First, the PPA book of business – the pool of insured consumers – changes slowly over time because the vast majority of consumers renew their policies. Second, non-catastrophe costs are relatively stable over time with general increases in costs due to rising medical costs and rising vehicle values.

33. The major components of rates and the methods for projecting the overall state-wide rates by coverage[8] are:

   a. Claims – the cost of claim payments;

   b. Claim (Loss) Adjustment Expense – the cost of settling claims;

   c. Commissions and Brokerage Expense – amounts paid to insurance producers (agents) for acquiring business;

   d. Other Acquisition Expense – costs other than commissions for acquiring business;

   e. General Administrative Expense – other operational and administrative costs;

   g. Taxes, licenses and fees – regulatory license and fee costs and taxes other than federal income taxes; and

   h. Profit – the after-tax return sought by the insurance company, net of investment income.

34. The industry standard for PPA rates found in model laws developed by the National Association of Insurance Commissions[9], in statutes in nearly every state[10] and in actuarial principles[11] is that rates may not be excessive, inadequate or unfairly discriminatory. A rate is excessive if the expected profit is unreasonably high. A rate is inadequate if the insurer's financial condition is put at risk.

---

[8] The major PPA coverages are: third party liability (bodily injury and property damage liability), first party medical (personal injury protection), physical damage (collision and comprehensive), and first party liability and physical damage (uninsured and underinsured motorist liability and property damage).
[9] *See* Section 5 of NAIC Model Guideline 1775, Property Casualty Model Rating Law (File and Use Version) at https://content.naic.org/sites/default/files/GL1775.pdf; Section 5 of NAIC Model Guideline 1776, Property and Casualty Model Rate and Policy Form Law Guideline at https://content.naic.org/sites/default/files/GL1776.pdf; and Section 4 of the NAIC Model Guideline 1780, Property and Casualty Model Rating Law (Prior Approval Version) at https://content.naic.org/sites/default/files/GL1780.pdf,
[10] *See* NAIC list of state laws regarding property casualty rate regulation at https://content.naic.org/sites/default/files/ST1780.pdf.
[11] *See* "Statement of Principles Regarding Property and Casualty Ratemaking," *supra* at n.6.

35. In determining reasonable rates, an insurer relies upon analysis of historical experience. For estimating claims, an insurer does the following:

   a. Analyze historical claim frequency and trends in claim frequency. Frequency is the number of claims divided by the number of exposures (which is the number of insured vehicles for PPA). Frequency trend is the analysis of how claim frequency has changed over time and is likely to change from the recent historical experience into the period the rates will be in effect.

   b. Analyze historical claim severity and trends in claim severity. Severity is the average cost of claims or total claim costs divided by the number of claims. Severity trend is the analysis of how claim severity has changed over time and is likely to change from the recent historical experience into the period the rates will be in effect.

   c. The combination of frequency and severity (frequency x severity) is called "pure premium" and is the expected claim cost per insured vehicle used in developing rates.[12]

36. The method of estimating expected claim costs can be seen in a 2018 rate filing by GEICO to the Illinois Department of Insurance.[13] Exhibit GC-1, Sheet 3[14] shows the application of loss trend to loss and loss adjustment expense, and Appendix 3[15] shows the analysis of loss trend by coverage.

37. The other components of the rate analysis also rely on historical data.

   a. Unallocated Loss Adjustment Expense ("ULAE") is calculated by dividing historical ULAE amounts paid by historical Loss plus Allocated Loss Adjustment Exponent ("ALAE") amounts paid. This percentage is then applied to the estimate of future Loss and ALAE.[16]

   b. Taxes, Licenses, Fees, Commissions and General Expenses and other Acquisition Expenses are calculated by dividing historical expenses in these categories by historical premium to produce percentage values.[17]

---

[12] In addition to adjusting historical claim expense based on trend analysis, more recent historical claim experience is adjusted for loss development. For some coverages that take longer for claims to be reported and fully settled, it may take several years for the full claim costs to be fully known. Insurers analyze the historical development of claims by coverage and apply loss development factors to estimate the final cost of more recent claims. For example, bodily injury liability will typically take longer to fully settle than collision claims and, consequently, will have greater loss development factors for the most recent claims experience.

[13] GEICO-000810 to 001341.

[14] GEICO-001048 to 001049.

[15] GEICO-001073 to 001079.

[16] Loss Adjustment Expense ("LAE") is comprised of two categories: allocated LAE and unallocated LAE. Allocated LAE is LAE that can be associated with a specific claim. Unallocated LAE is LAE not associated with a specific claim, including, for example, general expenses associated with the claim management function of an insurer. GEICO's rate filing shows Loss and ALAE and applies a ULAE factor. *See* GEICO-001048 to 001049 and GEICO-001080.

[17] GEICO-001082.

    c.  Profit is calculated by converting the desired after-tax return on invested capital into a percentage of premium, which is then offset by expected investment income.

38.    The basic formula for calculating a rate is to divide the sum of expected claim costs and expected fixed expenses by 1 minus variable expenses:

    (Expected Claim Costs + Fixed Expense) / (1 – Variable Expense)

39.    Fixed expenses in the formula are a portion of General and Other Acquisition Expenses, while variable expenses (calculated as a percentage of premium) include Commissions, a portion of General and Other Acquisition Expenses, Taxes, Licenses and Fees and Profit.

40.    In summary, insurance ratemaking is an effort to estimate the future costs of insurance coverage provided. The estimation process is based on a key assumption that the near future experience will largely resemble recent past experience for both claims and other expenses.

## V.    Pandemic Impact on Rates

41.    The COVID-19 pandemic and related government responses, such as business closings and stay-at-home orders,[18] suddenly and dramatically rendered existing PPA rates excessive and undermined the actuarial methods used to develop rates.

42.    The fact that PPA claim frequency would plummet on or after the beginning of March 2020 was obvious because there were far fewer vehicles on the road and far fewer vehicle miles traveled.  It was also obvious that absent premium relief payments by insurers back to policyholders, insurers would reap windfall profits.[19]

43.    The near instantaneous reduction in PPA claims was most easily seen by PPA insurers because insurers, including GEICO, track the number of new claims filed on a daily or weekly basis.  Insurers, including GEICO, saw in real time how fewer miles driven was driving down claim frequency.[20]

44.    The likelihood of claims – claim frequency – drops in two ways when many drivers stop driving.  First, the likelihood of the individual who stops driving having a claim drops dramatically.  Second, the likelihood of **any** driver – even one who continued to drive the same amount as the pandemic unfolded – getting into a motor vehicle accident declines because there are fewer vehicles on the road.

---

[18] *See* COVID-19 Executive Order No. 8 § 1(1) (Mar. 20, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx.

[19] *See* CFA/CEJ Letter of March 18, 2020 to State Insurance Commissioners at https://consumerfed.org/wp-content/uploads/2020/03/COVID-19-Auto-Premium-Relief-Letter.pdf

[20] *See* GEICO-030689 to 0691; Transcript of Deposition of B.J. Hackman at pages 58-60, 111-17.

45. The pandemic rendered PPA rates excessive practically overnight. The pandemic also rendered traditional ratemaking methods unreliable because the recent past was no longer a reliable basis for estimating future insurance costs. A program of temporary premium relief was necessary to avoid excessive rates resulting in windfall profits to PPA insurers.

46. Premium relief was needed for existing PPA policyholders because the assumptions underlying the rates in effect on March 21, 2020 were no longer valid. As discussed above, traditional ratemaking assumes gradual changes in claim frequency, severity and pure premium over time. But, because of the pandemic, the actual claim frequency and pure premium would have dropped precipitously from the amounts expected in the rates and premiums charged to policyholders.

47. Variation between expected and actual expenses for PPA are generally with a small range – a few percentage points – as measured as a percentage of premium. The pandemic created a unique situation in which insurers knew that their current rates in force would produce dramatically lower actual claims than the expected amounts in the then-current rates. Consequently, most insurers provided some premium relief to current policyholders.[21] As discussed below, GEICO did not provide premium relief to current policyholders, and provided inadequate relief to new and renewal policyholders.

## VI    GEICO Giveback

48. Following the actions of other insurers who provided premium relief, GEICO announced the GEICO Giveback. Under this program, GEICO provided a 15% premium credit (off of then-current rates) to all customers who purchased or renewed a policy for a personal auto or recreational vehicle between April 8, 2020 and October 7, 2021 and to all customers who purchased or renewed a policy for motorcycle insurance between April 8, 2020 and April 7, 2021. GEICO provided no relief for policyholders who purchased or renewed their policies prior to April 7, 2020. Consequently, a policyholder who purchased a policy on, say, March 1, 2020 and did not renew their six-month personal auto policy with GEICO received no premium relief under the GEICO Giveback program.[22]

---

[22] Transcript of Deposition of B.J. Hackman at pages 66-68; *see also* GEICO-030636.

49. GEICO provided the 15% premium credit to all policies – new and renewal – with effective dates during the April 7, 2020 to October 7, 2020 time period for personal autos and recreational vehicles and during the April 7, 2020 to April 7, 2021 time period for motorcycles. The credit was applied to the entire policy premium. GEICO applied the premium credit automatically and no action was required by the policyholder.[23] The Giveback was not based on any individual characteristics of policyholders, including driving habits.[24]

50. GEICO's corporate representative explained the different timeframes for application of the premium credit for personal auto and recreational vehicles versus motorcycles was because the former are six-month policies and the latter are 12-month policies.[25]

## VII. GEICO's Rationale and Analysis Supporting the Giveback Program

51. According to GEICO's corporate representative, there was little analysis supporting the 15% credit amount selected by GEICO. Mr. Hackman testified that the decision "might have been made April 6th" before the April 7, 2020 announcement and was not aware of discussions prior to April 6, 2020.[26] GEICO appeared to be following a competitor instead of relying upon internal analyses of changes in claims experience:

> A I think it was essentially, I think it was after Allstate announced their refund program or whatever they call that and it was kind of a, if we're going to consider something differently, we could figure out the systems to -- to do something. There were not a lot of details about exactly what that program would be.[27]
>
> Q Right. That was going to be actually my next question is what role did any of GEICO's competitors' actions have on GEICO's decision to implement the program.
>
> A I'm not sure, other than, I think, you know we didn't want people talking a lot about Allstate or State Farm or Progressive giving them back money and have nothing to say about GEICO.[28]

---

[23] Transcript of Deposition of B.J. Hackman at pages 43 to 44. *See also* pages 66-67.
[24] Transcript of Deposition of B.J. Hackman at page 95.
[25] Transcript of Deposition of B.J. Hackman at page 48. *See also* pages 66-67.
[26] Transcript of Deposition of B.J. Hackman at page 51.
[27] Transcript of Deposition of B.J. Hackman at pages 52-53.
[28] Transcript of Deposition of B.J. Hackman at page 82.

52. Although Mr. Hackman could identify data available within GEICO that would show the impact of the pandemic on claims,[29] he could not identify any analysis performed by GEICO in support of the selected 15% credit. Mr. Hackman also could not identify any external data GEICO used to determine the 15% credit (other than competitor actions).[30] At the time, vendors were compiling changes in vehicle miles driven based on mobile phone geolocation data.[31]

53. As discussed above, GEICO did not provide premium relief to existing policyholders. Premium relief for existing policyholders was reasonable and necessary because the assumptions about claims in the rates used to develop the premiums for the existing policyholders were rendered radically overstated on and after March 21, 2020. It is precisely the existing policyholders for whom premium relief was needed to avoid insurers taking windfall profits from those policies. GEICO's approach was to essentially lower rates going forward by 15%. This amount – though too low – reflected expected lower claim costs for new policies issued on or after April 7, 2020.

54. GEICO's approach also failed to provide adequate relief even on a prospective basis (for policies with effective dates on or after April 8, 2020) to personal auto and recreational vehicle policyholders based on the policy period covered. For personal auto and recreational vehicles, GEICO applied a 15% credit to six-month policies one time. But, for motorcycles, GEICO applied a 15% credit to 12-month policies one time. Consequently, while motorcycle policyholders received a 15% credit on premium for 12 months of coverage, personal auto and recreational vehicle policyholders receive a 15% credit on only six months of coverage. I'll perform the analysis of reasonable premium relief in the merits stage.

## VIII. Economic Harm to Class Members and Common Damage Methodology

55. Plaintiffs define the proposed Class as "[a]ll Illinois residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 21, 2020 to the present."[32]

56. Using GEICO's normal business records, I will be able to identify each Class Member who falls within the Class definition and the groupings in the next paragraph based on the effective date of the policy and will be able to calculate their individual damages as explained below. Documents and testimony provided by GEICO so far show that the Class will include several hundred thousand policyholders.[33]

---

[29] Transcript of Deposition of B.J. Hackman at page 59.
[30] Transcript of Deposition of B.J. Hackman at page 81.
[31] For example, StreetLightData was tracking vehicle miles driven by county, publishing data on a daily basis in April and May 2020. https://www.streetlightdata.com/transportation-metrics/#vmt
[32] Second Amended Complaint, ECF No. 79, ¶ 38.
[33] *See* GEICO-030689 to 0691 (providing summary data showing hundreds of thousands of policyholders during the Class period); Transcript of Deposition of B.J. Hackman at pages 111-17 (testifying that GEICO has access to relevant data on Class Members and Plaintiffs' claims).

57. Class Members who paid premiums during the proposed Class period would have sustained damages as a result of GEICO's inadequate premium relief. Class Member damages will be calculated as follows:

    a. For Class Members with policies having effective dates between October 8, 2019 and April 7, 2020 ("Existing Policyholders"), no premium relief was provided. Consequently, the economic harm was the amount of premium relief that should have been provided as a result of the premiums becoming excessive on or after March 21, 2020 as the impacts of the pandemic on motor vehicle crashes and insurance claims unfolded. The damage for this group of Class Members is the reasonable amount of premium relief for the pro-rata share of their policy term on and after March 21, 2020.

    b. For Class Members with personal auto and recreational vehicle policies having effective dates between April 8, 2020 and October 7, 2020 and with motorcycle policies having effective dates between April 8, 2020 and April 7, 2021, insufficient premium relief was provided. The damage for this group of Class Members is the reasonable amount of premium relief less the amount of the GEICO Giveback for that Class Member.

    c. For Class Members with personal auto and recreational vehicle policies having effective dates on or after October 8, 2020 through the end of the Class period (as determined at the merits stage), no premium relief was provided. The reduction of PPA claims extended beyond the April 8, 2020 to October 7, 2020 GEICO Giveback period. Further, GEICO provided a 15% credit for 12 months of motorcycle premium, but only applied the 15% credit for six months of premium for personal autos and recreational vehicles. The damage for this group of Class Members is the reasonable amount of premium relief less the amount of the GEICO Giveback, if any, for that Class Member.

    d. A Class Member may be included in one, two or all of the three groups. For example, a policyholder with a policy effective date of April 1, 2020 who did not renew their policy would be in the first group only. A policyholder with a policy effective date of April 1, 2020 and who renewed only once on October 1, 2020 would be in groups one and two. If this policyholder instead renewed again on April 1, 2020, they would be in groups one, two and three.

58. GEICO employed the same procedures to provide – or not provide – premium relief to policyholders as a result of the COVID-19 pandemic. The same premium relief – 15% of total premium – was provided to all policies with effective dates within specific timeframes. No premium relief was provided for any policy outside of the specific timeframes. No distinctions in the amount of premium relief were made, no actions by the policyholder were required, and no individual policyholder characteristics or motivations were considered.[34]

---

[34] Transcript of Deposition of B.J. Hackman at 27:20-28:3, 66:9-67:21, 95; *see also* GEICO-030636.

59.    The damage suffered by Class Members was either the absence of any premium relief or insufficient premium relief provided, as delineated in paragraph 57.  The damage suffered by the named Plaintiffs and other Class Members is the difference between the reasonable premium relief GEICO should have provided – considering reduced costs of the transfer of risk, predominantly reduced claim costs, resulting from the pandemic and related government actions – and the amount it actually provided through the Giveback program.

60.    As discussed above, insurance rates are intended to cover the cost of the transfer of risk from the policyholder to the insurance company for the period the rates will be in effect.  That means the rates in effect on March 21, 2020 (even if those rates were used for policies issued up to six months prior to the April 8, 2020 start of the GEICO Giveback) were intended to cover expected claims, claim settlement expenses, selling expenses, other expenses and profit.  For the rates in effect on March 21, 2020, GEICO relied upon historical experience from 2019 and 2018 as a guide to what the frequency and severity of claims and expenses would be in 2020.  Those rates reflected certain assumptions about the frequency and severity of claims, which together represent the average claim cost per exposure (or insured).

61.    By mid-March, as the pandemic unfolded and various government restrictions removed drivers from the road, it was clear that the assumptions underlying the rates in effect on March 21, 2020 were no longer valid.[35]

62.    The damage methodology will start with the claim and expense assumptions embedded in GEICO's rates in effect on March 21, 2020, examine the information reviewed by or reasonably available to GEICO regarding changes in expected claims and expenses, and quantify the difference or amount of decline in expected costs of the transfer or risk.

63.    The reasonable premium relief is the amount of premium reduction reasonably determined based on the facts known or that should have been known at the time GEICO initially decided on the amount and method of application of their premium relief program and as events unfolded throughout the pandemic.

64.    At the merits stage, I will review the analyses prepared by GEICO from March and April 2020 to determine, among other things, if GEICO's decisions reflected the available data and analyses at that time.  I will review normal business records of GEICO, including but not limited to:

---

[35]  Appendix C is a list of letters, reports and releases from the Consumer Federation of America and the Center for Economic Justice ("CFA/CEJ") from 2020 to 2021 regarding the pandemic's impact on PPA insurer profits and premium relief.  CFA/CEJ wrote to state insurance commissioners on March 18 and March 30, 2020 alerting regulators to the excessive rates and pending windfall profits for insurers resulting from the pandemic and related government response.  In addition, the Chairman and CEO of Berkshire Hathaway, the corporate parent of GEICO, acknowledged the sharp reduction in personal auto claims in a mid-March television interview.

    a.   Daily number of new claims filed and claim frequencies by product type and coverage for the period January 1, 2018 through present;

    b.   Internal analyses of types of claim frequency and severity before and after March 21, 2020;

    c.   Internal analyses of actual and expected changes in claim settlement expenses associated with increased use of digital claims settlement; and

    d.   Internal analyses of actual and expected changes in expenses resulting from, among other things, premium grace periods, employees working from home, and changes in business travel.

65.    I will also review GEICO claims and expense experience after the start of the GEICO premium relief program to assess GEICO's monitoring of the sufficiency of the premium relief program throughout 2020 and beyond.

66.    If necessary, I will supplement GEICO's normal business records with additional information available to GEICO and relevant for the analysis at the time, including, for example, data on changes in vehicle miles traveled starting in March 2020 from prior periods.

67.    The methodology is grounded in industry standards for the reasonableness of insurance rates and will be based on information produced by GEICO's systems. While I assume that GEICO's financial and statistical data systems adhere to relevant standards, I cannot guarantee that is the case. I will rely upon, among other things, the same data GEICO analyzed or should have analyzed.

68.    The methodology is based on information used by or available to GEICO prior to and after implementing the premium relief program. Information available prior to the implementation will be used to assess the reasonableness of the initial relief based on facts known or knowable at the time. Information following the implementation will be used to assess what GEICO knew or should have known about the adequacy of the premium relief through the course of 2020 and beyond.

69.    GEICO's normal business records will identify all Class Members – GEICO policyholders with policies in force on or after March 21, 2020 – and the effective date of the policy, the total premium for the policy and the amount of GEICO Giveback credited to the policy. GEICO's corporate representative stated that this data is in GEICO's possession and is accessible.[36]

---

[36]  Transcript of Deposition of B.J. Hackman at page 59, 111-17.

70. The methodology requires a determination of the reasonable premium relief, expressed as a percentage of premium. This amount will ultimately be determined in the merits phase of the litigation. For purposes of demonstrating the damage methodology, I use 50% as the reasonable premium relief percentage for the period March 21 through April 7, 2020 and 35% for the period April 8 through October 7, 2020.

71. For Plaintiffs and putative class members in group 1 (paragraph 57(a), above) the damage calculation is the reasonable premium relief percentage (50% for illustration purposes) times the share of policy premium earned from March 21 through the end of the policy term. For example, the Plaintiffs purchased a 6-month policy effective January 22, 2020 with a policy premium of $2,314.38 and received no premium relief on that policy.[37] The calculation is:

> (Portion of Policy Term from March 21, 2020) x (Reasonable Premium Relief Percentage) x (Full-Term Policy Premium)

> For the Plaintiffs:

> (123 Days from March 21, 2020 to July 21, 2020 / 182 Days from January 22, 2020 to July 21, 2020) x 50% x $2,314.38 = $782.06.

72. For Plaintiffs and putative class members whose policy term started on April 8 through October 7, 2020, the damage calculation is the reasonable premium relief percentage (35% for illustration purposes) times the policy premium less the amount of the GEICO Giveback. For example, the Plaintiffs purchased a renewal 6-month policy effective July 22, 2020 with a policy premium of $2,371.84 and received a Giveback credit of $355.78. They then cancelled the policy effective September 20, 2020 upon moving out of state and received a premium refund of $1,598.40.[38] The calculation is:

> ((Portion of Policy Term from May 1, 2020) x (Reasonable Premium Relief Percentage) x (Full-Term Policy Premium)) – GEICO Giveback

> For the Plaintiffs:

> ((60 Days from July 22 to September 19, 2020 / 184 Days from July 22, 2020, to January 21, 2021) x 35% x $2,371.84)) - $355.78 = $-85.08[39]

---

[37] GEICO-030906 to 030977.
[38] GEICO-030906 to 030977.
[39] In the event that there are unusual situations in which a Class Member does not have damages in one period, any negative amounts would offset damage amounts in another period. In the case of Plaintiff Thomas, the net damages would be $782.06 – 85.08 = $696.98.

73. For putative class members whose policy term started on or after October 8, 2020 through the end of the class period, the damage calculation is the reasonable relief percentage times the policy premium earned from October 8, 2020 through the end of the policy term. The Plaintiffs did not have an Illinois policy during this period.

*Birny Birnbaum*

Birny Birnbaum

**Report of Birny Birnbaum**

*Thomas et al. v. GEICO Casualty Company, et al.*

**Case No. 1:20-cv-04306**

**In the United States District Court, Northern District of Illinois**

**March 3, 2022**


**Appendix A:**

**Documents Relied Upon**

**Documents Relied Upon**

Documents cited in my report.

Documents cited in Appendix C of my report

Transcript of and Exhibits to January 27, 2022 Deposition of B.J. Hackman

Second Amended Complaint

GEICO-000810.PDF
GEICO-001342.pdf
GEICO-001457.pdf
GEICO-001495.pdf
GEICO-001553.pdf
GEICO-001593.pdf
GEICO-001851.pdf
GEICO-002032.PDF
GEICO-011735.PDF
GEICO-016458.PDF
GEICO-020212.PDF
GEICO-025230.PDF
GEICO-030263.pdf
GEICO-030287.pdf
GEICO-030306.pdf
GEICO-030560.pdf
GEICO-030561.pdf
GEICO-030562.pdf
GEICO-030563.pdf
GEICO-030564.pdf

GEICO-030565.pdf
GEICO-030566.pdf
GEICO-030567.pdf
GEICO-030568.pdf
GEICO-030569.pdf
GEICO-030626.pdf
GEICO-030627.pdf
GEICO-030636.pdf
GEICO-030638.pdf
GEICO-030640.pdf
GEICO-030642.pdf
GEICO-030689.pdf
GEICO-030698.pdf
GEICO-030700.pdf
GEICO-030906.PDF
GEICO-031062.pdf
GEICO-031063.pdf
GEICO-031064.pdf
GEICO-031066.pdf

**Report of Birny Birnbaum**

*Thomas et al. v. GEICO Casualty Company, et al.*

**Case No. 1:20-cv-04306**

**In the United States District Court, Northern District of Illinois**

**March 3, 2022**

**Appendix B:**

**Resume, Expert Testimony and Publications**

# Birny Birnbaum
## Consulting Economist
1701 A South Second Street
Austin, TX 78704
(512) 784-7663

Birny Birnbaum is a consulting economist and former insurance regulator whose work focuses on insurance regulatory issues. Birny has served as an expert witness on a variety of economic and actuarial insurance issues in administrative and judicial proceedings. Birny serves as an economic adviser to and Executive Director for the Center for Economic Justice (www.cej-online.org), a Texas non-profit organization, whose mission is to advocate on behalf of low-income consumers on issues of availability, affordability, accessibility of basic goods and services, such as utilities, credit and insurance.

He has authored reports and testimony for numerous public agencies and consumer organizations, including the California Department of Insurance, the Florida Insurance Commissioner's Task Force on Credit Scoring, the Ohio Civil Rights Commission, the Cities of New York and Philadelphia, the United States Department of Justice and the Center for Economic Justice ("CEJ"). Birny's reports and testimony have covered a wide variety of topics, including unfair discrimination, deceptive practices, competition in insurance markets and consumer disclosures as a regulatory tool.

Birny has served for many years as a designated Consumer Representative at the National Association of Insurance Commissioners. On behalf of CEJ, he participates in the Transatlantic Consumer Dialogue and is a consumer stakeholder participant at the International Association of Insurance Supervisors. He is a member of the U.S. Department of Treasury's Federal Advisory Committee on Insurance and has served as co-chair of the Affordability Subcommittee for several years. He also served as a member the Board of the Federal Reserve's Insurance Policy Advisory Committee.

Birny served for three years as Associate Commissioner for Policy and Research and the Chief Economist at the Texas Department of Insurance. At the Department, Birny provided technical and policy advice to the Commissioner of Insurance and performed policy research and analysis for the Department. Birny was also responsible for the development of data collection programs for market surveillance and the analysis of insurance market for competition as well as review and approval of policy forms and rates.

Prior to coming to the Department, Birny was the Chief Economist at the Office of Public Insurance Counsel (OPIC), working on a variety of insurance issue. OPIC is a Texas state agency whose mission is to advocate on behalf of insurance consumers. Prior to OPIC, Birny was a consulting economist working on community and economic development projects. Birny also worked as business and financial analyst for the Port Authority of New York and New Jersey. Birny was educated at Bowdoin College and the Massachusetts Institute of Technology. He holds two Master's Degrees from MIT in Management and in Urban Planning with concentrations is finance and applied economics.

## Education

1989      **Massachusetts Institute of Technology**      Cambridge, MA

Master's Degrees in Business (M.S., Management) and Urban Planning (M.C.P.). Concentration in finance and applied economics with coursework in econometrics, corporate, municipal and real estate finance and regional economic development.

1976      **Bowdoin College**      Brunswick, ME

A.B., German and Political Economy. Wesleyan University Program in Germany, Bonn, West Germany, 1974.

## Professional Experience

1996 to      **Economist and Executive Director**      Austin, TX
Present      Center for Economic Justice

Serve as Executive Director for the Center for Economic Justice ("CEJ"), an organization dedicated to advocating on behalf of low-income and minority consumers before administrative agencies on credit, utility and insurance matters. Also provide expert economic, actuarial and policy analysis on behalf of CEJ. Serves as designated consumer representative at the National Association of Insurance Commissioner ("NAIC") on behalf of CEJ. Serves as member of the Federal Advisory Committee on Insurance of the U.S. Treasury Department's Federal Insurance Office and of the Federal Reserve Board's Insurance Policy Advisory Committee. Routinely provide testimony and presentations to state, federal and international insurance regulators and legislators on insurance regulatory and consumer protection issues from 1998 to present.

1991 to      **Consulting Economist**      Austin, TX
Present      Birny Birnbaum Consulting Inc.

Provide economic and actuarial analysis on insurance, utility and credit matters to public organizations and consumers. Assignments include:

- Provide analysis and testimony on credit-related insurance and non-insurance protection products, pricing, regulation, disclosures and consumer protection issues before the NAIC and state and federal agencies on behalf of the CEJ and other organizations. Authored state-specific reports on credit insurance in Alaska, Arizona, California, Indiana, Iowa, Maryland, Minnesota, New Mexico, Nevada, South Dakota, Texas, Wisconsin and Washington from 1997 through present.

- Provide testimony before the NAIC, the National Conference of Insurance Legislators ("NCOIL"), individual state insurance departments and other organizations on the impacts of structural racism and other causes of unfair discrimination in insurance and tools and methods for identifying and eliminating such unfair discrimination from 1998 to present.

- Provide testimony before the NAIC on best practices in consumer information, education and disclosure and on specific consumer disclosures for life insurance, credit-related insurance, travel insurance, pet insurance, auto insurance and home insurance from 1998 to present.

- Provided testimony before the NAIC on consumer protection issues and regulatory guidance for pet insurance from 2015 to present on behalf of the CEJ.

- Provided testimony before the NAIC and the NCOIL on the development of model laws on consumer protection issues and regulatory guidance for travel insurance from 2016 through present on behalf of the CEJ.

- Provided testimony on force-placed insurance markets and rates to the New York Department of Financial Services in May 2012, the Florida Office of Insurance Regulation in July 2012 and May 2013, the California Department of Insurance in October 2012, the National Association of Insurance Commissions numerous times from August 2012 to present and the Insurance Regulatory Examiners Society in July 2013 and August 2016 on behalf of the CEJ.

- Provided testimony to the Michigan House Insurance Committee on the profitability of Michigan auto insurers and the condition of the No-Fault auto insurance system in Michigan on behalf the Coalition to Protect Auto No-Fault in October 2011.

- Presented testimony to Congress regarding the impact of the Dodd Frank Act on state insurance regulation and insurance markets on behalf of the CEJ in July 2012.

- Presented testimony to Congress regarding effectiveness of state insurance regulation, including oversight of force-placed insurance, on behalf of the CEJ in July 2011, 2012, 2013 and 2016.

- Prepared analysis of title insurance agent expenses for the Pennsylvania Department of Insurance from 2009 to 2011.  Project included unique data collection and analysis.

- Provided analysis of usage-based auto insurance rate filings in California on behalf of Consumer Watchdog in 2010.

- Participated in North Carolina Consumer Finance Study Group to evaluate the North Carolina consumer instalment loan market and proposals for modifying statutory interest rate and fee caps for these loans on behalf of the CEJ in 2010.

- Provide analysis and testimony on credit insurance and debt cancellation products sold by credit unions on behalf of the United States Department of Justice 2008 to 2009

- Authored *An Analysis of Competition in the California Title and Escrow Industry* for the California Commissioner of Insurance in 2005. Provided assistance to California Department of Insurance in preparing and issuing requests for information to title insurance companies and title agents in California from 2005 to 2008.

- Provided testimony before Congress on insurance scoring on behalf of the CEJ in October 2007

- Provided testimony and analysis on title insurance markets, reverse competition, expenses and rates in 2007 and 2008 New Mexico Title Insurance Rate Hearings on behalf of New Mexico Attorney General Gary King.

- Prepared analysis of credit insurance regulatory performance by states from 2004 through 2008, including credit life, credit disability, credit involuntary unemployment, creditor-placed (force-placed), GAP and credit family leave insurance coverages for the CEJ in 2009.

- Provided testimony on proposed auto insurance rating regulations and insurance scoring in Massachusetts in 2007 on behalf of the CEJ.

- Provided testimony on proposed auto insurance rating regulations in California from 1993 through 2005 related to the rating factor requirements of Proposition 103 for the Foundation for Taxpayer and Consumer Rights.

- Provided technical assistance to the United States Department of Housing and Urban Development on an investigation of redlining in homeowner's insurance from 2005 to 2007

- Provided expert reports on insurers' use of credit scoring in connection with several litigations in Oregon regarding adverse action notification required by the Fair Credit Reporting Act from 2002 to 2010.

- Provided expert testimony in a hearing before the New York State Public Service Commission on a proposal by a utility to use credit scoring to establish customer deposits for utility service on behalf of the Public Utility Law Project in 2003.

- Provided technical assistance to the Federal Trade Commission regarding credit insurance sales and marketing practices from 2000 through 2002.

- Performed a market conduct examination on proposed credit scoring program by an automobile insurer on behalf of the Georgia Insurance Commissioner in 2003.

- Provide technical assistance to the Philadelphia Automobile Insurance Rate Reduction Task Force on behalf of the Mayor of Philadelphia from 2000 to 2003 and prepared a report evaluating the fairness of auto insurance rates in Philadelphia for the Task Force.

- Provided analysis and a report to the Ohio Civil Rights Commission on the impact of insurers' use of credit scoring on availability and affordability of homeowners insurance for minority populations in Ohio in 2002.

- Appointed as party arbitrator by the Florida Insurance Commissioner on panels reviewing insurer protests of the Florida Insurance Commissioner's decision to disapprove homeowner's insurance filings in 2002 and a personal umbrella insurance filing in 2003.

- Provide analysis and testimony before the NAIC on credit-related insurance, including force-placed insurance and credit scoring issues on behalf of the CEJ from 1998 to present.

- Provided expert testimony in California rulemaking hearings regarding the setting of rates for credit life, credit disability, credit unemployment and credit property insurance on behalf of Consumers Union and the CEJ from 2001 through 2005.

- Provided analysis and testimony to the Georgia Insurance Commissioner on insurers' use of credit scoring on behalf of the Georgia Governor's Office of Insurance Consumer Advocate in 2001.

- Provided analysis of individual insurer private passenger automobile insurance rate, risk classification and credit scoring filings on behalf of the Georgia Governor's Office of Insurance Consumer Advocate in 2000.

- Provided expert testimony on rates for credit life and credit disability insurance in Texas in a contested case rate hearing on behalf of the CEJ in 1999.

- Provided a report on credit insurance experience and market problems countrywide and by state to the CEJ and Consumers Union in 1999

- Provided analysis of creditor-placed credit insurance in New Mexico on behalf of the New Mexico Superintendent of Insurance in 1998.

- Developed feasibility study of targeted loan-programs for hail-resistant roofs on behalf of the CEJ in 2000.

- Provided reports on Texas private passenger automobile insurance profitability to the CEJ in 1998 and 1999.

- Provided a report on Texas private passenger automobile insurance availability and redlining to Texas State Representative Lon Burnam in 1998.

- Advocate and analyst for residential and small commercial customer classes in the Austin, Texas Water and Wastewater Utility 1998-99 Cost of Service and Rate Design Study on behalf of the City of Austin.

- Provided analysis and testimony regarding private passenger automobile rate filings in New York on behalf of the City of New York 1996 through 1999.

- Authored report on economic and financial feasibility of a low-level radioactive waste disposal site in West Texas for the Sierra Blanca Legal Defense Fund in 1998.

- Provided analysis and testimony regarding private passenger automobile insurance rate filings in California on behalf of the Proposition 103 Enforcement Project in 1998.

- Provided a report on intergovernmental risk pools to the Texas Performance Review to the Texas Comptroller in 1998.

1993-96        **Chief Economist & Associate Commissioner for Policy and Research**
               Texas Department of Insurance                    Austin, TX

Senior adviser to Commissioner on policy, ratemaking and other technical issues. In addition, specific responsibilities included:

- Review and approve prior approval automobile and residential property rate and manual filings.

- Review and analyze proposals for decisions from administrative law judges and advise the Commissioner on industry-wide rate decisions and individual company manual filings.

- Expert witness for the Department in contested case proceedings regarding unfairly discriminatory or excessive rates.

- Custodian for underwriting guidelines submitted by residential property and private passenger automobile insurers.

- Oversight of process to designate Texas statistical agents for collection of insurer premium, exposure and loss experience.

- Review and present proposals to the Commissioner for modification of statistical plans governing data collection.

- Analyze and make recommendations to the Commissioner regarding determination of areas underserved for residential property and private passenger automobile insurance.

- Represent the Department at meetings of the NAIC with specific responsibilities for insurance credit scoring, credit insurance, market conduct, underwriting, data collection, and catastrophe insurance issues.

- Liaison to the Texas assigned risk auto program (TAIPA) with responsibility for developing proposals for TAIPA quota calculations, quota credits for underserved areas, quota credits for voluntary and mandatory take-outs and for reporting of take-out activity.

- Oversight of organizations operating as advisory organization in Texas to ensure compliance of such organizations with Texas requirements.

1991-93      **Chief Economist**
             Texas Office of Public Insurance Counsel                    Austin, TX

             The Office of Public Insurance Counsel represents consumers of insurance
             before the Commissioner of Insurance and other forums.

             •   Performed economic, actuarial, financial, statistical and policy analyses on
                 issues of concern to consumers in various lines of insurance.

             •   Provided expert testimony in contested cases concerning various lines of
                 insurance on behalf of the Office of Public Insurance Counsel. Topics
                 included expected losses, expense provisions, insurer rate of return,
                 investment income, underwriting profit, the degree of competition in Texas
                 insurance markets, insurance availability, redlining and the validity of
                 certain rating factors for pricing insurance. Lines of insurance included
                 automobile, residential property, title, credit and workers' compensation.

1989-91      **Consulting Economist**
             Mt. Auburn Associates                                       Somerville, MA

             Responsible for business development, project management and substantive
             analysis.

             •   Evaluated economic impact of business lending by New York State agencies
                 with reference to overall development finance policy.

             •   Trained 50 state program managers in the use of development loan funds as
                 strategic economic development tools.

             •   Market development for recycled, or secondary, materials in Connecticut
                 and New York with emphasis on achieving environmental and economic
                 development goals -- reducing environmental pollution, increasing
                 manufacturing using secondary materials, developing advanced technology.

1986-89 **Senior Business and Financial Analyst**
Port Authority of New York & New Jersey          New York, NY

The Port Authority operates the interstate transportation facilities for the Port of New York (tunnels, bridges, PATH train, airports, oceanborne cargo) and a set of world trade and economic development facilities (World Trade Center, Teleport, XPORT Trading Company, industrial parks).

Project Finance
- Evaluated and structured Port Authority investments in public-private economic development ventures, including commercial, residential, industrial and marine real estate and business developments.

- Trained 120 property negotiators and finance staff from all operating departments in the use of discounted cash flow analysis in creating value during lease negotiations.

Development Finance
- Evaluated alternative techniques for funding the Port Authority's $5 billion capital improvement program.

- Secured Export-Import Bank certification to improve the XPORT Trading Company's export finance capabilities.

Business Strategy
- Managed the development of the first comprehensive business plan for the World Trade Center, balancing revenue and economic development goals and resulting in physical redevelopment efforts.

- Designed decision-support computer models for senior Treasury staff adopted for use in the capital planning process.

1980-86 **Consulting Economist**                              Seattle, WA
Self-Employed                                  Cambridge, MA

- Crafted a strategic economic analysis of the wood products industries for the Northern Tier (Massachusetts) Task Force.

- Assessed the location determinants of high technology and service industry firms as part of a critique of standard business climate indices for Mt. Auburn Associates and the Corporation for Enterprise Development.

- Evaluated effect of State economic development policy and programs on economic performance in Massachusetts for the Committee for Economic Development.

- Conducted 50 seminars on energy expenditures and local economic development for local officials and community groups in Washington State for the State Energy Office.

- Presented recommendations to the Seattle City Council and Seattle City Light on cost allocation and rate design, resulting in a modified rate structure, as a member of the Mayor's Citizen Rate Advisory Committee representing the ratepayer's organization, the Light Brigade.

- Interim Director of Citizens for a Solar Washington, a statewide organization educating and advocating for energy conservation and renewable energy resources.

1978-80 **Northwest Field Representative**
National Center for Appropriate Technology          Seattle, WA

- Supervised grant awards and provided technical assistance to public and private organizations for community development projects and programs throughout the Northwest and Alaska.

- Provided expert testimony on key Federal and State food and energy legislation, including the Public Utilities Regulatory and Policy Act.

1977-78 **VISTA Volunteer**
Grant County Community Action Council          Moses Lake, WA

- Trained the staff of 30 Washington State community action agencies in the concept and application of appropriate technology for enabling poor people to meet energy and food requirements.

- Organized local enterprises, including a farmers' market and community cannery.

**Birny Birnbaum Expert Testimony in Litigation**

<u>Trial Testimony</u>
- Case No. 9:12-cv-80372-KAM , Martorella v. Deutsche Bank National Trust Company, et al, United States District Court, Southern District Of Florida, 2015. (Class Cert Hearing)
- Cause No. 06 CH 09489, Colella, et al v. Chicago Title Insurance Co. and Chicago Title and Trust Co., in the Circuit Court of Cook County, Illinois, 2013.
- Cause No. 06 CH 09488,Chultem, et al. vs. Ticor Title Insurance Co., et al, in the Circuit Court of Cook County, Illinois, 2013.
- Case No. 08 C 0057, Community First Credit Union v United States of America, United States District Court, Eastern District of Wisconsin, 2009.
- Civil Action No. 08-cv-1071-REB-KMT, Bellco Credit Union v United States of America, United States District Court, District of Colorado, 2009.
- Civil No. CV 01-1446-BR, Ashby v. Farmers Insurance Company of Oregon in the United States District Court, District of Oregon, 2009.
- Cause No. 96-34235, Siebenmorgen v. The Hertz Corporation, in the 234th district court of Harris County Texas, 1998.
- Cause 97-09206, National Association of Independent Insurers, et al. v. Dan Morales, The Attorney General of Texas, et al, in the 98th district court of Travis County Texas
- Cause No. CV-001297, Nationwide General Ins. Co. et al v. Attorney General of Texas, et al, in the 261st district court of Travis County Texas.

<u>Deposition Testimony</u>
- Case No. 2/20-cv-08557-AB-AFM, Smith, et al v. AGA Service Company, et al, United States District Court, Central District of California, 2022
- Civil Action No. 2:18-cv-02788, Gozdenovich, et al v. AARP, Inc, et al, United States District Court, District of New Jersey, 2020
- Civil Action No. 2:17-cv-70, Perrine and Hall v. Branch Banking and Trust Company, United States District Court for the Northern District of West Virginia, 2018.
- Case No. 14-cv-20474-JEM, Montoya, et al v. PNC Bank, NA et al, United States District Court, Southern District of Florida, 2015.
- Case No. 502009CA034657XXXXMB AD, Wells Fargo Bank, N.A. et al v. Rico, Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida, 2014.
- Case No. 9:12-cv-80372-KAM , Martorella v. Deutsche Bank National Trust Company, et al, United States District Court, Southern District of Florida, 2014.
- Cause No. 06 CH 09489, Colella, et al vs. Chicago Title Insurance Co. and Chicago Title and Trust Co., in the Circuit Court of Cook County, Illinois, 2013.
- Case No.: SACV-11-00915-JST-AN, Gustafson, et al v. BAC Home Loans Servicing, LP et al, United States District Court, Central District of California, 2013.
- Case C/A No.: 0:11-464-MBS, Mary K. Mungo, et al v. Founders Federal Credit Union, et al, United States District Court South Carolina, Rock Hill Division, 2013.
- Case No. 11-CV-81373-DMM, Kunzelmann, et al v. Wells Fargo Bank, N.A., et al, United States District Court, Southern District of Florida, Miami Division, 2012.
- Case No. 1:11-CV-21233-Altonaga/Simonton, Williams, et al v. Wells Fargo Bank, N.A., et al, United States District Court, Southern District of Florida, Miami Division, 2011.

Deposition Testimony (con't)
- Civil Action No. 2:08-cv-311-GZS, Douglas Campbell and Denise Campbell v. First American Title Insurance Company United States District Court, District of Maine, 2011.
- Case No. CV 2004-742-2, Smith and Evie, et al v. Collingsworth, Pugh, United American, et al, Circuit Court of Saline County, Arkansas, 2011.
- Civil Action No. 08-cv-1071-REB-KMT, Bellco Credit Union v United States of America, United States District Court, District of Colorado, 2009.
- Case No. 08 C 0057, Community First Credit Union v United States of America, United States District Court, Eastern District of Wisconsin, 2009.
- Civil No. CV 01-1446-BR, Ashby v. Farmers Insurance Company of Oregon in the United States District Court, District of Oregon, 2007.
- Case No. 3:06-cv-295, Furniture Distributors, Inc. dba Kimbrell's v. Voyager Life Insurance Company, United States District Court for the Western District of North Carolina, Charlotte Division, 2007.
- Civil Action No. 00-CP-15-275, Wright v. American Bankers Life Assurance Co. of Florida, Count of Common Pleas, Colleton County, South Carolina, 2007.
- Civil Action No. 01-C-43, Bender v. American General Finance, in the Circuit Court of Boone County, West Virginia, 2004.
- Civil No. 01-2688-09 VSM, Miprano, et al v. Progressive Hawai`i Insurance Corp., et al in the Circuit Court of the First Circuit, State of Hawai`i, 2004.
- Class Action No. 99-L-393A, Sims, et al v. Allstate Insurance Company, in the Circuit Court, Twentieth Judicial Circuit, St. Clair County, Illinois, 2004.
- File No. 02 CVS 2398, Richardson, et al v. Bank of America, et al, in the General Court of Justice, Superior Court Division, Durham County, North Carolina, 2003.
- Civil Action, Beverly Porter, et al v. First Family Financial Services, Inc., in the Circuit Court of Claiborne County, Mississippi, 2002.
- Case No. 02-C1-00077, Lawson v. American Bankers Life Assurance Company of Florida, Commonwealth of Kentucky, Jessamine Circuit Court, Civil Branch, 2002.
- Civil Action No. 99-0162, Bertha Gamble, et al v. MS Loan Center, Inc., et al in the Circuit Court of Jefferson County, Mississippi, 2002.
- Cause No. 00-2861, Wendell Gordon v. Vicky Lynn Miller, et al in the 68th district court of Dallas County, Texas, 2001.
- Case No. 99-1298-CIV, London, et al. v. Wal-Mart Stores, Inc., et al. in the Miami Division, Southern District of Florida, United States District Court, 2000.
- Case No. 98-1281-CIV, Fabricant v. Sears, Roebuck & Co., et al. in the Miami Division, Southern District of Florida, United States District Court, 2000.
- Civil Action File No. 97-1-3977-35, Wood, et al. v. Associates Financial Life Insurance Company, et al in the Superior Court of Cobb County, State of Georgia, 2000.
- Case No. 97-281-TUC-JMR-JCC, Siemer, et al., v. Associates First Capital, et al. in the Arizona District of the United States District Court. 2000
- Cause No. 96-34235, Siebenmorgen v. The Hertz Corporation, in the 234th district court of Harris County Texas, 1998.
- Cause 97-09206, National Association of Independent Insurers, et al. v. Dan Morales, The Attorney General of Texas, et al, in the 98th district court of Travis County, Texas, 1997.

Expert Reports
- Case No. 2/20-cv-08557-AB-AFM, Smith, et al v. AGA Service Company, et al, United States District Court, Central District of California, 2021 and 2022
- Case No. 4:18-CV-00450 (AW) (MAF), Penton, et al v Centennial Bank, United States District Court, Norther District of Florida, 2021
- Civil Action No. 2:18-cv-02788, Gozdenovich, et al v. AARP, Inc, et al, United States District Court, District of New Jersey, 2020
- Case No. 18-CV-23912-RNS, Phillips, et al v NCL Corporation, United States District Court for the Southern District of Florida, 2019
- Civil No. 16-00596 JMS/RLP, Wieck, et al v CIT Bank, N.A., et al, United Sates District Court for the District of Hawaii, 2019.
- Civil Action No. 2:17-cv-70, Perrine and Hall v. Branch Banking and Trust Company, United States District Court for the Northern District of West Virginia, 2018.
- File No VID513/2015, Money Max Int Pty Limited v QBE Insurance Group Limited in the Federal Court of Australia, Victoria Registry, 2017.
- Case No. BC541571, Johnson, et al. v. Sun West Mortgage Company, Inc., et al., Superior Court of the State of California, County of Los Angeles –Central Division, 2016.
- Case No. 1:12-cv-01117, In Re: PHH Mortgage Corporation, United States District Court, District of New Jersey, 2016.
- Case No. 15-cv-23107-DPG, Edwards, et al. v. Seterus, Inc. et al, United States District Court, Southern District of Florida, 2016.
- Case No. 15-23294-CIV-WILLIAMS, Beber, et al. v. Branch Banking & Trust Co., et al., United States District Court, Southern District of Florida, 2016.
- Case No. 14-CIV-21252, Jackson, et al. v. U.S. Bank N.A., et al, United States District Court, Southern District Of Florida, 2015.
- Case No. 14-CIV-21384, Circeo-Loudon, et al. v. Green Tree Servicing, LLC, et al., United States District Court, Southern District Of Florida, 2015.
- Case No. 14-CIV-22264, Wilson, et al. v. EverBank N.A., et al, United States District Court, Southern District Of Florida, 2015.
- Case No. 14-cv-20474-JEM, Montoya, et al v. PNC Bank, NA et al, United States District Court, Southern District of Florida, 2015.
- Case No. 502009CA034657XXXXMB AD, Wells Fargo Bank, N.A. et al v. Rico, Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida, 2014.
- Case No. 9:12-cv-80372-KAM , Martorella v. Deutsche Bank National Trust Company, et al, United States District Court, Southern District Of Florida, 2014.
- Case No. 1:12-cv-01117, Gallo, et al v. PHH Mortgage Corporation, United States District Court, District of New Jersey, 2014.
- Case No. 13-60749-CIV-ROSENBAUM, Hamilton, et al v. SunTrust Mortgage Inc., et al, United States District Court, Southern District Of Florida, 2014.
- Case No. CV 12-2506 LB, Ellsworth, et al. v. U.S. Bank, N.A. and American Security Insurance Company, United States District Court, Northern District of California, 2013
- Case No. 0:13-cv-60721-WPD, Fladell, et al v. Wells Fargo Bank, NA, United States District Court, Southern District of Florida, 2013.
- Case No. 4:13-CV-00708-JCS, Leghorn, et al v. Wells Fargo Bank, NA, United States District Court, Northern District of California, 2013.

Expert Reports (con't)

- Case No. 3:11-CV-04965-JCS, McKenzie, et al v. Wells Fargo Bank, NA, United States District Court, Northern District of California, 2013.
- Cause No. 06 CH 09489, Colella, et al v. Chicago Title Insurance Co. and Chicago Title and Trust Co., in the Circuit Court of Cook County, Illinois, 2013.
- Cause No. 06 CH 09488,Chultem, et al. vs. Ticor Title Insurance Co., et al, in the Circuit Court of Cook County, Illinois, 2013.
- Case No. C 12-04026 WHA, Lane, et al v. Wells Fargo Bank, NA, United States District Court, Northern District of California, 2013.
- Case No.: SACV-11-00915-JST-AN, Gustafson, et al v. BAC Home Loans Servicing, LP et al, United States District Court, Central District of California, 2013.
- JAMS Ref No. 1130005569, Arbitration of Kenneth and Jerry Still v. Beneficial Financial I Inc., dba Beneficial Member HSBC Group and fka Beneficial California, Inc., 2013.
- Case C/A No.: 0:11-464-MBS, Mary K. Mungo, et al v. Founders Federal Credit Union, et al, United States District Court South Carolina, Rock Hill Division, 2012.
- Case No. 11-CV-81373-DMM, Kunzelmann, et al v. Wells Fargo Bank, N.A., et al, United States District Court, Southern District of Florida, Miami Division, 2012.
- Case No. 1:11-CV-21233-Altonaga/Simonton, Williams, et al v. Wells Fargo Bank, N.A., et al, United States District Court, Southern District of Florida, Miami Division, 2011.
- Civil Action No. 2:08-cv-311-GZS, Douglas Campbell and Denise Campbell v. First American Title Insurance Company United States District Court, District of Maine, 2011.
- Case No. CGC 05-446073, Rick L. Schwartz, et al v. Provident Life and Accident Insurance Company, et al, Superior Court of California, County of San Francisco, 2011.
- Civil Action No. 08-cv-1071-REB-KMT, Bellco Credit Union v United States of America, United States District Court, District of Colorado, 2009.
- Case No. 08 C 0057, Community First Credit Union v United States of America, United States District Court, Eastern District of Wisconsin, 2009.
- File No. 02 CVS 593, Tillman, et al v. Commercial Credit, et al, in the Superior Court of Vance County, North Carolina, 2008.
- Case No. BC 329482, Sjobring, et al v. First American Title Insurance Company, et al, Superior Court of the State of California for the County of Los Angeles, 2008
- Case No. 3:06-cv-295, Furniture Distributors, Inc dba Kimbrell's v. Voyager Life Insurance Company, United States District Court for the Western District of North Carolina, Charlotte Division, 2007.
- Civil Action No. 00-CP-15-275, Wright v. American Bankers Life Assurance Co. of Florida, Count of Common Pleas, Colleton County, South Carolina, 2006.
- Civil No. CV 01-1446-BR, Ashby v. Farmers Insurance Company of Oregon in the United States District Court, District of Oregon, 2005, 2006 and 2009.
- Civil Action No. 01-C-43, Bender v. American General Finance, in the Circuit Court of Boone County, West Virginia, 2004.
- Civil No. 01-2688-09 VSM, Miprano, et al v. Progressive Hawai`i Insurance Corp., et al in the Circuit Court of the First Circuit, State of Hawai`i, 2004.
- Case No.03CV24919, American Family, et al v. Missouri Department of Insurance and Legal Aid of Western Missouri, in the Circuit Court of Cole County, Missouri, 2004.

Expert Reports (con't)

- File No. 02 CVS 2398, Richardson, et al v. Bank of America, et al, in the General Court of Justice, Superior Court Division, Durham County, North Carolina, 2003 and 2005.
- Civil No. CV01-1529-BR, Rausch v. Hartford Insurance, in the United Stated District Court, District of Oregon, 2003.
- Civil No. CV 02-678-BR, Edo v. Geico Casualty, et al., in the United States District Court, District of Oregon, 2003.
- Civil No. CV01-1457-BR, Willes v. Safeco in the United States District Court, District of Oregon, 2002 and 2003.
- Civil No. CV01-1466-BR , Razilov v. Nationwide Mutual Insurance Company, in the United States District Court, District of Oregon, 2002 and 2003.
- Civil No. CV01-1464-BR, Mark v. Valley Insurance, in the United Stated District Court, District of Oregon, 2003.
- Civil No. CV01-1464-BR, Spano v. Safeco Insurance, in the United Stated District Court, District of Oregon, 2002.
- Case No. 97-281-TUC-JMR-JCC, Siemer, et al., v. Associates First Capital, et al. in the Arizona District of the United States District Court, 2000.
- Case No. 98-1281-CIV, Fabricant v. Sears, Roebuck & Co., et al. in the Miami Division, Southern District of Florida, United States District Court, 2000.
- Case No. 99-1298-CIV, London, et al. v. Wal-Mart Stores, Inc., et al. in the Miami Division, Southern District of Florida, United States District Court, 2000.
- Civil Action File No. 97-1-3977-35, Wood, et al. v. Associates Financial Life Insurance Company, et al in the Superior Court of Cobb County, State of Georgia, 2000.
- Civil No. 2:99-0913, Brown v. Public Finance Corporation, et al in the United States District Court for the Southern District of West Virginia at Charleston, 2000.
- Cause No. 96-34235, Siebenmorgen v. The Hertz Corporation, in the 234th district court of Harris County Texas, 1997.

## Selected Publications by Birny Birnbaum

- "Insurance Market Regulation in the Era of Big Data in Insurance," *The Regulator*, Insurance Regulatory Examiners Society, Summer 2018.
- "Make Individuals Buy Policies," *New York Times*, September 30, 2011.
- "Out of Favor: 'Managed Competition' Will to Higher Rates for Low-Income Auto Insurance Consumers," *Commonwealth*, Spring 2008.
- "Credit Scoring and Insurance," Co-author, in Credit Scoring: Concepts, Perspectives and Models, edited by Ravi Kumar Jain B, Icfai University Press, Hyderabad, India, 2008.
- "An Analysis of Competition in the California Title Insurance and Escrow Industry," A Report to the Insurance Commissioner of California, 2005.
- "The Impact of Debt Cancellation Contracts on State Insurance Regulation: A Report to the FIRST by the Center for Economic Justice." July 2003.
- "Credit Insurance – The $2 Billion A Year Rip-Off: Ineffective Regulation Fails to Protect Consumers," A Report by the Center for Economic Justice and Consumers Union, 1999. Co-author.
- "Credit Insurance Overcharges Hit $2.5 Billion Annually, A Report By The Consumer Federation of America and the Center for Economic Justice, 2001. Co-author.
- "A Consumer Advocate's Guide to Getting, Understanding and Using Insurance Data," Center for Economic Justice, 1999.
- "Insurance Credit Scoring: 21s Century Redlining and the End of Insurance," *Insurance Journal*, August 6, 2007
- "Credit Scoring and Insurance: Costing Consumers Billions and Perpetuating the Racial Divide," National Consumer Law Center and Center for Economic Justice, 2007. Co-author.
- "Insurance Credit Scoring: The Truth Will Set Consumer Free," *National Underwriter*, March 2005.
- "Regulators Should Impose Credit Scoring Moratorium," *National Underwriter*, September 1, 2007.
- "Insurers Use of Credit Scoring for Homeowners' Insurance in Ohio," A Report to the Ohio Civil Rights Commission, January 2003.
- "Credit Insurance in Texas: Better Regulation Needed to Protect Consumers," A Report by the Center for Economic Justice, April 1998.
- "Credit Insurance in Wisconsin: Regulators Fail to Protect Consumers, Consumers Overcharged by Tens of Millions of Dollars Annually," A Report to Assemblyman David Travis by the Center for Economic Justice and Wisconsin Public Interest Research Group, May, 2001.
- "Credit Insurance In New Mexico: The $25 Million A Year Rip-Off: Ineffective Regulation Fails to Protect Consumers," A Report by The Center for Economic Justice and New Mexico ACORN, February 2001.
- "A New Mindset Needed to Reinvent Market Regulation." *The Regulator*, Insurance Regulatory Examiners Society, March 2004.

**Report of Birny Birnbaum**

*Thomas et al. v. GEICO Casualty Company, et al.*

**Case No. 1:20-cv-04306**

**In the United States District Court, Northern District of Illinois**

**March 3, 2022**


**Appendix C:**

**Consumer Federation of America and Center for Economic Justice Letters, Reports and Releases on Pandemic Impact on Private Passenger Auto Profits**

**Consumer Federation of America and Center for Economic Justice Letters, Reports and Releases on Pandemic Impact on Private Passenger Auto Profits**

March 18, 2020 letter to Commissioners: "We write to urge you to direct auto insurers in your state to provide premium offset payments to policyholders whose driving has been affected by COVID-19." https://consumerfed.org/wp-content/uploads/2020/03/COVID-19-Auto-Premium-Relief-Letter.pdf

March 30, 2020 letter to Commissioners: "We urge you to take action on key P&C insurance consumer protection issues arising from COVID-19 and federal and local government responses to the pandemic, particularly the excessive premiums being charged to individuals and businesses for lines of insurance that base rates on factors such as miles driven, payroll, and receipts." https://consumerfed.org/wp-content/uploads/2020/03/COVID-19-Auto-Premium-Relief-Letter-3-30-20.pdf

April 6, 2020 Press Release: https://consumerfed.org/press_release/consumer-groups-applaud-allstates-and-american-familys-shelter-in-place-paybacks-urge-other-auto-insurers-to-follow/

April 13, 2020 Press Release / Report Card on Insurers' Premium Relief Actions: https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/

April 23, 2020 Press Release Updating Insurers' Premium Relief Actions: https://consumerfed.org/press_release/auto-insurance-premium-relief-update-more-insurers-to-return-premium-as-refunds-and-credits-top-7-billion-through-may/

May 7, 2020 Letter to Insurance Commissioners with Report on PPA Pandemic Premium Relief: https://consumerfed.org/wp-content/uploads/2020/05/COVID-19-Auto-Premium-Relief-Letter-5-7-20.pdf and https://consumerfed.org/wp-content/uploads/2021/07/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf

May 21, 2020 Letter to all Commissioners: https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Commissioner-Letter.pdf

May 26, 2020 Press Release: https://consumerfed.org/press_release/allstate-and-usaa-show-how-insurers-should-provide-ongoing-covid-19-premium-relief/

June 25, 2020 Letter to Insurance Commissioners: https://consumerfed.org/testimonial/consumer-groups-urge-insurance-commissioners-to-follow-californias-lead-on-insurance-premium-refunds/

August 6, 2020 Press Release and Analysis: https://consumerfed.org/press_release/consumers-still-being-overcharged-for-auto-insurance-as-the-pandemic-continues-to-reduce-claims/

August 11, 2020 Press Release on GEICO Pandemic Profits: https://consumerfed.org/press_release/consumer-advocates-call-on-geico-to-give-back-much-more-after-2-1-billion-earnings-bonanza-due-to-covid-19-pandemic-impacts/

September 21, 2020 Letter to Insurance Commissioners:  https://consumerfed.org/wp-content/uploads/2020/09/COVID-19-Auto-Premium-Relief.pdf

December 22, 2020 Letter to Insurance Commissioners with Analysis of Insurer Pandemic Profit:  https://consumerfed.org/wp-content/uploads/2020/12/Auto-Insurance-Commissioner-Letter.pdf

August 11, 2021 Press Release and Report on PPA Insurer 2020 Profits: https://consumerfed.org/press_release/auto-insurers-reaped-nearly-30-billion-pandemic-windfall-profit-in-2020-as-state-insurance-regulators-fail-to-protect-consumers/

**Typos / Clarification in Birnbaum March 3, 2022 Report**

Par 47 Missing FN 21, should be CFA and CEJ, "Auto Insurance Premium Relief Update," April 23, 2020 at https://consumerfed.org/press_release/auto-insurance-premium-relief-update-more-insurersto-return-premium-as-refunds-and-credits-top-7-billion-through-may/

Par 48 – Last April 7, 2020 should be April 8, 2020

Par 49 – Two instances of April 7, 2020 should be April 8, 2020

Par 53 -- April 7, 2020 should be April 8, 2020

Par 57 D – last date should be April 1, 2021

Par 61 – add "and rates utilized for policies in force" after "the rates in effect."

# EXHIBIT D

**to Petition for Permission to Appeal**

EXHIBIT A

**Supplemental Declaration of Birny Birnbaum**

*Thomas et al. v. GEICO Casualty Company, et al.*

**Case No. 1:20-cv-04306**

**In the United States District Court, Northern District of Illinois**

**April 11, 2024**

I.      **Assignment**

1.      Plaintiff's attorneys have asked me to provide a supplemental declaration to respond to the concerns raised by the Court in its March 12, 2024 order and to demonstrate that the damage methodology I've presented to the Court is based on and grounded in an industry-standard and well-recognized methodology.

II.     **Discussion**

2.      My damage methodology employs mainstream and industry standard methods applied to the unique situation associated with the COVID pandemic and related government responses in 2020.

3.      My damage methodology addresses each of the two issues raised by Plaintiffs regarding GEICO's Giveback credit in response to the COVID pandemic and related government programs which caused a sudden and dramatic reduction in vehicles on the road, miles driven, vehicle crashes and insurance claims.  First, whether GEICO provided a Giveback credit to all policyholders who were entitled to relief and, second, whether the Giveback credit provided adequate relief based on information known or readily available to GEICO at the time it decided to provide a Giveback credit.  Stated differently, did GEICO's de facto 15% across-the-board rate reduction adequately reflect expected savings from fewer claims and produce an actuarially-sound rate?

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

4.      In terms of damage assessment and methodology, the answer to the first question – did everyone who should have received a Giveback credit receive one? – does not depend on the answer to the second question.  If the Court were to determine that the GEICO Giveback credit amount percentage was sufficient, there are Class Members who should have received that credit but did not, as discussed in my earlier reports.[1]  The damage methodology and calculation for these Class Members is straightforward:  the percentage amount of GEICO Giveback that the Court determines was reasonable times the Class Member's premium times the percentage of time the policy was in force on and after March 21, 2020.

5.      The answer to the second question – was the amount of the Giveback credit adequate to reflect the cost savings GEICO would reasonably expect to realize as a result of the pandemic and related government actions at the time GEICO decided to provide the Giveback credit? – requires a mainstream, industry-standard analysis of the reasonableness of the de facto rates used by GEICO:  85% of the rates in effect on March 21, 2020.  To demonstrate that my damage methodology is grounded in and based upon standard actuarial and industry-standard ratemaking methodology, I next provide some definitions.

7.      As I explained in my initial report,[2] under the Statement of Principles of Casualty Actuarial Ratemaking, ratemaking is the process of developing the expected cost of the transfer of risk from the policyholder to the insurer.[3]

8.      The Principles of Casualty Actuarial Ratemaking, adopted by the Casualty Actuarial Society in 1988, has been accepted by insurance regulators as the bedrock guidance, along with the statutory requirements (in states where there is rate regulation) that rates be not excessive, not inadequate and not unfairly discriminatory.  They are an industry-standard.

---

[1]  Report of Birny Birnbaum (March 3, 2022) at pars. 13, 48, 53, 54 and 57a.
[2]  Report of Birny Birnbaum (March 3, 2022) at par. 30.
[3]  *See* "Statement of Principles Regarding Property Casualty Ratemaking" at
https://www.casact.org/sites/default/files/2021-05/Statement-Of-Principles-Ratemaking.pdf

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

9. The ratemaking process is generally carried out in two major steps, as explained in the text *Basic Ratemaking*.[4]  This text is the primary material used to educate those preparing for the actuarial test on ratemaking that is part of actuarial certification.  It reflects and represents an industry standard used by insurers and insurance regulators as the methods for achieving the ratemaking principles.  The first step is determining the overall premium need for the insurer for policies in force during the future period in which the rates will be in effect.[5]  The second step is to assign to each policyholder their share of the premium based on the specific characteristics of their exposure and their risk characteristics.[6]  This second step is called risk classification and involves application of rating factors to the base rate developed in the first step in the ratemaking process.

10. At issue in this matter is only the first step – the overall rate – because GEICO did not consider any individual policyholder or applicant exposure or risk characteristics in determining the amount of the Giveback credit for all who received the credit.  GEICO's Giveback credit was 15% of the policyholders' premium without regard to any differences in exposure or risk characteristics of the consumer.[7]

 "As part of GEICO's ongoing efforts to assist customers during this unprecedented time, a 15% premium credit will be applied to all private passenger auto policies with effective dates on or after April 8, 2020 and before October 8, 2020 . . . The premium credit will be applied uniformly to all coverages on the policy."

11. GEICO's approach was equivalent to reducing base rates (by coverage) by 15% because the 15% credit was applied to all coverages.

12. GEICO engaged in prospective ratemaking when it decided to provide a 15% Giveback credit in 2020.  GEICO did not know with certainty what future claims costs would be – just as with every ratemaking exercise before and after the pandemic, but GEICO anticipated some reductions in claims resulting from the pandemic and related government actions.  The question is whether that 15% reduction was a reasonable and adequate estimate based on information known or available to GEICO when it announced the Giveback program.

---

[4]  See Werner and Modlin, *Basic* Ratemaking, 5th Edition, 2016 at https://www.casact.org/sites/default/files/2021-03/5_Werner_Modlin.pdf

[5] Werner and Modlin, Chapter 8.
[6] Werner and Modlin, Chapter 9.
[7]  See GEICO explanatory memorandum for Giveback program filed with Illinois Department of Insurance, SERFF Filing No. GECC 132333065.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

13.     In my earlier reports, I explicitly rejected a retroactive analysis for a damage methodology. While there are some lines of insurance subject to routine retroactive review[8], personal auto insurance is generally not one of them[9]. My assessment of the sufficiency of the Giveback credit will be based only on information available to GEICO at the time of the Giveback announcement and as the pandemic developed.[10] Thus, my methodology is consistent with and based on industry-standard prospective ratemaking methodologies.

14.     I explained the industry standards and industry-standard methods to developing private passenger automobile rates in my initial report.[11] The insurer starts with historical claims and expense experience and uses or adjusts that historical experience to reflect the best estimate of the future – prospective – costs the insurer will experience during the period the rates will be effect.

15.     We can see how GEICO utilized a variety of assumptions and adjustments to project future costs of the transfer of risk from historical data in the 2018 Illinois rate filing, including:

- Adjusting actual historical earned premiums based on rate changes after the policies in the historical experience were sold;[12]
- Adjusting actual historical loss and allocated loss adjustment expenses for loss trend, loss development and unallocated loss adjustment expense;[13]

---

[8] For example, health insurance under the Affordable Care Act requires insurers to achieve minimum loss ratios of 80% of individual health insurance and 85% for group health insurance. If an insurer fails to meet these loss ratio standards, a premium credit sufficient to achieve the loss ratios is paid to policyholders. Another example is a New York State requirement that group accident and health policies achieve a minimum loss ratio. On March 19, 2024, the New York Department of Financial Services announced restitution to policyholders because an insurer failed to meet the minimum loss ratio standard. See
https://www.dfs.ny.gov/reports_and_publications/press_releases/pr202403191

[9] A few states – and not Illinois – have excess profit laws that apply to private passenger auto insurance.

[10] Report of Birny Birnbaum (March 3, 2022) at par. 68: "The methodology is based on information used by or available to GEICO prior to and after implementing the premium relief program. Information available prior to the implementation will be used to assess the reasonableness of the initial relief based on facts known or knowable at the time. Information following the implementation will be used to assess what GEICO knew or should have known about the adequacy of the premium relief through the course of 2020 and beyond."

[11] Report of Birny Birnbaum (March 3, 2022) at pars. 30 through 40.

[12] GEICO-001045 for Government Employees Insurance Company and GEICO General Insurance Company and GEICO-001049 for GEICO Casualty Company.

[13] GEICO-001044 -5 for Government Employees Insurance Company and GEICO General Insurance Company and GEICO-001048 - 9 for GEICO Casualty Company.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

- Determining the percentage of premium for non-claim expenses and profit (23.7%) and then determining the permissible loss ratio of $1 - 0.237 = 0.763$.[14]  The non-claim expenses – general expenses and other acquisition, commissions and taxes, licenses and fees – were based on a three-year historical average.
- Calculating the indicated overall rate change by coverage by dividing the projected future loss ratio by the permissible loss ratio.[15]

16.    With the exception of the 5% profit provision, GEICO explained the basis for all the assumptions utilized in the rate development analysis with a series of exhibits.  This is an industry standard for information to include in rate filings.  While individual state insurance departments vary in the amount and type of supporting information required in a rate filing, it is industry standard practice in those states with rate regulatory authority to review the filings for completeness and for the reasonableness of the rate development assumptions and, consequently, the reasonableness of the proposed rates.

17.    In states with rate regulatory authority, it is standard practice to evaluate and question improper or unreasonable assumptions in rate filings.  These questions – or objections to the proposed rates – come in the form of objection letters from the state insurance department to the insurance company.[16]  For example, in response to a 2019 rate filing by GEICO, the Pennsylvania Insurance Department issued several objection letters, the resolution of which by GEICO resulted in some changes to the originally-proposed rates.[17] I offer the practice of state insurance regulators as an example to demonstrate that is it possible, and in fact an industry standard practice, to review and evaluate assumptions in proposed rates – just as my damage methodology proposes to do.

---

[14]  GEICO – 001044 for Government Employees Insurance Company and GEICO General Insurance Company and GEICO-001048 for GEICO Casualty Company and GEICO-001081

[15]  GEICO-001044 for Government Employees Insurance Company and GEICO General Insurance Company and GEICO-001048 for GEICO Casualty Company.

[16]  Even in Illinois where there is no rate regulation of private passenger auto insurance, the regulator may issue an objection letter if the filing does not contain the required information.  See GEICO-000815 – 22.

[17]  See SERFF Filing GECC – 132153195 filed with the Pennsylvania Department of Insurance on 11/22/2019. Appendix A contains the objection letters and responses from that filing.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

18. When an insurance regulator declines to approve the proposed rates in a filing and only agrees to approve lower rates, the difference in premium between premium calculated at the proposed rates and premium calculated at the approved rates could be considered the damage to consumers would have suffered if the proposed rates had been used to determine premiums. In fact, that sometimes happens in states where insurers file and use rates without prior regulatory approval and the regulator subsequently challenges those rates as excessive.[18] Again, I offer the above only for the purpose of demonstrating that my methodology of reviewing and questioning the assumptions underlying the GEICO Giveback credit amount is an industry-standard approach.

19. My damage methodology is mainstream and grounded in these industry standards:

- Actuarial principles, standards of practice and texts
- Regulatory principles and practice for the review of rate filings.

My methodology is no different from that employed regularly by insurance regulators. I have personal knowledge of this because I've done this type of review for a variety of organizations since 1991 for a variety of lines of insurance, including private passenger automobile insurance. In fact, it is a methodology I've employed as an insurance regulator and consultant to regulatory agencies and as an expert in litigation. But the methodology – reviewing the insurer's rate development assumptions for reasonableness – is standard across most property-casualty lines of insurance including homeowners, personal and commercial auto and credit-related insurance, such as force-placed property insurance.

20. I next provide a detailed extended explanation of the development of the profit provision to distinguish the target rate of return from the profit provision in insurance rates. As explained further below, I will accept and use the profit provision utilized by GEICO and, consequently, will not alter GEICO's target rate of return or the ensuing profit provision.

21. The profit provision is the percentage of premium needed to enable the insurance company to achieve its after-tax target rate of return, but the profit provision is based on several factors in addition to the target rate of return. For a public company, the after-tax target rate of return is the profit required to attract capital from investors. Once the after-tax target rate of return is established, it is grossed up (by the effective corporate income tax rate) to a before-tax rate of return.

---

[18] See https://www.statesman.com/story/news/2016/09/24/state-farm-lloyds-to-pay-352-million-in-texas-settlement/9986828007/ describing refunds ordered by the Texas Department of Insurance from State Farm for homeowners insurance.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

22.     The before tax rate of return is the return on capital, so the next step is to convert this return on capital to a percentage of premium based on the ratio of premium to capital. To illustrate, assume a 12% target after-tax rate of return and a 20% effective tax rate. This produces a 15% target before tax rate of return (12% divided by (1 – 20%)). Now assume that the insurer writes $2 of premium for every $1 of capital – a capital to premium ratio of ½ or 0.5. This means that the insurer needs 7.5% of profit (and investment income) from premium to achieve the 15% before-tax return on capital.

23.     But the process is not over because the insurer earns investment income by investing the portion of the premium it has set aside for claim and premium reserves. In our illustration, let us assume the insurer earns investment income in an amount equal to 2.5% of premium so the final profit provision is 7.5% minus 2.5% or 5.0% to recognize the income earned from investments in addition to underwriting income.

24.     In my analysis and damage methodology, I will use the profit provision of 5.0% used by GEICO in the most recent Illinois rate filing made prior to the pandemic. Stated differently, I will accept the profit provision used by GEICO. Consequently, my damage analysis and methodology does not alter or modify the return on capital sought by GEICO, but assesses only the expected changes in claim, claim settlement and expense costs as the time GEICO announced the Giveback program.[19]

25.     To illustrate and demonstrate that my methodology does not alter GEICO's target return on capital, assume that GEICO's rates in effect on March 21, 2020 included 75% for claim and claim settlement expenses, 20% for non-claim expenses and a 5% profit provision. In this illustration, I will treat all non-claim expenses as fixed expenses for simplicity even though some of non-claim expenses do vary with premium. When I review GEICO's documents, I'll examine each non-claim expense to determine if that expense would increase or decrease as a percentage of the premium dollar as the pandemic unfolded. The simplified rate indication formula from these assumptions would be:

(0.75 claim / claim settlement costs + 0.20 non-claim expense) / (1 – 0.05 profit)

Or

(0.95 / 0.95) = $1.00 or GEICO's rates in effect on March 21, 2020.

---

[19] See GEICO-001081 for GEICO's selection of a 5% profit provision.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

26.     Now let's assume that non-claim expenses are expected to increase to 25 cents of the premium dollar because of the pandemic and claim and claim settlement expenses are expected to drop by 25% from 75 cents of the March 21, 2020 premium dollar to 56.25 cents.  Using our formula, we get

(0.5625 claim + 0.25 non-claim expense) / (1 – 0.05 profit)  =

 (0.7125 / 0.95) = \$0.85 or a 15% Giveback Credit.

So, in our illustration – which is based on hypothetical numbers – if the reasonable estimates of claim cost reduction was 25% and the reasonable estimate of non-claim expense increase was 25%, then the 15% Giveback Credit was reasonable.

27.     Now, let's assume that the most reasonable estimate of expected claim and claim settlement costs is a drop of 55% from 75 cents of the March 21, 2020 premium dollar to 41.25 cents, while non-claim expenses are expected to increase by 25% from 20 cents to 25 cents.  Now, our formula shows:

(0.4125 claim + 0.25 non-claim expense) / (1 - .05 profit) =

(0.6625 / 0.95) = \$0.70 or a 30% credit needed to reflect lower costs to GEICO

This would mean an additional 15% of Class Members' premium to those who received a Giveback credit and 30% of Class Members' premium for those who did not receive a Giveback credit but should have.

28.     I make three brief points about the illustrations in paragraphs 25 through 27.  First, the methodology does not alter GEICO's target rate of return or profit provision – it remains at 5%.  Second, the illustrations use rounded numbers and simplified assumptions.  I will carefully review each of the claim and non-claim components for pandemic impact based on information available to GEICO when it decided on the Giveback credit.  Third, GEICO had data starting in at least mid-March 2020 showing that the number of new claims as a percentage of vehicles insured had dropped dramatically from the same period a year earlier and from the assumptions in the rates in effect on March 21, 2020.  It is these data, among others, that I will review to assess the adequacy of the 15% credit.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

29.    As noted in paragraph 19, my methodology is mainstream and grounded in industry standards.  My methodology applies industry standard methods to the unique situation of the pandemic.  I've performed similar analyses many times.  I was accepted as an expert on personal auto, assigned risk (residual market) auto, homeowners, title and credit insurance in administrative hearings while serving as the Chief Economist at the Texas Office of Public Insurance Counsel.  I was responsible for the review and approval of personal auto and homeowners rate filings while serving as the Chief Economist and Associate Commissioner at the Texas Department of Insurance.  I've provided expert testimony on the reasonableness of rates for regulatory agencies and consumer organizations on dozens of occasions.  I've authored a text on the subject.[20]

30.    My damage methodology regarding the reasonableness of rates has been accept by several courts. The following come from force-placed insurance cases in which I utilized the same methodology I propose to employ in this matter.  In *Williams vs. Wells Fargo*, the case was about excessive LPI charges for a Florida-only class.  The court found:

"In the areas where Birnbaum's opinions are not fully formed, Birnbaum has articulated the manner and methodology that he will be able to use once he receives full and complete disclosure from Wells Fargo and QBE. He has described with specificity the data that he needs to complete his analysis, and had further explained that the records containing the data are standard records kept by an insurance company. Further, Birnbaum has given preliminary opinions based on the limited data that the Defendants have produced to date. These preliminary findings, based on his extensive training and experience, demonstrate his ability to render liability and damage opinions on a class-wide basis.

Having considered the motion, the arguments, the record, and the relevant legal authorities, and having conducted a complete *Daubert* analysis, the Court finds that Birnbaum is qualified to proffer the testimony rendered in this case regarding the class-wide determination of whether the force-placed insurance premiums were excessive, and if so at what rates. The Court further finds that the methodologies proposed by Birnbaum are reliable and that Birnbaum's testimony will assist the trier of fact, through the application of technical and specialized expertise, to understand the evidence and to determine facts in issue. The Defendants' motion to exclude Birnbaum is denied."[21]

31.    In *Kunzelmann vs. Wells Fargo*, the case also was about excessive force-placed insurance charges by Wells Fargo.  Although the court ultimately declined to certify a class, its class certification ruling was not based on any problem with my damages methodology.  The court found:

---

[20]  http://www.cej-online.org/data.pdf
[21]   Ray Williams, et al vs. Wells Fargo Bank, N.A. et al, United States District Court, Southern District of Florida, Case No. 11-21233-Civ-SCOLA, Order Denying Defendants' Motion to Exclude Expert, and Order Granting Plaintiffs' Motion to Certify Class Action at p 5.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

"To determine liability, Birnbaum assesses whether an expense incurred is unreasonable. DE 63 at 22. Birnbaum defines unreasonable expenses objectively as expenses which are not related to the provision of insurance and expenses which are associated with mortgage servicer activities, whether in the form of a commission or other expense. *Id* at 25.

"Birnbaum's assessment of damages consists of determining the sum of the percentage of premiums paid in commission and adding that any other unreasonable expenses incurred. *Id*. at 27. After determining the amount of damages applicable to an entire class, Birnbaum multiplies that amount by the amount of interest charges associated with the LPI program at issue to determine the overall charges. *Id*. Using the aforementioned calculations Birnbaum claims that damages can be determined on a class-wide basis based on the data maintained by Defendants in the ordinary course of business. *Id*. Thus I find that his methods are sufficiently reliable to satisfy the requirements of *Daubert*. Further, Birnbaum's testimony assists the Court in determining whether a class should be certified in this matter because Birnbaum's testimony may demonstrate the gravamen in this matter "is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that the central to the validity of each of the claims in one stroke. *Wal-Mart Stores, Inc v Dukes*, 131 S. Ct. 2541, 2551 (2011). As such, Plaintiff has demonstrated that Birnbaum is a reliable and credible witness, which justifies the admission of his testimony."[22]

32. In *Lane v Wells Fargo*, the case was once again about excessive force-placed insurance charges to borrowers by Wells Fargo. In its class certification ruling, the court found:

"*Second*, plaintiffs contend that the amount of damages can be calculated as a percentage of "unreasonable expenses" included in the insurance premiums charged to class members. In support, plaintiffs submit the expert report of Birny Birnbaum, who opines that the measure of damages is the percentage of "unreasonable expenses" multiplied by the amount of force-placed charges to class members. Birnbaum defines "unreasonable expenses" as those included in the premium charged to borrowers that were not actually "associated with the provision of" force-placed insurance (Dkt. No. 118-1). According to Birnbaum, such expenses would include an unearned commission or kickback. They would also include expenses related to servicing the entire portfolio of mortgages, as those expenses would be incurred by Wells Fargo regardless of whether any particular mortgage required force-placed insurance (Birnbaum Report at 36). Plaintiffs have a class-wide method for trying to prove damages.[23]"

---

[22]  Mark Kunzelmann, et al vs. Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., United States District Court, Southern District of Florida, Case No. 9:11-cv-81373-DMB/DLB, Order Denying Defendant's Motion to Exclude Expert Witness Birny Birnbaum and Incorporated Memorandum of Law at p. 6.

[23]  Conditional Order Granting in Part and Denying in Part Motion to Certify Class, Lane, et al v. Wells Fargo Bank, N.A. in the United States District Court for the Northern District of California, No. C 12-04026 WHA.

Supplemental Declaration of Birny Birnbaum
Thomas, et al v GEICO Casualty Company, et al, Case No. 1:20- cv-04306
April 11, 2024

33.     Based on my training, experience and these courts' analyses, I believe my methodology
        in this matter is mainstream and grounded in industry standard practices for which I am
        well-qualified to calculate damages and to offer the opinions expressed above.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Executed on April 11, 2024.

*Birny Birnbaum*

Birny Birnbaum

Supplemental Declaration of Birny Birnbaum

*Thomas et al. v. GEICO Casualty Company, et al.*

Case No. 1:20-cv-04306

In the United States District Court, Northern District of Illinois

April 11, 2024

**Appendix A**

**Examples of Regulatory Objection Letters related to a
2019 GEICO Private Passenger Auto Insurance Rate Filing in Pennsylvania**

*SERFF Tracking #:* GECC-132153195 Case: 1:20-State Tracking #: Company Tracking #: PageID: 3022 Document #: 210-1 Filed: 04/11/24 2019-312

*State:* Pennsylvania
*TOI/Sub-TOI:* 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA)
*Product Name:* 312 - Auto Rate/Rule
*Project Name/Number:* 312 - Auto Rate/Rule/2019-312

*First Filing Company:* GEICO Casualty Company, ...

# Correspondence Summary

## Dispositions

| Status | Created By | Created On | Date Submitted |
|---|---|---|---|
| Approved | Xiaofeng Lu | 03/11/2020 | 03/11/2020 |

## Objection Letters and Response Letters

### Objection Letters

| Status | Created By | Created On | Date Submitted |
|---|---|---|---|
| Clarification Requested | Michael McKenney | 03/10/2020 | 03/10/2020 |
| Clarification Requested | Xiaofeng Lu | 02/06/2020 | 02/06/2020 |
| Clarification Requested | Xiaofeng Lu | 01/30/2020 | 01/30/2020 |
| Clarification Requested | Xiaofeng Lu | 01/14/2020 | 01/14/2020 |
| Additional Information Needed | Xiaofeng Lu | 12/09/2019 | 12/09/2019 |

### Response Letters

| Responded By | Created On | Date Submitted |
|---|---|---|
| Pearl Nana-Atoo | 03/11/2020 | 03/11/2020 |
| Pearl Nana-Atoo | 02/11/2020 | 02/11/2020 |
| Pearl Nana-Atoo | 02/05/2020 | 02/05/2020 |
| Pearl Nana-Atoo | 01/23/2020 | 01/23/2020 |
| Melvina Brown | 01/03/2020 | 01/03/2020 |

## Filing Notes

| Subject | Note Type | Created By | Created On | Date Submitted |
|---|---|---|---|---|
| Conference Call | Note To Reviewer | Pearl Nana-Atoo | 03/09/2020 | 03/09/2020 |
| Need to reschedule Conf Call | Note To Filer | Michael McKenney | 03/06/2020 | 03/06/2020 |
| Conference Call Requested | Note To Filer | Michael McKenney | 03/03/2020 | 03/03/2020 |
| Filing Status | Note To Filer | Michael McKenney | 02/28/2020 | 02/28/2020 |
| Status of Filing | Note To Reviewer | Pearl Nana-Atoo | 02/28/2020 | 02/28/2020 |
| Deemer Provision Waver | Note To Reviewer | Pearl Nana-Atoo | 02/11/2020 | 02/11/2020 |
| Extension | Note To Filer | Xiaofeng Lu | 01/22/2020 | 01/22/2020 |
| Request for Extension | Note To Reviewer | Pearl Nana-Atoo | 01/21/2020 | 01/21/2020 |
| Extension | Note To Filer | Xiaofeng Lu | 12/18/2019 | 12/18/2019 |
| Request for Extension | Note To Reviewer | Pearl Nana-Atoo | 12/16/2019 | 12/16/2019 |

| | |
|---|---|
| *State:* | Pennsylvania |
| *TOI/Sub-TOI:* | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| *Product Name:* | 312 - Auto Rate/Rule |
| *Project Name/Number:* | 312 - Auto Rate/Rule/2019-312 |

| | |
|---|---|
| *First Filing Company:* | GEICO Casualty Company, ... |

# Disposition

Disposition Date: 03/11/2020
Effective Date (New): 03/16/2020
Effective Date (Renewal): 03/30/2020
Status: Approved

Comment:

| Company Name: | Overall % Indicated Change: | Overall % Rate Impact: | Written Premium Change for this Program: | Number of Policy Holders Affected for this Program: | Written Premium for this Program: | Maximum % Change (where req'd): | Minimum % Change (where req'd): |
|---|---|---|---|---|---|---|---|
| GEICO Casualty Company | 15.700% | 3.000% | $6,005,720 | 103,224 | $200,190,651 | 15.000% | -7.500% |
| GEICO Advantage Insurance Company | 39.000% | 4.000% | $9,974,427 | 192,193 | $249,360,671 | 15.000% | -4.000% |
| GEICO Choice Insurance Company | 19.800% | 2.800% | $2,955,936 | 55,069 | $105,569,136 | 15.000% | -3.800% |

**Overall Rate Information for Multiple Company Filings**

| | |
|---|---|
| **Overall Percentage Rate Indicated For This Filing** | 26.950% |
| **Overall Percentage Rate Impact For This Filing** | 3.410% |
| **Effect of Rate Filing-Written Premium Change For This Program** | $18,936,083 |
| **Effect of Rate Filing - Number of Policyholders Affected** | 350,486 |

| Schedule | Schedule Item | Schedule Item Status | Public Access |
|---|---|---|---|
| **Rate (revised)** | GC General Rules Section | | Yes |
| **Rate** | GC General Rules Section | | Yes |
| **Rate (revised)** | GV General Rules Section | | Yes |
| **Rate** | GV General Rules Section | | Yes |
| **Rate (revised)** | GH General Rules Section | | Yes |
| **Rate** | GH General Rules Section | | Yes |
| **Rate** | GC Private Passenger Rules Section | | Yes |
| **Rate** | GV Private Passenger Rules Section | | Yes |
| **Rate** | GH Private Passenger Rules Section | | Yes |

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

| Schedule | Schedule Item | Schedule Item Status | Public Access |
|---|---|---|---|
| **Rate** | GC Miscellaneous Rules Section | | Yes |
| **Rate** | GV Miscellaneous Rules Section | | Yes |
| **Rate** | GH  Miscellaneous Rules Section | | Yes |
| **Rate** | GC Rate Pages | | Yes |
| **Rate** | GV Rate Pages | | Yes |
| **Rate** | GH Rate Pages | | Yes |
| **Supporting Document** | Authorization to File (PC) | | Yes |
| **Supporting Document (revised)** | Actuarial Explanatory Memorandum & Supporting Exhibits (PC) | | Yes |
| **Supporting Document** | Actuarial Explanatory Memorandum & Supporting Exhibits (PC) | | Yes |
| **Supporting Document (revised)** | Markups | | Yes |
| **Supporting Document** | Markups | | Yes |
| **Supporting Document** | Change Sheets and Cover Letter | | Yes |
| **Supporting Document** | Response Memo 1 | | Yes |

| | |
|---|---|
| **State:** | Pennsylvania |
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| **Product Name:** | 312 - Auto Rate/Rule |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 |

**First Filing Company:** GEICO Casualty Company, ...

# Objection Letter

| | |
|---|---|
| Objection Letter Status | Clarification Requested |
| Objection Letter Date | 03/10/2020 |
| Submitted Date | 03/10/2020 |
| Respond By Date | 03/12/2020 |

*Dear Pearl Nana-Atoo,*

**Introduction:**

As discussed on yesterday's conference call, your stacked and non-stacked policy forms do not appear to differ with respect to how they would respond to a claim for stacked inter-policy uninsured or underinsured motorists coverage.

Our stated concern was with the rate differential you are proposing in this filing given that the policy forms themselves do not appear to provide coverage that differs with respect to the handling of claims for inter-policy stacked coverage.

During the conference call, you stated that you would rely on the waivers found at 75 Pa. C.S. § 1738(d) to differentiate a policy that does not provide inter-policy stacked coverage from one that otherwise would. You further stated that you believe these waivers are valid with respect to waiving inter-policy stacking, inclusive of single-vehicle policies.

Please confirm that the above accurately encapsulates our conversation and your position on this matter.

**Conclusion:**

*Sincerely,*
*Michael McKenney*

| | |
|---|---|
| **State:** | Pennsylvania |
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| **Product Name:** | 312 - Auto Rate/Rule |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 |

**First Filing Company:** GEICO Casualty Company, ...

# Objection Letter

| | |
|---|---|
| Objection Letter Status | Clarification Requested |
| Objection Letter Date | 02/06/2020 |
| Submitted Date | 02/06/2020 |
| Respond By Date | 02/13/2020 |

*Dear Pearl Nana-Atoo,*

**Introduction:**

Based on your response, we are requesting the following information. To facilitate a timely review, we request this information be provided within 7 days of the date of this letter.

1. Please note that the Department's original objection #4 remains applicable.

A.) Please confirm that you only propose to vary the territorial relativity change by territory for BI, PD, UM and UIM, and there are no territorial relativity changes for FPB/MED, Comp and Coll by territory. If not, the requested detailed support must be provided for the companies and risk groups.

B.) The support for GC territorial change is only provided for Risk Group B. Please confirm that the territorial relativity changes for Risk Groups CD are the same as Risk Groups B by territory for GC. If not, the requested detailed support must be provided.

C.) Exhibit GC-2 Rate Changes by Territory.xlsb that provided on February 5, 2020 is only for BI. Please provide the requested support for other coverages as well. Also, there is no information showing how you get the selected base rate by territory.

D.) The example in Exhibit GVGH-2 Rate Changes by Territory.xlsb that provided on February 5, 2020 doesn't show how you get the selected base rate by territory.

2. Please provide a note to reviewer via SERFF that you will waive the deemer provision for this filing.

Upon your response to this objection letter, the Department will continue to review your filing.

If you have any questions or difficulties in responding to the above data request, please call me at (717)783-0693.

**Conclusion:**

*Sincerely,*
*Xiaofeng Lu*

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

# Objection Letter

| | |
|---|---|
| Objection Letter Status | Clarification Requested |
| Objection Letter Date | 01/30/2020 |
| Submitted Date | 01/30/2020 |
| Respond By Date | 02/06/2020 |

Dear Pearl Nana-Atoo,

**Introduction:**

Based on your response, we are requesting the following information. To facilitate a timely review, we request this information be provided within 7 days of the date of this letter.

1. Please note that the Department's original objection #4 remains applicable. Please provide cell formulas/detailed derivations for EACH Selected Base Rate in Exhibits GC-2 Rate Changes by Territory.xlsb and GVGH-2 Rate Changes by Territory.xlsb.

2. Please provide definitions for all the territories and territory groups.

Upon your response to this objection letter, the Department will continue to review your filing.

If you have any questions or difficulties in responding to the above data request, please call me at (717)783-0693.

**Conclusion:**

Sincerely,
Xiaofeng Lu

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

# Objection Letter

| | |
|---|---|
| Objection Letter Status | Clarification Requested |
| Objection Letter Date | 01/14/2020 |
| Submitted Date | 01/14/2020 |
| Respond By Date | 01/21/2020 |

Dear Pearl Nana-Atoo,

**Introduction:**

Based on your response, we are requesting the following information. To facilitate a timely review, we request this information be provided within 7 days of the date of this letter.

1. Please note that the Department's original objection 4 remains applicable.

A.) Please provide cell formulas for Exhibits GVGH-1 SOI.xlsb, GVGH-4 ERS Vehicle Age Factors.xlsb, GC-3 ERS Age Factors.xlsb, GC-1 SOI.xlsb, G-9 Multi-Line.xlsb, G-10 Offsets.xlsb and G-11 RV Liability Factors.xlsx.

B.) Please provide cell formulas for each Trended Developed Loss, Selected Relativity, Selected Base Rate, Selected % Change for Exhibits GC-2 Rate Changes by Territory.xlsb and GVGH-2 Rate Changes by Territory.xlsb. Also, please provide explanation and support for all the base rate adjustment factors for all the territorial changes.

C.)Please try to provide underlying data, derivation with cell formulas to support the changes in Exhibits GC-5 UM UIM Base Rate Differentials.xlsx and GVGH-6 UM Stacking Differentials.xlsb

Upon your response to this objection letter, the Department will continue to review your filing.

If you have any questions or difficulties in responding to the above data request, please call me at (717)783-0693.

**Conclusion:**

Sincerely,
Xiaofeng Lu

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

# Objection Letter

| Objection Letter Status | Additional Information Needed |
|---|---|
| Objection Letter Date | 12/09/2019 |
| Submitted Date | 12/09/2019 |
| Respond By Date | 12/16/2019 |

*Dear Pearl Nana-Atoo,*

**Introduction:**

The Pennsylvania Insurance Department has begun its review of the above captioned filing.  In order to properly review the filing, we are requesting the following information.  To facilitate a timely review, we request this information be provided within 7 days of the date of this letter.

1.  For each filed company, assuming you write more than one personal auto program in each company in Pennsylvania, please provide the impact of the pending filing on each company's total Pennsylvania personal auto book of business.

2.  Please provide frequency distributions (histograms) showing both the percentage change impact and the dollar change impact of the proposed changes (with capping) on your policyholders.  You should also report the maximum dollar and percentage increases (with capping) any insured would receive as a result of the changes contained in the filing.

3. When we make the pdf file of the filing, it shows "Adobe Acrobat could not open the pdf file because it is either not a supported file type or because the file has been damaged (for example, it was sent as an email attachment and wasn't correctly decoded)". Please try to re-upload all the information for the filing.

4. Please provide the information (including but not limited to the detailed underlying data and derivation with cell formulas) upon which you support all the indications and proposed rate and factor changes in the filing. If/where appropriate, please include the applicable Excel spreadsheets with cell formulas.  Finally, if selected rating values do not equal the indicated rating values, please provide the additional information upon which you support/explain the differences.

Upon your response with the above requested amendment, the Department will continue to review your filing.

The Department is committed to an expeditious review of your filing. However, the review period of your filing has been extended an additional thirty (30) days in accordance with Section 2003 of Act 6 of 1990 in the event additional time is required to complete the review of your filing.  If you have any questions or difficulties in responding to the above data request, please call me at (717)783-0693.

**Conclusion:**

*Sincerely,*
*Xiaofeng Lu*

| **State:** | Pennsylvania | **First Filing Company:** | GEICO Casualty Company, ... |
|---|---|---|---|
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| **Product Name:** | 312 - Auto Rate/Rule | | |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 | | |

# Response Letter

| | |
|---|---|
| Response Letter Status | Submitted to State |
| Response Letter Date | 03/11/2020 |
| Submitted Date | 03/11/2020 |

*Dear Xiaofeng Lu,*

**Introduction:**

Thank you for reviewing our filing. The following is in response to your Objection Letter dated 03/10/2020.


### Response 1

**Comments:**

We confirm that the above accurately encapsulates our conversation and our position on this matter.

**Changed Items:**

No Form Schedule items changed.

No Rate/Rule Schedule items changed.

No Supporting Documents changed.

**Conclusion:**

Based on this additional information, we would appreciate your further consideration of our request.

Sincerely,

Pearl Nana-Atoo

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
| --- | --- | --- | --- |
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

# Response Letter

| Response Letter Status | Submitted to State |
| --- | --- |
| Response Letter Date | 02/11/2020 |
| Submitted Date | 02/11/2020 |

*Dear Xiaofeng Lu,*

**Introduction:**

Thank you for reviewing our filing. The following is in response to your Objection Letter dated 02/06/20.

**Response 1**

  **Comments:**

Please see attached memo and exhibits in response to your objection.

**Changed Items:**

No Form Schedule items changed.

No Rate/Rule Schedule items changed.

No Supporting Documents changed.

**Conclusion:**

Based on this additional information, we would appreciate your further consideration of our request.

Sincerely,

Jennifer Pena

| | |
|---|---|
| **State:** | Pennsylvania |
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| **Product Name:** | 312 - Auto Rate/Rule |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 |

**First Filing Company:** GEICO Casualty Company, ...

# Response Letter

| | |
|---|---|
| Response Letter Status | Submitted to State |
| Response Letter Date | 02/05/2020 |
| Submitted Date | 02/05/2020 |

*Dear Xiaofeng Lu,*

**Introduction:**

*Thank you for reviewing our filing. The following is in response to your Objection Letter dated 01/30/2020.*

**Response 1**

**Comments:**

*Please see attached response memorandum and exhibits you requested.*

**Changed Items:**

*No Form Schedule items changed.*

*No Rate/Rule Schedule items changed.*

*No Supporting Documents changed.*

**Conclusion:**

*Based on this additional information, we would appreciate your further consideration of our request.*

*Sincerely,*

*Jennifer Pena*

| **State:** | Pennsylvania | **First Filing Company:** | GEICO Casualty Company, ... |
|---|---|---|---|
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| **Product Name:** | 312 - Auto Rate/Rule | | |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 | | |

# Response Letter

| Response Letter Status | Submitted to State |
|---|---|
| Response Letter Date | 01/23/2020 |
| Submitted Date | 01/23/2020 |

Dear Xiaofeng Lu,

**Introduction:**

Thank you for reviewing our filing. The following is in response to your Objection Letter dated 01.14.20.

**Response 1**

  **Comments:**

   Please see the attached Response Memo and Exhibits.

**Changed Items:**

No Form Schedule items changed.

No Rate/Rule Schedule items changed.

No Supporting Documents changed.

**Conclusion:**

Based on this additional information, we would appreciate your further consideration of our request.

Sincerely,

Pearl Nana-Atoo

| | |
|---|---|
| **State:** | Pennsylvania |
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| **Product Name:** | 312 - Auto Rate/Rule |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 |

**First Filing Company:** GEICO Casualty Company, ...

# Response Letter

| | |
|---|---|
| Response Letter Status | Submitted to State |
| Response Letter Date | 01/03/2020 |
| Submitted Date | 01/03/2020 |

*Dear Xiaofeng Lu,*

**Introduction:**

Thank you for reviewing our filing. The following is in response to your Objection Letter dated July 2, 2015.

**Response 1**

**Comments:**

Please see the attached Response Memo and revised rules and exhibits.

**Changed Items:**

No Form Schedule items changed.

## Rate Schedule Item Changes

| Item No. | Exhibit Name | Rule # or Page # | Rate Action | Previous State Filing Number | Date Submitted |
|---|---|---|---|---|---|
| 1 | GC General Rules Section | G-11(R) | Replacement | | 01/03/2020 By: Jonathan Daniels |
| *Previous Version* | | | | | |
| *1* | *GC General Rules Section* | *G-11(R)* | *Replacement* | | *11/22/2019 By: Melvina Brown* |
| 2 | GV General Rules Section | G-11(1) | Replacement | | 01/03/2020 By: Jonathan Daniels |
| *Previous Version* | | | | | |
| *2* | *GV General Rules Section* | *G-11(1)* | *Replacement* | | *11/22/2019 By: Melvina Brown* |
| 3 | GH General Rules Section | G-11(1) | Replacement | | 01/03/2020 By: Jonathan Daniels |
| *Previous Version* | | | | | |
| *3* | *GH General Rules Section* | *G-11(1)* | *Replacement* | | *11/22/2019 By: Melvina Brown* |

| | |
|---|---|
| *State:* | Pennsylvania |
| *TOI/Sub-TOI:* | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| *Product Name:* | 312 - Auto Rate/Rule |
| *Project Name/Number:* | 312 - Auto Rate/Rule/2019-312 |

| | |
|---|---|
| *First Filing Company:* | GEICO Casualty Company, ... |

| **Supporting Document Schedule Item Changes** | |
|---|---|
| **Satisfied - Item:** | Actuarial Explanatory Memorandum & Supporting Exhibits (PC) |
| **Comments:** | |
| **Attachment(s):** | PA TOC.pdf<br>PA Memo.pdf<br>GVGH-1 SOI.pdf<br>GVGH-4 ERS Age.pdf<br>GVGH-6 Stacking Base Rate Differentials1.pdf<br>GC-1 SOI.pdf<br>G-4 ULAE.pdf<br>GC-3 ERS Age.pdf<br>GC-5 Stacking Base Rate Differentials.pdf<br>G-1 CAT Load.pdf<br>G-2 LDF.pdf<br>G-3 Trend.pdf<br>G-5 PLR.pdf<br>G-6 ROR.pdf<br>G-9 Multi-Line.pdf<br>G-2 LDF.xlsb<br>G-10 Offsets.pdf<br>G-11 RV Liability Factors.pdf<br>GVGH-1 SOI.xlsb<br>GVGH-4 ERS Vehicle Age Factors.xlsb<br>GC-3 ERS Age Factors.xlsb<br>GC-5 UM UIM Base Rate Differentials.xlsx<br>GVGH-6 UM Stacking Differentials.xlsb<br>GC-1 SOI.xlsb<br>G-1 CAT Load.xlsb<br>G-3 Trend.xlsb<br>G-4 ULAE.xlsb<br>G-5 PLR.xlsb<br>G-11 RV Liability Factors.xlsx<br>G-6 ROR.xlsx<br>G-9 Multi-Line.xlsb<br>G-10 Offsets.xlsb<br>GVGH-3 ILF.pdf<br>GVGH-3 ILF.xlsx<br>GC-6 Impact of Proposed Changes.pdf<br>GC-6 Impact of Proposed Changes.xlsb<br>GC-7 Market Dislocation.pdf<br>GC-7 Market Dislocation.xlsb<br>GC-2 Rate Changes by Territory.xlsb<br>G-7 Multi-Vehicle Discount.xlsb<br>G-12 Impact of Proposed Changes.pdf<br>G-12 Impact of Proposed Changes.xlsb<br>G-7 Multi-Vehicle Discount.pdf |

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

|  | G-8 Accident Factors.pdf<br>G-8 Accident Factors.xlsb<br>GC-2 Rate Changes by Territory.pdf<br>GVGH-2 Rate Changes by Territory_Part1.pdf<br>GVGH-2 Rate Changes by Territory_Part2.pdf<br>GVGH-2 Rate Changes by Territory_Part3.pdf<br>GVGH-2 Rate Changes by Territory.xlsb<br>GVGH-5 ERS Coverage Factors.xlsb<br>GC-4 ERS Coverage Factors.pdf<br>GC-4 ERS Coverage Factors.xlsb<br>GVGH-5 ERS Coverage Factors.pdf<br>GVGH-8 Market Dislocation.pdf<br>GVGH-8 Market Dislocation.xlsb<br>GVGH-7 Impact of Proposed Changes.pdf<br>GVGH-7 Impact of Proposed Changes.xlsb |
|---|---|
| *Previous Version* | |
| **Satisfied - Item:** | *Actuarial Explanatory Memorandum & Supporting Exhibits (PC)* |
| **Comments:** | |
| **Attachment(s):** | *PA TOC.pdf<br>PA Memo.pdf<br>GVGH-1 SOI.pdf<br>GVGH-2 Rate Change by Territory1.pdf<br>GVGH-2 Rate Change by Territory2.pdf<br>GVGH-4 ERS Age.pdf<br>GVGH-5 ERS Coverage Factor.pdf<br>GVGH-6 Stacking Base Rate Differentials1.pdf<br>GVGH-7 Impact of Proposed Changes on Policyholders.pdf<br>GVGH-8 Market Dislocation.pdf<br>GC-1 SOI.pdf<br>GC-2 Rate Change by Territory.pdf<br>GC-3 ERS Age.pdf<br>GC-4 ERS Coverage Factor.pdf<br>GC-5 Stacking Base Rate Differentials.pdf<br>GC-6 Impact of Proposed Changes on Policyholders.pdf<br>GC-7 Market Dislocation.pdf<br>G-1 CAT Load.pdf<br>G-2 LDF.pdf<br>G-3 Trend.pdf<br>G-4 ULAE.pdf<br>G-5 PLR.pdf<br>G-6 ROR.pdf<br>G-7 Multi-Vehicle.pdf<br>G-8 Accident Factors.pdf<br>G-9 Multi-Line.pdf<br>G-10 Offsets.pdf<br>G-11 RV Liability Factors.pdf* |

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

GVGH-1 SOI.xlsb
GVGH-2 Rate Changes by Territory.xlsb
GVGH-4 ERS Vehicle Age Factors.xlsb
GVGH-5 ERS Coverage Factors.xlsb
GC-3 ERS Age Factors.xlsb
GC-4 ERS Coverage Factors.xlsx
GC-5 UM UIM Base Rate Differentials.xlsx
GC-6 Impact of Proposed Changes.xlsx
GC-7 Market Dislocation.xlsb
GVGH-6 UM Stacking Differentials.xlsx
GVGH-7 Impact of Proposed Changes.xlsx
GVGH-8 Market Dislocation.xlsb
GC-1 SOI.xlsb
GC-2 Rate Changes by Territory.xlsb
G-1 CAT Load.xlsb
G-2 LDF.xlsb
G-3 Trend.xlsb
G-4 ULAE.xlsb
G-5 PLR.xlsb
G-6 ROR.xlsx
G-7 Multi-Vehicle Discount.xlsb
G-8 Accident Factors.xlsb
G-9 Multi-Line.xlsb
G-10 Offsets.xlsb
G-11 RV Liability Factors.xlsx
GVGH-3 ILF.pdf
GVGH-3 ILF.xlsx

| | |
|---|---|
| *State:* | Pennsylvania |
| *TOI/Sub-TOI:* | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| *Product Name:* | 312 - Auto Rate/Rule |
| *Project Name/Number:* | 312 - Auto Rate/Rule/2019-312 |

| *First Filing Company:* | GEICO Casualty Company, ... |
|---|---|

| **Supporting Document Schedule Item Changes** | |
|---|---|
| **Satisfied - Item:** | Actuarial Explanatory Memorandum & Supporting Exhibits (PC) |
| **Comments:** | |
| **Attachment(s):** | PA TOC.pdf |
| | PA Memo.pdf |
| | GVGH-1 SOI.pdf |
| | GVGH-4 ERS Age.pdf |
| | GVGH-6 Stacking Base Rate Differentials1.pdf |
| | GC-1 SOI.pdf |
| | G-4 ULAE.pdf |
| | GC-3 ERS Age.pdf |
| | GC-5 Stacking Base Rate Differentials.pdf |
| | G-1 CAT Load.pdf |
| | G-2 LDF.pdf |
| | G-3 Trend.pdf |
| | G-5 PLR.pdf |
| | G-6 ROR.pdf |
| | G-9 Multi-Line.pdf |
| | G-2 LDF.xlsb |
| | G-10 Offsets.pdf |
| | G-11 RV Liability Factors.pdf |
| | GVGH-1 SOI.xlsb |
| | GVGH-4 ERS Vehicle Age Factors.xlsb |
| | GC-3 ERS Age Factors.xlsb |
| | GC-5 UM UIM Base Rate Differentials.xlsx |
| | GVGH-6 UM Stacking Differentials.xlsb |
| | GC-1 SOI.xlsb |
| | G-1 CAT Load.xlsb |
| | G-3 Trend.xlsb |
| | G-4 ULAE.xlsb |
| | G-5 PLR.xlsb |
| | G-11 RV Liability Factors.xlsx |
| | G-6 ROR.xlsx |
| | G-9 Multi-Line.xlsb |
| | G-10 Offsets.xlsb |
| | GVGH-3 ILF.pdf |
| | GVGH-3 ILF.xlsx |
| | GC-6 Impact of Proposed Changes.pdf |
| | GC-6 Impact of Proposed Changes.xlsb |
| | GC-7 Market Dislocation.pdf |
| | GC-7 Market Dislocation.xlsb |
| | GC-2 Rate Changes by Territory.xlsb |
| | G-7 Multi-Vehicle Discount.xlsb |
| | G-12 Impact of Proposed Changes.pdf |
| | G-12 Impact of Proposed Changes.xlsb |
| | G-7 Multi-Vehicle Discount.pdf |

| | |
|---|---|
| *State:* | Pennsylvania |
| *TOI/Sub-TOI:* | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| *Product Name:* | 312 - Auto Rate/Rule |
| *Project Name/Number:* | 312 - Auto Rate/Rule/2019-312 |

*First Filing Company:* GEICO Casualty Company, ...

| | |
|---|---|
| | G-8 Accident Factors.pdf |
| | G-8 Accident Factors.xlsb |
| | GC-2 Rate Changes by Territory.pdf |
| | GVGH-2 Rate Changes by Territory_Part1.pdf |
| | GVGH-2 Rate Changes by Territory_Part2.pdf |
| | GVGH-2 Rate Changes by Territory_Part3.pdf |
| | GVGH-2 Rate Changes by Territory.xlsb |
| | GVGH-5 ERS Coverage Factors.xlsb |
| | GC-4 ERS Coverage Factors.pdf |
| | GC-4 ERS Coverage Factors.xlsb |
| | GVGH-5 ERS Coverage Factors.pdf |
| | GVGH-8 Market Dislocation.pdf |
| | GVGH-8 Market Dislocation.xlsb |
| | GVGH-7 Impact of Proposed Changes.pdf |
| | GVGH-7 Impact of Proposed Changes.xlsb |
| **Previous Version** | |
| **Satisfied - Item:** | *Actuarial Explanatory Memorandum & Supporting Exhibits (PC)* |
| **Comments:** | |
| **Attachment(s):** | *PA TOC.pdf* |
| | *PA Memo.pdf* |
| | *GVGH-1 SOI.pdf* |
| | *GVGH-2 Rate Change by Territory1.pdf* |
| | *GVGH-2 Rate Change by Territory2.pdf* |
| | *GVGH-4 ERS Age.pdf* |
| | *GVGH-5 ERS Coverage Factor.pdf* |
| | *GVGH-6 Stacking Base Rate Differentials1.pdf* |
| | *GVGH-7 Impact of Proposed Changes on Policyholders.pdf* |
| | *GVGH-8 Market Dislocation.pdf* |
| | *GC-1 SOI.pdf* |
| | *GC-2 Rate Change by Territory.pdf* |
| | *GC-3 ERS Age.pdf* |
| | *GC-4 ERS Coverage Factor.pdf* |
| | *GC-5 Stacking Base Rate Differentials.pdf* |
| | *GC-6 Impact of Proposed Changes on Policyholders.pdf* |
| | *GC-7 Market Dislocation.pdf* |
| | *G-1 CAT Load.pdf* |
| | *G-2 LDF.pdf* |
| | *G-3 Trend.pdf* |
| | *G-4 ULAE.pdf* |
| | *G-5 PLR.pdf* |
| | *G-6 ROR.pdf* |
| | *G-7 Multi-Vehicle.pdf* |
| | *G-8 Accident Factors.pdf* |
| | *G-9 Multi-Line.pdf* |
| | *G-10 Offsets.pdf* |
| | *G-11 RV Liability Factors.pdf* |

| | |
|---|---|
| **State:** | Pennsylvania |
| **TOI/Sub-TOI:** | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| **Product Name:** | 312 - Auto Rate/Rule |
| **Project Name/Number:** | 312 - Auto Rate/Rule/2019-312 |

| | |
|---|---|
| **First Filing Company:** | GEICO Casualty Company, ... |

GVGH-1 SOI.xlsb
GVGH-2 Rate Changes by Territory.xlsb
GVGH-4 ERS Vehicle Age Factors.xlsb
GVGH-5 ERS Coverage Factors.xlsb
GC-3 ERS Age Factors.xlsb
GC-4 ERS Coverage Factors.xlsb
GC-5 UM UIM Base Rate Differentials.xlsx
GC-6 Impact of Proposed Changes.xlsb
GC-7 Market Dislocation.xlsb
GVGH-6 UM Stacking Differentials.xlsb
GVGH-7 Impact of Proposed Changes.xlsb
GVGH-8 Market Dislocation.xlsb
GC-1 SOI.xlsb
GC-2 Rate Changes by Territory.xlsb
G-1 CAT Load.xlsb
G-2 LDF.xlsb
G-3 Trend.xlsb
G-4 ULAE.xlsb
G-5 PLR.xlsx
G-6 ROR.xlsx
G-7 Multi-Vehicle Discount.xlsb
G-8 Accident Factors.xlsb
G-9 Multi-Line.xlsb
G-10 Offsets.xlsb
G-11 RV Liability Factors.xlsx
GVGH-3 ILF.pdf
GVGH-3 ILF.xlsx

| **Satisfied - Item:** | Markups |
|---|---|
| **Comments:** | |
| **Attachment(s):** | PA-GC-priv-2019-312 Markup.pdf<br>PA-GV-priv-2019-312 Markup.pdf<br>PA-GH-priv-2019-312 Markup.pdf<br>PA-GC-misc-2019-312 Markup.pdf<br>PA-GV-misc-2019-312 Markup.pdf<br>PA-GH-misc-2019-312 Markup.pdf<br>PA-gen-rules-2019-312 Markup Revised.pdf<br>PA-GV-gen-2019-312 Markup Revised.pdf<br>PA-GH-gen-2019-312 Markup Revised.pdf |
| *Previous Version* | |
| **Satisfied - Item:** | *Markups* |
| **Comments:** | |
| **Attachment(s):** | *PA-GC-gen-2019-312 Markup.pdf*<br>*PA-GV-gen-2019-312 Markup.pdf* |

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

PA-GH-gen-2019-312 Markup.pdf
PA-GC-priv-2019-312 Markup.pdf
PA-GV-priv-2019-312 Markup.pdf
PA-GH-priv-2019-312 Markup.pdf
PA-GC-misc-2019-312 Markup.pdf
PA-GV-misc-2019-312 Markup.pdf
PA-GH-misc-2019-312 Markup.pdf

| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
|---|---|---|---|
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

| **Supporting Document Schedule Item Changes** | |
|---|---|
| **Satisfied - Item:** | Actuarial Explanatory Memorandum & Supporting Exhibits (PC) |
| **Comments:** | |
| **Attachment(s):** | PA TOC.pdf<br>PA Memo.pdf<br>GVGH-1 SOI.pdf<br>GVGH-4 ERS Age.pdf<br>GVGH-6 Stacking Base Rate Differentials1.pdf<br>GC-1 SOI.pdf<br>G-4 ULAE.pdf<br>GC-3 ERS Age.pdf<br>GC-5 Stacking Base Rate Differentials.pdf<br>G-1 CAT Load.pdf<br>G-2 LDF.pdf<br>G-3 Trend.pdf<br>G-5 PLR.pdf<br>G-6 ROR.pdf<br>G-9 Multi-Line.pdf<br>G-2 LDF.xlsb<br>G-10 Offsets.pdf<br>G-11 RV Liability Factors.pdf<br>GVGH-1 SOI.xlsb<br>GVGH-4 ERS Vehicle Age Factors.xlsb<br>GC-3 ERS Age Factors.xlsb<br>GC-5 UM UIM Base Rate Differentials.xlsx<br>GVGH-6 UM Stacking Differentials.xlsb<br>GC-1 SOI.xlsb<br>G-1 CAT Load.xlsb<br>G-3 Trend.xlsb<br>G-4 ULAE.xlsb<br>G-5 PLR.xlsb<br>G-11 RV Liability Factors.xlsx<br>G-6 ROR.xlsx<br>G-9 Multi-Line.xlsb<br>G-10 Offsets.xlsb<br>GVGH-3 ILF.pdf<br>GVGH-3 ILF.xlsx<br>GC-6 Impact of Proposed Changes.pdf<br>GC-6 Impact of Proposed Changes.xlsb<br>GC-7 Market Dislocation.pdf<br>GC-7 Market Dislocation.xlsb<br>GC-2 Rate Changes by Territory.xlsb<br>G-7 Multi-Vehicle Discount.xlsb<br>G-12 Impact of Proposed Changes.pdf<br>G-12 Impact of Proposed Changes.xlsb<br>G-7 Multi-Vehicle Discount.pdf |

| | |
|---|---|
| State: | Pennsylvania | First Filing Company: | GEICO Casualty Company, ... |
| TOI/Sub-TOI: | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) | | |
| Product Name: | 312 - Auto Rate/Rule | | |
| Project Name/Number: | 312 - Auto Rate/Rule/2019-312 | | |

|  |  |
|---|---|
| | G-8 Accident Factors.pdf <br> G-8 Accident Factors.xlsb <br> GC-2 Rate Changes by Territory.pdf <br> GVGH-2 Rate Changes by Territory_Part1.pdf <br> GVGH-2 Rate Changes by Territory_Part2.pdf <br> GVGH-2 Rate Changes by Territory_Part3.pdf <br> GVGH-2 Rate Changes by Territory.xlsb <br> GVGH-5 ERS Coverage Factors.xlsb <br> GC-4 ERS Coverage Factors.pdf <br> GC-4 ERS Coverage Factors.xlsb <br> GVGH-5 ERS Coverage Factors.pdf <br> GVGH-8 Market Dislocation.pdf <br> GVGH-8 Market Dislocation.xlsb <br> GVGH-7 Impact of Proposed Changes.pdf <br> GVGH-7 Impact of Proposed Changes.xlsb |
| Previous Version | |
| Satisfied - Item: | Actuarial Explanatory Memorandum & Supporting Exhibits (PC) |
| Comments: | |
| Attachment(s): | PA TOC.pdf <br> PA Memo.pdf <br> GVGH-1 SOI.pdf <br> GVGH-2 Rate Change by Territory1.pdf <br> GVGH-2 Rate Change by Territory2.pdf <br> GVGH-4 ERS Age.pdf <br> GVGH-5 ERS Coverage Factor.pdf <br> GVGH-6 Stacking Base Rate Differentials1.pdf <br> GVGH-7 Impact of Proposed Changes on Policyholders.pdf <br> GVGH-8 Market Dislocation.pdf <br> GC-1 SOI.pdf <br> GC-2 Rate Change by Territory.pdf <br> GC-3 ERS Age.pdf <br> GC-4 ERS Coverage Factor.pdf <br> GC-5 Stacking Base Rate Differentials.pdf <br> GC-6 Impact of Proposed Changes on Policyholders.pdf <br> GC-7 Market Dislocation.pdf <br> G-1 CAT Load.pdf <br> G-2 LDF.pdf <br> G-3 Trend.pdf <br> G-4 ULAE.pdf <br> G-5 PLR.pdf <br> G-6 ROR.pdf <br> G-7 Multi-Vehicle.pdf <br> G-8 Accident Factors.pdf <br> G-9 Multi-Line.pdf <br> G-10 Offsets.pdf <br> G-11 RV Liability Factors.pdf |

| | |
|---|---|
| *State:* | Pennsylvania |
| *TOI/Sub-TOI:* | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| *Product Name:* | 312 - Auto Rate/Rule |
| *Project Name/Number:* | 312 - Auto Rate/Rule/2019-312 |

| | |
|---|---|
| *First Filing Company:* | GEICO Casualty Company, ... |

GVGH-1 SOI.xlsb
GVGH-2 Rate Changes by Territory.xlsb
GVGH-4 ERS Vehicle Age Factors.xlsb
GVGH-5 ERS Coverage Factors.xlsb
GC-3 ERS Age Factors.xlsb
GC-4 ERS Coverage Factors.xlsx
GC-5 UM UIM Base Rate Differentials.xlsx
GC-6 Impact of Proposed Changes.xlsb
GC-7 Market Dislocation.xlsb
GVGH-6 UM Stacking Differentials.xlsb
GVGH-7 Impact of Proposed Changes.xlsb
GVGH-8 Market Dislocation.xlsb
GC-1 SOI.xlsb
GC-2 Rate Changes by Territory.xlsb
G-1 CAT Load.xlsb
G-2 LDF.xlsb
G-3 Trend.xlsb
G-4 ULAE.xlsb
G-5 PLR.xlsx
G-6 ROR.xlsx
G-7 Multi-Vehicle Discount.xlsb
G-8 Accident Factors.xlsb
G-9 Multi-Line.xlsb
G-10 Offsets.xlsb
G-11 RV Liability Factors.xlsx
GVGH-3 ILF.pdf
GVGH-3 ILF.xlsx

| Satisfied - Item: | Markups |
|---|---|
| Comments: | |
| Attachment(s): | PA-GC-priv-2019-312 Markup.pdf<br>PA-GV-priv-2019-312 Markup.pdf<br>PA-GH-priv-2019-312 Markup.pdf<br>PA-GC-misc-2019-312 Markup.pdf<br>PA-GV-misc-2019-312 Markup.pdf<br>PA-GH-misc-2019-312 Markup.pdf<br>PA-gen-rules-2019-312 Markup Revised.pdf<br>PA-GV-gen-2019-312 Markup Revised.pdf<br>PA-GH-gen-2019-312 Markup Revised.pdf |
| *Previous Version* | |
| Satisfied - Item: | *Markups* |
| Comments: | |
| Attachment(s): | *PA-GC-gen-2019-312 Markup.pdf*<br>*PA-GV-gen-2019-312 Markup.pdf* |

| | |
|---|---|
| *State:* | Pennsylvania |
| *TOI/Sub-TOI:* | 19.0 Personal Auto/19.0001 Private Passenger Auto (PPA) |
| *Product Name:* | 312 - Auto Rate/Rule |
| *Project Name/Number:* | 312 - Auto Rate/Rule/2019-312 |

*First Filing Company:* GEICO Casualty Company, ...

| | |
|---|---|
| | *PA-GH-gen-2019-312 Markup.pdf* |
| | *PA-GC-priv-2019-312 Markup.pdf* |
| | *PA-GV-priv-2019-312 Markup.pdf* |
| | *PA-GH-priv-2019-312 Markup.pdf* |
| | *PA-GC-misc-2019-312 Markup.pdf* |
| | *PA-GV-misc-2019-312 Markup.pdf* |
| | *PA-GH-misc-2019-312 Markup.pdf* |

| **Satisfied - Item:** | Response Memo 1 |
|---|---|
| **Comments:** | |
| **Attachment(s):** | Response Memo.pdf |

***Conclusion:***

    *Based on this additional information, we would appreciate your further consideration of our request.*

*Sincerely,*

*Melvina R. Brown*
*Analyst, State Filings*
    *Sincerely,*
    *Jonathan Daniels*

<div align="center">CERTIFICATE OF SERVICE</div>

I hereby certify that on September 11, 2024, I electronically filed the foregoing Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) From Order Denying Class Certification with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via e-mail to USCA7_Clerk@ca7.uscourts.gov.

I further certify that I have served the following listed people with a copy of the Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) from Order Denying Class Certification via e-mail as well as by mailing the foregoing document to the U.S. Postal Service via Priority Mail, with postage pre-paid, to the following counsel for Respondents/Defendants:

Damon N. Vocke
    dnvocke@duanemorris.com
    mhzavala@duanemorris.com
**DUANE MORRIS LLP**
1540 Broadway Street
New York, NY 10036

Robert M. Palumbos
    rmpalumbos@duanemorris.com
Leah A. Mintz
    lmintz@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103

Lisa T. Scruggs
    ltscruggs@duanemorris.com
Ronald M. Lepinskas
    rmlepinskas@duanemorris.com
**DUANE MORRIS LLP**
190 S. LaSalle Street
Suite 3700
Chicago, IL 60603

September 11, 2024

s/Robert L. Schug
Robert L. Schug

**United States District Court**
**Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:20–cv–04306**
*Internal Use Only*

| | |
|---|---|
| Thomas et al v. GEICO Casualty Company et al | Date Filed: 07/22/2020 |
| Assigned to: Honorable Sharon Johnson Coleman | Jury Demand: Both |
| Referred to: Honorable Jeffrey Cole | Nature of Suit: 190 Contract: Other |
| Cause: 28:1332 Diversity–Breach of Contract | Jurisdiction: Federal Question |

**Plaintiff**

**Briana Siegal**                                     represented by     **Ryan F Stephan**
*individually and on behalf of all others*                              Stephan Zouras, LLP
*similarly situated*                                                    222 W. Adams Street
*TERMINATED: 10/08/2021*                                                Suite 2020
                                                                        Chicago, IL 60606
                                                                        312–233–1550
                                                                        Email: rstephan@stephanzouras.com
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Charles A Delbridge**
                                                                        Nichols Kaster, PLLP
                                                                        80 South 8th Street
                                                                        Suite 4700
                                                                        Minneapolis, MN 55402
                                                                        (612) 256–3200
                                                                        Email: cdelbridge@nka.com
                                                                        *TERMINATED: 03/03/2023*
                                                                        *PRO HAC VICE*

                                                                        **Chloe Alexandria Raimey**
                                                                        Nichols Kaster, Pllp
                                                                        80 South 8th Street
                                                                        Suite 4700
                                                                        Minneapolis, MN 55402
                                                                        (612) 256–3200
                                                                        Email: craimey@nka.com
                                                                        *TERMINATED: 09/26/2022*

                                                                        **David Adam Neiman**
                                                                        Romanucci & Blandin, LLC
                                                                        321 N. Clark St.
                                                                        Suite 900
                                                                        Chicago, IL 60654
                                                                        312–458–1000
                                                                        Email: dneiman@rblaw.net
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **James B. Zouras**
                                                                        Stephan Zouras, LLP
                                                                        222 W. Adams Street
                                                                        Suite 2020
                                                                        Chicago, IL 60606
                                                                        312–233–1550
                                                                        Email: jzouras@stephanzouras.com
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Matthew H Morgan**
                                                                        Nichols Kaster, PLLP
                                                                        4600 IDS Center
                                                                        80 South Elgin Street

Minneapolis, MN 55402
(612) 256−3200
Email: morgan@nka.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paige L Smith**
Hart McLaughlin & Eldridge
One South Dearborn
Suite 1400
Chicago, IL 60603
312−955−0545
Email: psmith@hmelegal.com
*ATTORNEY TO BE NOTICED*

**Robert L. Schug**
Nichols Kfaster PLLP
80 South Eighth Street
Suite 4700
Minneapolis, MN 55402
Email: rschug@nka.com
*ATTORNEY TO BE NOTICED*

**Teresa M. Becvar**
Stephan Zouras, LLP
222 W. Adams Street
Suite 2020
Chicago, IL 60606
312−233−1550
Email: tbecvar@stephanzouras.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James G Thomas**                    represented by **Paige L Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matt H Morgan**
Nichols Kaster, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 256−3200
Email: morgan@nka.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Roxanne G Thomas**                    represented by **Paige L Smith**
*individually and on behalf of all others*                    (See above for address)
*similarly situated*                    *ATTORNEY TO BE NOTICED*

**Matt H Morgan**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GEICO Casualty Company**                    represented by **Lisa T Scruggs**
Duane Morris LLP
190 S. LaSalle Street
Ste 3700

Chicago, IL 60603
312–499–6742
Email: ltscruggs@duanemorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon N Vocke**
Duane Morris LLP
1540 Broadway
New York, NY 10036
212–692–1059
Email: dnvocke@duanemorris.com
*(Inactive)*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicole Mirjanich Moore**
Duane Morris LLP
190 S. LaSalle Street
Suite 3700
60603
Chicago, IL 60603
312–499–6735
Email: nmoore@duanemorris.com
*ATTORNEY TO BE NOTICED*

**Ronald M. Lepinskas**
Duane Morris LLP
190 S. LaSalle Street
Suite 3700
Chicago, IL 60603
312–499–0136
Email: RMLepinskas@duanemorris.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GEICO Indemnity Company**    represented by    **Lisa T Scruggs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon N Vocke**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicole Mirjanich Moore**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald M. Lepinskas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GEICO General Insurance Company**    represented by    **Lisa T Scruggs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Damon N Vocke**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicole Mirjanich Moore**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald M. Lepinskas**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2020 | 6 | Fifth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in−person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in−court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020. Mailed notice. (sxb, ) (Entered: 07/23/2020) |
| 07/22/2020 | 1 | COMPLAINT *Class Action Complaint* filed by Briana Siegal; Jury Demand. Filing fee $ 400, receipt number 0752−17242247.(Stephan, Ryan) (Entered: 07/22/2020) |
| 07/22/2020 | 2 | CIVIL Cover Sheet (Stephan, Ryan) (Entered: 07/22/2020) |
| 07/22/2020 | 3 | ATTORNEY Appearance for Plaintiff Briana Siegal by Ryan F Stephan (Stephan, Ryan) (Entered: 07/22/2020) |
| 07/22/2020 | 4 | ATTORNEY Appearance for Plaintiff Briana Siegal by James B. Zouras (Zouras, James) (Entered: 07/22/2020) |
| 07/22/2020 | 5 | ATTORNEY Appearance for Plaintiff Briana Siegal by Teresa M. Becvar (Becvar, Teresa) (Entered: 07/22/2020) |
| 07/22/2020 | | CASE ASSIGNED to the Honorable Sharon Johnson Coleman. Designated as Magistrate Judge the Honorable Jeffrey Cole. Case assignment: Random assignment. (cp, ) (Entered: 07/22/2020) |
| 07/23/2020 | | SUMMONS Issued as to Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company (jn, ) (Entered: 07/23/2020) |
| 08/14/2020 | 7 | AFFIDAVIT of Service filed by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company regarding Summons served on GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company on 8/13/2020, SUMMONS Returned Executed by Briana Siegal as to All Defendants. (Becvar, Teresa) (Entered: 08/14/2020) |
| 08/14/2020 | 8 | MOTION by Plaintiff Briana Siegal for order *Plaintiff's Motion to Appoint Interim Class Counsel* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Stephan, Ryan) (Entered: 08/14/2020) |
| 08/17/2020 | 9 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−17334700. (Attachments: # 1 List of General Admissions)(Delbridge, Charles) (Entered: 08/17/2020) |
| 08/17/2020 | 10 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−17334734. (Attachments: # 1 List of General Admissions)(Schug, Robert) (Entered: 08/17/2020) |
| 08/17/2020 | 11 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−17334764. (Attachments: # 1 List of General Admissions)(Morgan, Matt) (Entered: 08/17/2020) |
| 08/18/2020 | 12 | MINUTE entry before the Honorable Sharon Johnson Coleman: Attorneys Charles A. Delbridge, Robert L. Schug, and Matthew H. Morgan's motions for leave to appear pro hac vice 9 , 10 , 11 are granted. Mailed notice. (ym, ) (Entered: 08/18/2020) |
| 08/21/2020 | 13 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff's motion to appoint interim class counsel 8 is granted. Enter Order. Mailed notice. (ym, ) (Entered: |

| | | 08/21/2020) |
|---|---|---|
| 08/21/2020 | 14 | ORDER Signed by the Honorable Sharon Johnson Coleman on 8/21/2020. Mailed notice. (ym, ) (Entered: 08/21/2020) |
| 09/03/2020 | 15 | ATTORNEY Appearance for Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company by Lisa T Scruggs (Scruggs, Lisa) (Entered: 09/03/2020) |
| 09/03/2020 | 16 | ATTORNEY Appearance for Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company by Ronald M. Lepinskas (Lepinskas, Ronald) (Entered: 09/03/2020) |
| 09/03/2020 | 17 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company (Scruggs, Lisa) (Entered: 09/03/2020) |
| 09/03/2020 | 18 | MEMORANDUM by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company in support of Motion to Dismiss for Failure to State a Claim 17 (Scruggs, Lisa) (Entered: 09/03/2020) |
| 09/03/2020 | 19 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff to file a response to defendants' motion to dismiss 17 9/24/2020. Defendants' reply to be filed by 10/8/2020. Once the matter is fully briefed, the Court shall take it under advisement. Mailed notice. (ym, ) (Entered: 09/03/2020) |
| 09/24/2020 | 20 | *First* AMENDED complaint by Briana Siegal against All Defendants *First Amended Class Action Complaint* (Stephan, Ryan) (Entered: 09/24/2020) |
| 09/24/2020 | 21 | MINUTE entry before the Honorable Sharon Johnson Coleman: Because plaintiff has filed a first amended complaint, the Court denies defendants' motion to dismiss as moot 17 . Defendants' response to the first amended complaint is due on or before 10/15/2020. Mailed notice. (ym, ) (Entered: 09/24/2020) |
| 10/15/2020 | 22 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company *First Amended Complaint* (Scruggs, Lisa) (Entered: 10/15/2020) |
| 10/15/2020 | 23 | MEMORANDUM by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company in support of Motion to Dismiss for Failure to State a Claim 22 *First Amended Complaint* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Scruggs, Lisa) (Entered: 10/15/2020) |
| 10/15/2020 | 24 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff to file a response to defendants' motion to dismiss 22 by 11/12/2020. Defendants to file a reply by 11/27/2020. Once the matter is fully briefed, the Court shall take it under advisement. Mailed notice. (ym, ) (Entered: 10/15/2020) |
| 10/30/2020 | 25 | CORPORATE DISCLOSURE STATEMENT by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company (Scruggs, Lisa) (Entered: 10/30/2020) |
| 11/02/2020 | 26 | ATTORNEY Appearance for Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company by Nicole R Mirjanich, R (Mirjanich, Nicole) (Entered: 11/02/2020) |
| 11/12/2020 | 27 | NOTICE by Charles A Delbridge of Change of Address *for Nichols Kaster, PLLP* (Delbridge, Charles) (Entered: 11/12/2020) |
| 11/12/2020 | 28 | RESPONSE by Briana Siegalin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company *First Amended Complaint* 22 (Delbridge, Charles) (Entered: 11/12/2020) |
| 11/13/2020 | 29 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−17644235. (DAMON, VOCKE) (Entered: 11/13/2020) |
| 11/13/2020 | 30 | MINUTE entry before the Honorable Sharon Johnson Coleman: Attorney Damon N. Vocke's motion for leave to appear pro hac vice 29 is granted. Mailed notice. (ym, ) |

| | | (Entered: 11/13/2020) |
|---|---|---|
| 11/13/2020 | 31 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to reassign case (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scruggs, Lisa) (Entered: 11/13/2020) |
| 11/13/2020 | 32 | NOTICE of Motion by Lisa T Scruggs for presentment of (Scruggs, Lisa) (Entered: 11/13/2020) |
| 11/16/2020 | 33 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff to file a response to defendants' motion to reassign a related case 31 by 12/7/2020. Defendants' reply to be filed by 12/21/2020. Once the matter is fully briefed, the Court shall take it under advisement. Mailed notice. (ym, ) (Entered: 11/16/2020) |
| 11/25/2020 | 34 | REPLY by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to Motion to Dismiss for Failure to State a Claim 22 , memorandum in support of motion, 23 (Scruggs, Lisa) (Entered: 11/25/2020) |
| 12/07/2020 | 35 | RESPONSE by Briana Siegal to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to reassign case 31 (Delbridge, Charles) (Entered: 12/07/2020) |
| 12/07/2020 | 36 | MINUTE entry before the Honorable Sharon Johnson Coleman: The Court grants defendant's motion to reassign Thomas v. GEICO Casualty Insurance Co. (1:20−cv−06453) to this Court's docket as unopposed 31 . See N.D.Ill. Local Rule 40.4. Mailed notice. (ym, ) (Entered: 12/07/2020) |
| 03/03/2021 | 37 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for leave to file *Notice of Supplemental Authority* (Scruggs, Lisa) (Entered: 03/03/2021) |
| 03/03/2021 | 38 | NOTICE of Motion by Lisa T Scruggs for presentment of (Scruggs, Lisa) (Entered: 03/03/2021) |
| 03/03/2021 | 39 | MINUTE entry before the Honorable Sharon Johnson Coleman: Defendants' motion for leave to file notice of supplemental authority 37 is granted. Mailed notice. (ym, ) (Entered: 03/03/2021) |
| 03/03/2021 | 40 | SUPPLEMENT to *Notice of Supplemental Authority* (Scruggs, Lisa) (Entered: 03/03/2021) |
| 03/04/2021 | 41 | RESPONSE by Plaintiff Briana Siegal to supplement 40 *Plaintiff's Response to GEICO's Notice of Supplemental Authority* (Stephan, Ryan) (Entered: 03/04/2021) |
| 03/04/2021 | 42 | MINUTE entry before the Honorable Sharon Johnson Coleman: The Court grants in part and denies in part GEICO's motion to dismiss 22 . The Court dismisses Counts I, II, and V with prejudice. The Court denies GEICO's motion as to Counts III and IV and denies GEICO's motion to dismiss defendants GEICO Indemnity Company and GEICO General Insurance Company at this time. Enter Memorandum Opinion and Order. Telephone status hearing is set for 3/17/2021 at 10:45 AM. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 03/04/2021) |
| 03/04/2021 | 43 | MEMORANDUM Opinion and Order. Signed by the Honorable Sharon Johnson Coleman on 3/4/2021. Mailed notice. (ym, ) (Entered: 03/04/2021) |
| 03/09/2021 | 44 | MINUTE entry before the Honorable Sharon Johnson Coleman: The parties are to file a joint status report in the format described on the court's website at www.ilnd.uscourts.gov by March 12, 2021. Mailed notice. (ym, ) (Entered: 03/09/2021) |

| 03/12/2021 | 45 | STATUS Report *Joint* by Briana Siegal (Morgan, Matt) (Entered: 03/12/2021) |
|---|---|---|
| 03/15/2021 | 46 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for extension of time to file answer (Scruggs, Lisa) (Entered: 03/15/2021) |
| 03/15/2021 | 47 | NOTICE of Motion by Lisa T Scruggs for presentment of (Scruggs, Lisa) (Entered: 03/15/2021) |
| 03/15/2021 | 48 | MINUTE entry before the Honorable Sharon Johnson Coleman: Presentment of defendants' agreed motion for extension of time 46 is set for the same time of the telephone status hearing that is set for 3/17/2021 at 10:45 AM. Mailed notice. (ym, ) (Entered: 03/15/2021) |
| 03/16/2021 | 49 | MINUTE entry before the Honorable Sharon Johnson Coleman: Defendants' agreed motion for extension of time to answer or otherwise plead 46 is granted, Responsive pleading to be filed by 4/5/2021. Telephone status hearing set for 3/17/2021 is stricken and reset to 4/12/2021 at 9:45 AM. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 03/16/2021) |
| 04/05/2021 | 50 | ANSWER to amended complaint by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company (Attachments: # 1 Exhibit A)(Scruggs, Lisa) (Entered: 04/05/2021) |
| 04/05/2021 | 51 | NOTICE by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company re answer to amended complaint 50 (Scruggs, Lisa) (Entered: 04/05/2021) |
| 04/07/2021 | 52 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance CompanyCertify for Interlocutory Appeal (Scruggs, Lisa) (Entered: 04/07/2021) |
| 04/07/2021 | 53 | NOTICE of Motion by Lisa T Scruggs for presentment of (Scruggs, Lisa) (Entered: 04/07/2021) |
| 04/07/2021 | 54 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff to file a response to defendants' motion for interlocutory appeal 52 on or before 5/5/2021. Defendants to file a reply on or before 5/19/2021. Once the matter is fully briefed, the Court shall take it under advisement. Mailed notice. (ym, ) (Entered: 04/07/2021) |
| 04/12/2021 | 55 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone status hearing set for 4/12/2021 is stricken. Mailed notice. (ym, ) (Entered: 04/12/2021) |
| 05/05/2021 | 56 | RESPONSE by Briana Siegalin Opposition to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity CompanyCertify for Interlocutory Appeal 52 (Schug, Robert) (Entered: 05/05/2021) |
| 05/18/2021 | 57 | REPLY by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to motion for miscellaneous relief 52 , response in opposition to motion 56 (Scruggs, Lisa) (Entered: 05/18/2021) |
| 06/07/2021 | 58 | ATTORNEY Appearance for Plaintiff Briana Siegal by David Adam Neiman (Neiman, David) (Entered: 06/07/2021) |
| 06/14/2021 | 59 | MEMORANDUM Opinion and Order: The Court denies defendant's motion to certify an interlocutory appeal under 28 U.S.C. § 1292(b) 52 . Signed by the Honorable Sharon Johnson Coleman on 6/14/2021. Mailed notice. (ym, ) (Entered: 06/14/2021) |
| 06/14/2021 | 60 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone status hearing is set for 7/2/2021 at 9:15 AM. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court |

| | | |
|---|---|---|
| | | proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. The parties are to file a joint status report in the format described on the court's website at www.ilnd.uscourts.gov at least 3 business days prior to the status. Mailed notice. (ym, ) (Entered: 06/14/2021) |
| 06/29/2021 | 61 | ATTORNEY Appearance for Plaintiff Briana Siegal by Chloe Alexandria Raimey (Raimey, Chloe) (Entered: 06/29/2021) |
| 06/29/2021 | 62 | STATUS Report *Joint* by Briana Siegal (Morgan, Matt) (Entered: 06/29/2021) |
| 07/02/2021 | 63 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone status hearing held on 7/2/2021. Case is referred to Magistrate Judge Cole for discovery supervision and settlement. Judge Cole has authority to set and adjust discovery deadlines. Status hearing is set for 10/5/2021 at 9:30 AM. Mailed notice. (ym, ) (Entered: 07/02/2021) |
| 07/02/2021 | 64 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Jeffrey Cole for the purpose of holding proceedings related to: discovery supervision and settlement conference. Mailed notice. (ym, ) (Entered: 07/02/2021) |
| 07/07/2021 | 65 | MINUTE entry before the Honorable Jeffrey Cole: Judge Coleman has referred the case here for discovery supervision and settlement conference, 63 and 64 . The parties Joint Status Report as to a discovery schedule, is not a joint report as it contains a different discovery schedule for plaintiff and defendant. Accordingly, the discovery schedule will be as follows: All fact discovery (including depositions) completed by 1/14/22; Plaintiff's expert report(s)completed by 2/4/22; Defendant's expert report(s) completed by 3/4/22; Plaintiff's expert rebuttal(s)completed by 4/1/22; All expert discovery (including expert depositions) completed by 4/1/22; Dispositive motions completed by 6/17/22. Local Rule 16.1 states in part, "discovery must be completed before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order." Telephone Status Conference is set for 10/6/21 at 9:30am, to discuss the progress of discovery. Counsel should call (888) 684−8852, access code 5618926.#. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Should any difficulties arise during depositions, counsel should contact the Court. I can be reached by a call to my courtroom deputy, Yulonda Thomas, at 312−408−5178, and she will arrange for me to participate in the phone call. Mailed notice (yt) (Entered: 07/07/2021) |
| 07/13/2021 | 66 | Letter to Judge Cole by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company (Attachments: # 1 Transcript of Proceedings)(Lepinskas, Ronald) (Entered: 07/13/2021) |
| 07/14/2021 | 67 | MINUTE entry before the Honorable Jeffrey Cole: Following the entry of my 7/7/21 Order 65 , counsel sent me a letter 66 informing me that Judge Coleman on Friday, 7/2/21 had adopted the defendant's request for bifurcation of discovery and instructed the parties to engage first in class certification and then if the class should be certified, to engage in merits discovery. They pointed to a transcript of the hearing before the District Court which was not part of the record and which, of course, I did not have. Accordingly, the Order of 7/7/21 65 is modified as requested by counsels' letter of 7/13/21 as follows: Issuance of class certification discovery: 7/16/21 and completion of class certification discovery by 10/31/21. All other dates in my 7/7/21 Order remains the same. The Court wishes to thank counsel for both sides for calling Judge Coleman's Order regarding bifurcation to my attention. Mailed notice (yt) (Entered: 07/14/2021) |
| 07/22/2021 | 68 | TRANSCRIPT OF PROCEEDINGS held on 7/2/2021 before the Honorable Sharon Johnson Coleman. Order Number: 41131. Court Reporter Contact Information: TRACEY D. McCULLOUGH, 312−435−5570, tracey_mccullough@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be |

| | | viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 8/12/2021. Redacted Transcript Deadline set for 8/23/2021. Release of Transcript Restriction set for 10/20/2021. (Mccullough, Tracey) (Entered: 07/22/2021) |
|---|---|---|
| 09/27/2021 | 69 | MINUTE entry before the Honorable Sharon Johnson Coleman: Status hearing set for 10/5/2021 is stricken and reset to 11/8/2021 at 9:45 AM by telephone conference. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 09/27/2021) |
| 10/05/2021 | 70 | STIPULATION *to File Second Amended Complaint* (Attachments: # 1 Exhibit A − Proposed Second Amended Complaint)(Morgan, Matt) (Entered: 10/05/2021) |
| 10/05/2021 | 71 | MOTION by Plaintiff Briana Siegal for extension of time *JOINT MOTION TO EXTEND DISCOVERY SCHEDULE* (Morgan, Matt) (Entered: 10/05/2021) |
| 10/05/2021 | 72 | MOTION by Plaintiff Briana Siegal for protective order *JOINT MOTION FOR ENTRY OF CONFIDENTIALITY ORDER* (Attachments: # 1 Exhibit A − Redlined Proposed Confidentiality Order, # 2 Exhibit B − Proposed Confidentiality Order)(Morgan, Matt) (Entered: 10/05/2021) |
| 10/06/2021 | 73 | MINUTE entry before the Honorable Jeffrey Cole: Telephone status conference held on 10/6/21. Defense counsel did not appear. The next telephone status conference is set for 12/7/21 at 10:30am. Counsel should call (888) 684−8852, access code 5618926.#. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Should any difficulties arise during depositions, counsel should contact the Court. I can be reached by a call to my courtroom deputy, Yulonda Thomas, at 312−408−5178, and she will arrange for me to participate in the phone call. Mailed notice (yt) (Entered: 10/06/2021) |
| 10/06/2021 | 74 | MINUTE entry before the Honorable Jeffrey Cole: The Joint Motion to Extend Discovery Schedule 71 is granted. The updated schedule is as follows: Completion of class certification fact discovery by 12/31/21; Deadline for Class Certification Expert Disclosures by 1/31/22; Deadline for Class Certification Expert Rebuttals by 2/28/22; Deadline for Class Certification Expert Depositions by 3/18/22; Plaintiffs to file motion for class certification by 4/1/22; Completion of all fact discovery, Plaintiff's expert reports, Defendants' expert reports, All expert discovery (including Plaintiff's expert rebuttal), and Dispositive Motions will be deferred until after resolution of class certification motion. Mailed notice (yt) (Entered: 10/06/2021) |
| 10/06/2021 | 75 | MINUTE entry before the Honorable Jeffrey Cole: The Joint Motion For Entry of Confidentiality Order 72 is granted. ENTER ORDER. Mailed notice (yt) (Entered: 10/06/2021) |
| 10/06/2021 | 76 | ORDER: Signed by the Honorable Jeffrey Cole on 10/6/21. Mailed notice (yt) (Entered: 10/06/2021) |
| 10/06/2021 | 77 | MINUTE entry before the Honorable Jeffrey Cole: Shortly after the status conference this morning I received a letter from defense counsel (with copies to plaintiff's counsel) explaining that the defense had missed the status conference due to a docketing error in transcribing access numbers. The court wishes to thank counsel for its letter of explanation. Mailed notice (yt) (Entered: 10/06/2021) |

| 10/08/2021 | 78 | MINUTE entry before the Honorable Sharon Johnson Coleman: Based on the joint stipulation filed 70 , the Court grants leave for plaintiff's counsel to electronically file the second amended complaint as a separate entry on the case docket. Mailed notice. (ym, ) (Entered: 10/08/2021) |
|---|---|---|
| 10/08/2021 | 79 | *SECOND* AMENDED complaint by James G Thomas, Roxanne G Thomas against All Defendants (Morgan, Matt) (Entered: 10/08/2021) |
| 10/22/2021 | 80 | ANSWER to amended complaint by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company(Lepinskas, Ronald) (Entered: 10/22/2021) |
| 11/03/2021 | 81 | MINUTE entry before the Honorable Jeffrey Cole: At the parties request, a video status conference is set for 11/8/21 at 10:30am CST, to discuss discovery scheduling issues. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2300, access code 094859009. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (yt) (Entered: 11/03/2021) |
| 11/03/2021 | 82 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone status hearing set for 11/8/2021 is stricken and reset to 11/15/2021 at 9:30 AM. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 11/03/2021) |
| 11/08/2021 | 83 | MINUTE entry before the Honorable Jeffrey Cole: Video status conference held on 11/8/21. Plaintiff may take the deposition discussed today. The deposition shall last no longer than 2 hours and shall be limited to the scope discussed today. As to the remaining issues, those are matters to be resolved after briefing and full consideration. Accordingly, Plaintiff's brief on the disputed topics discussed today shall be due on 11/12/21. The response brief will be due on 11/19/21. The reply, if any, will be due on 11/23/21. The next video status conference is set for 1/13/22 at 9:30 am CST. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2300, access code 094859009. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Should any difficulties arise during depositions, counsel should contact the Court. I can be reached by a call to my courtroom deputy, Yulonda Thomas, at 312−408−5178, and she will arrange for me to participate in the phone call. Mailed notice (yt) (Entered: 11/08/2021) |
| 11/08/2021 | 84 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone status hearing set for 11/15/2021 is stricken and reset to 1/19/2022 at 10:15 AM. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 11/08/2021) |
| 11/10/2021 | 85 | TRANSCRIPT OF PROCEEDINGS held on 11/8/21 before the Honorable Jeffrey Cole. Order Number: 42004. Court Reporter Contact Information: Kathleen_Fennell@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For |

| | | |
|---|---|---|
| | | further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 12/1/2021. Redacted Transcript Deadline set for 12/13/2021. Release of Transcript Restriction set for 2/8/2022. (Fennell, Kathleen) (Entered: 11/10/2021) |
| 11/12/2021 | 86 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to compel *PLAINTIFFS TO DISCLOSE THEIR DAMAGES COMPUTATIONS* (Attachments: # 1 Exhibit A)(Lepinskas, Ronald) (Entered: 11/12/2021) |
| 11/12/2021 | 87 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to compel *class member data and 30(b)(6) testimony* (Attachments: # 1 Index of Exhibits, # 2 Exhibit A – 20210730 Email, # 3 Exhibit B – 29211105 Email, # 4 Exhibit C – Excerpt from Responses to Plaintiffs' Document Requests, # 5 Exhibit D – Excerpt from Responses to Plaintiffs' Interrogatories, # 6 Exhibit F – Amended 30(b)(6) Depo Notice, # 7 Exhibit G – Def 26(a)(1) Disclosure, # 8 Exhibit H – Plf Thomas 26(a)(1) Disclosure, # 9 Exhibit I – Westlaw cited cases, # 10 Certificate of Service on Exhibit E)(Raimey, Chloe) (Entered: 11/12/2021) |
| 11/12/2021 | 88 | SEALED DOCUMENT by Plaintiffs James G Thomas, Roxanne G Thomas *Exhibit E to Plaintiffs' Motion to Compel* (Raimey, Chloe) (Entered: 11/12/2021) |
| 11/12/2021 | 89 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to seal document sealed document 88 *Exhibit E to Plaintiffs' Motion to Compel* (Raimey, Chloe) (Entered: 11/12/2021) |
| 11/12/2021 | 90 | STIPULATION regarding order on motion for extension of time,,, text entry,, 74 *OF THE PARTIES TO EXTEND THE DISCOVERY SCHEDULE* (Lepinskas, Ronald) (Entered: 11/12/2021) |
| 11/15/2021 | 91 | MINUTE entry before the Honorable Jeffrey Cole: Plaintiff's Motion to seal document 89 is granted. Mailed notice (yt) (Entered: 11/15/2021) |
| 11/19/2021 | 92 | RESPONSE by James G Thomas, Roxanne G Thomasin Opposition to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to compel *PLAINTIFFS TO DISCLOSE THEIR DAMAGES COMPUTATIONS* 86 (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1 – 10.5.21 Email, # 3 Exhibit 2 – 10.27 and 10.29 Email Chains, # 4 Exhibit 3 – Westlaw cases)(Raimey, Chloe) (Entered: 11/19/2021) |
| 11/19/2021 | 93 | RESPONSE by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Companyin Opposition to MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to compel *class member data and 30(b)(6) testimony* 87 (Lepinskas, Ronald) (Entered: 11/19/2021) |
| 11/23/2021 | 94 | REPLY by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to compel *PLAINTIFFS TO DISCLOSE THEIR DAMAGES COMPUTATIONS* 86 (Lepinskas, Ronald) (Entered: 11/23/2021) |
| 11/23/2021 | 95 | REPLY by James G Thomas, Roxanne G Thomas to MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to compel *class member data and 30(b)(6) testimony* 87 (Raimey, Chloe) (Entered: 11/23/2021) |
| 11/30/2021 | 96 | MINUTE entry before the Honorable Jeffrey Cole: The parties filed a stipulation on November 12 that they agreed to another extension of the discovery schedule, rather than filing a motion as is required. Perhaps counsel simply assumed they could agree to their own extension of the discovery schedule and would be granted a further extension of the discovery deadline now in place. That presumably was the purpose of stating in the stipulation that it was "subject to the court's approval." Perhaps counsel assumed they could obliquely agree to their own extension of the discovery schedule and would in effect automatically be granted an extension of the discovery deadline. Hence, the use of the words "subject to the court's approval." But Fed.R.Civ.P. 16(b)(4) allows "[a] schedule [to] be modified only for good cause and with the judge's consent."). Rule 16(b)'s 'good cause' standard primarily considers the diligence of the |

| | | party seeking the modification. *MAO−MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,* 994 F.3d 869, 878 (7th Cir. 2021); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2005); *Alight Sols. v. Thomson,* No. 20 C 3043, 2021 WL 5119111, at *1 (N.D. Ill. Nov. 3, 2021); *Mims v. City of Chicago,* No. 18 C 7192, 2021 WL 5006649, at *3 (N.D. Ill. Oct. 28, 2021). Discovery in this case about an auto insurance company exercising its discretion not to adjust rates during the pandemic [Dkt. #79] began seven long months ago, in April. The parties have recently received a 60−day extension [Dkt. #74] and their stipulation gives no indication of why yet another extension is necessary or merited. Indeed, the previous extension seems to have merely opened the door wide to discovery disputes as opposed to progress. The parties have pending cross−motions to compel, both complaining that the other side needs to provide more detail in their responses. As both seem to be in the same boat, it seems a perfect opportunity to fulfill their obligations under Local Rule 37.2 and reach an accord. They haven't. It would, however, behoove them to do so with the time they have left. *See KISS Pharm LLC v. Becker Pro. Dev. Corp,* No. 18 C 7848, 2021 WL 3207822, at *4 (N.D. Ill. July 29, 2021)("Resolution of discovery disputes is a matter of the court's broad discretion.... Consequently, it behooves the parties to negotiate to a satisfactory result rather than risk an all−out loss in court."); *Ezell v. City of Chicago,* No. 18 C 1049, 2021 WL 2136395, at *5 (N.D. Ill. May 26, 2021)(" A party who steadfastly and intransigently maintains a position without compromising as the plaintiff has admittedly done here could be "right" in some abstract sense but find itself on the losing side, and properly so, when the matter comes before the court, and the court's discretion leads it to accept the other side's "right" position. A negotiated outcome is more likely to give both sides at least a somewhat satisfactory resolution."). All that being said, as things stand, class discovery closes as scheduled on 12/31/21. Mailed notice (yt) (Entered: 11/30/2021) |
| 12/02/2021 | 97 | MINUTE entry before the Honorable Jeffrey Cole: The telephone status conference scheduled for 12/7/21 at 10:30am, is changed to a video status conference. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2300, access code 094859009. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Should any difficulties arise during depositions, counsel should contact the Court. I can be reached by a call to my courtroom deputy, Yulonda Thomas, at 312−408−5178, and she will arrange for me to participate in the phone call. Mailed notice (yt) (Entered: 12/02/2021) |
| 12/03/2021 | 98 | Joint Letter to Judge Cole 12/3/2021 by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company (Attachments: # 1 Exhibit Transcript of Proceedings 11/8/21)(Lepinskas, Ronald) (Entered: 12/03/2021) |
| 12/06/2021 | 99 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for extension of time to complete discovery *JOINT MOTION TO EXTEND DISCOVERY SCHEDULE* (Lepinskas, Ronald) (Entered: 12/06/2021) |
| 12/07/2021 | 100 | MINUTE entry before the Honorable Jeffrey Cole: The parties' agreed motion for a second extension [Dkt. #74] of the class discovery schedule Dkt. # 99 is granted. New deadlines are as follows: Class Certification Fact Discovery −−1/31/2022; Class Certification Expert Disclosures−−3/2/2022; Class Certification Expert Rebuttals−−3/30/2022; Class Certification Expert Depositions−−4/18/2022; Motion for Class Certification−−5/2/2022. The parties are reminded that the original class discovery schedule [Dkt. #67] has now been doubled. Mailed notice (yt) (Entered: 12/07/2021) |
| 12/07/2021 | 101 | MOTION by Plaintiff James G Thomas to withdraw *Joint Motion to Withdraw Motions to Compel* (Becvar, Teresa) (Entered: 12/07/2021) |
| 12/07/2021 | 102 | MINUTE entry before the Honorable Jeffrey Cole: Video status conference held on 12/7/21. Plaintiff was represented by Mr. Morgan and Ms. Becvar and defendant was represented by Mr. Vocke. Counsel have reached a resolution on their pending discovery motions, 86 87 , and have filed an agreed motion to withdraw docket entries 86 and 87 . See 101 . Counsel for both sides should be congratulated for the |

| | | |
|---|---|---|
| | | cooperative spirit they have manifested in resolving these disputes. The withdrawal of the pending motions recognizes that lawyers have an obligation to cooperate with opposing counsel as colleagues in the preparation of a case for trial. Zealous representation is not inconsistent with a collegial relationship with opposing counsel, as counsels' cooperation in this case teaches. The next video status conference is set for 2/9/22 at 9:30am to follow−up on the subpoena issue. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2300, access code 094859009. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Should any difficulties arise during depositions, counsel should contact the Court. I can be reached by a call to my courtroom deputy, Yulonda Thomas, at 312−408−5178, and she will arrange for me to participate in the phone call. Mailed notice (yt) (Entered: 12/07/2021) |
| 12/07/2021 | 103 | MINUTE entry before the Honorable Jeffrey Cole: The Joint motion 101 to withdraw pending discovery motions 86 and 87 is granted. Mailed notice (yt) (Entered: 12/07/2021) |
| 01/12/2022 | 104 | MINUTE entry before the Honorable Jeffrey Cole: The video status set for 1/13/22 83 is stricken. The video status set for 2/9/22 at 9:30am 102 , still stands. Emailed notice (yt) (Entered: 01/12/2022) |
| 01/13/2022 | 105 | MINUTE entry before the Honorable Sharon Johnson Coleman: Status hearing set for 1/19/2022 is stricken and reset to 4/29/2022 at 9:15 AM. Mailed notice. (ym, ) (Entered: 01/13/2022) |
| 02/01/2022 | 106 | MINUTE entry before the Honorable Jeffrey Cole: The video status conference set for 2/9/22 at 9:30am CST has a new dial−in number. Please call (571) 353−2301, access code 509147929#. (NOTE CHANGE IN DIAL−IN NUMBER). Instructions will be emailed to counsel. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 02/01/2022) |
| 02/01/2022 | 107 | MINUTE entry before the Honorable Jeffrey Cole: The video status conference set for 2/9/22 at 9:30am CST is RESCHEDULED to 11:00am CST. (THIS IS A TIME CHANGE ONLY). Please call (571) 353−2301, access code 509147929#. Instructions will be emailed to counsel. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 02/01/2022) |
| 02/09/2022 | 108 | MINUTE entry before the Honorable Jeffrey Cole: Video status conference held on 2/9/22. The parties at this time have no open issues that needed discussion or resolution. Counsel for the defendant informed the court that it may be filing a Motion to Reconsider one of Judge Coleman's rulings, based upon his reading of a recent 7th Circuit opinion. In all other respects, the case is proceeding smoothly and counsel are to be complimented on the efficient and harmonious way in which the case is being conducted. The next video status conference is set for 5/9/22 at 9:00am. Please call (571) 353−2301, access code 509147929#. Instructions will be emailed to counsel. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 02/09/2022) |
| 03/10/2022 | 109 | ATTORNEY Appearance for Plaintiffs Briana Siegal, James G Thomas, Roxanne G Thomas by Paige L Smith (Smith, Paige) (Entered: 03/10/2022) |

| 03/14/2022 | 110 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for reconsideration regarding memorandum opinion and order 43 (Lepinskas, Ronald) (Entered: 03/14/2022) |
|---|---|---|
| 03/14/2022 | 111 | MEMORANDUM by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company in support of motion for reconsideration 110 (Lepinskas, Ronald) (Entered: 03/14/2022) |
| 03/14/2022 | 112 | NOTICE of Motion by Ronald M. Lepinskas for presentment of motion for reconsideration 110 before Honorable Sharon Johnson Coleman on 3/18/2022 at 09:45 AM. (Lepinskas, Ronald) (Entered: 03/14/2022) |
| 03/17/2022 | 113 | MINUTE entry before the Honorable Sharon Johnson Coleman: Presentment of defendants' motion to reconsider ICFA "unfairness" claim in light of Seventh Circuit decision 110 set for 3/18/2022 at 9:45 AM will proceed by telephone conference. The call−in number is (877)336−1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 03/17/2022) |
| 03/18/2022 | 114 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone motion hearing held on 3/18/2022. Plaintiff to file a response to the defendants' motion for reconsideration 110 by 4/8/2022. Defendants to file a reply by 4/15/2022. Once the matter is fully briefed, the Court shall take it under advisement and enter any further deadlines after the ruling. Mailed notice. (ym, ) (Entered: 03/18/2022) |
| 04/08/2022 | 115 | RESPONSE by James G Thomas, Roxanne G Thomasin Opposition to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for reconsideration regarding memorandum opinion and order 43 110 (Attachments: # 1 Index of Exhibits, # 2 Exhibit A − March 2022 Email, # 3 Exhibit B − January 2022 Letter, # 4 Exhibit C − Westlaw Cited Cases)(Raimey, Chloe) (Entered: 04/08/2022) |
| 04/14/2022 | 116 | MINUTE entry before the Honorable Sharon Johnson Coleman: Status hearing set for 4/29/2022 is stricken and reset to 5/17/2022 at 10:00 AM as an in−person hearing. Mailed notice. (ym, ) (Entered: 04/14/2022) |
| 04/15/2022 | 117 | REPLY by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to motion for reconsideration 110 (Lepinskas, Ronald) (Entered: 04/15/2022) |
| 05/02/2022 | 118 | MOTION by Plaintiff James G Thomas for leave to file excess pages *Plaintiffs' Unopposed Motion for Leave to Exceed Page Limit in Plaintiffs' Memorandum in Support of Motion for Class Certification* (Becvar, Teresa) (Entered: 05/02/2022) |
| 05/02/2022 | 119 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to certify class (Raimey, Chloe) (Entered: 05/02/2022) |
| 05/02/2022 | 120 | MEMORANDUM by James G Thomas, Roxanne G Thomas in support of motion to certify class 119 (Attachments: # 1 Declaration of M. Morgan with Index of Exhibits, # 2 Exhibit 1 − Excerpts of Thomas Dep., # 3 Exhibit 8 − CEJ CFA Report, # 4 Exhibit 9 − Chicago Tribune Article, # 5 Exhibit 10 − REDACTED Expert Report of Birnbaum, # 6 Exhibit 11 − Sun Times Article, # 7 Exhibit 12 − January 2022 Letter, # 8 Exhibit 13 − March 2022 Letter, # 9 Exhibit 19 − Plfs Requests for Production, # 10 Exhibit 20 − Nichols Kaster Firm Resume, # 11 Exhibit 21 − Text of Proposed Order, # 12 Exhibit 22 − Westlaw Cited Cases, # 13 Declaration of R. Stephan, # 14 Exhibit A − Stephan Zouras Firm Resume, # 15 Exhibit B − Goh Approval Order, # 16 Declaration of D. Neiman, # 17 Exhibit A − Romanucci Blandin Firm Resume, # 18 Certificate of Service on Sealed Documents)(Raimey, Chloe) (Entered: 05/02/2022) |
| 05/02/2022 | 121 | NOTICE of Motion by Chloe Alexandria Raimey for presentment of motion to certify class 119 before Honorable Sharon Johnson Coleman on 5/6/2022 at 11:00 AM. (Raimey, Chloe) (Entered: 05/02/2022) |

| | | |
|---|---|---|
| 05/02/2022 | 122 | SEALED DOCUMENT by Plaintiffs James G Thomas, Roxanne G Thomas *Unredacted Memorandum and Confidential Exhibits to Declaration of M. Morgan* (Attachments: # 1 Exhibit 2 − Excerpts of 30b6 Dep., # 2 Exhibit 3 − Renewal Letter, # 3 Exhibit 4 − Billing Statement, # 4 Exhibit 5 − Timeline, # 5 Exhibit 6 − Summary Exhibit, # 6 Exhibit 7 − Filing Memorandum, # 7 Exhibit 10 − Unredacted Version of Expert Report of Birnbaum, # 8 Exhibit 14 − Email, # 9 Exhibit 15 − FAQ, # 10 Exhibit 16 − FAQ Metrics, # 11 Exhibit 17 − Ad, # 12 Exhibit 18 − Email Campaign)(Raimey, Chloe) (Entered: 05/02/2022) |
| 05/02/2022 | 123 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to seal document sealed document,, 122 (Raimey, Chloe) (Entered: 05/02/2022) |
| 05/02/2022 | 124 | NOTICE of Motion by Chloe Alexandria Raimey for presentment of motion to seal document 123 before Honorable Sharon Johnson Coleman on 5/6/2022 at 11:00 AM. (Raimey, Chloe) (Entered: 05/02/2022) |
| 05/03/2022 | 125 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs' unopposed motion for leave to exceed page limit in plaintiffs' memorandum in support of motion for class certification 118 and motion for leave to file documents under seal 123 are granted. Defendants to file a response to plaintiff's motion for class certification 119 on or before 5/31/2022. Plaintiffs to file a reply on or before 6/14/2022. Once the matter is fully briefed, the Court shall take it under advisement. No appearance necessary on 5/6/2022. As this Court's website directs, the parties must provide courtesy copies in hard copy form of all substantive and/or dispositive motions, including the corresponding legal briefs and attachments. Mailed notice. (ym, ) (Entered: 05/03/2022) |
| 05/03/2022 | 126 | MINUTE entry before the Honorable Sharon Johnson Coleman: The in−person status hearing set for 5/17/2022 is stricken. Mailed notice. (ym, ) (Entered: 05/03/2022) |
| 05/09/2022 | 127 | MINUTE entry before the Honorable Jeffrey Cole: Video status conference held. An issue came up as to whether Daubert motions would be heard by the District Court or by me. The decision on where Daubert motions should be heard is to be determined by the District Court. An inquiry to Judge Coleman's courtroom deputy of where Daubert motions should be decided, would seem to be appropriate. That way, there will be no confusion. The next video status conference is set for 6/7/22 at 11:00am. Please call (571) 353−2301, access code 509147929#. Instructions will be emailed to counsel. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 05/09/2022) |
| 05/20/2022 | 128 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to strike *the Report of Birny Birnbaum* (Lepinskas, Ronald) (Entered: 05/20/2022) |
| 05/20/2022 | 129 | MEMORANDUM by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company in support of motion to strike 128 *the Report of Birny Birnbaum* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Lepinskas, Ronald) (Entered: 05/20/2022) |
| 05/20/2022 | 130 | NOTICE of Motion by Ronald M. Lepinskas for presentment of motion to strike 128 before Honorable Sharon Johnson Coleman on 5/26/2022 at 09:15 AM. (Lepinskas, Ronald) (Entered: 05/20/2022) |
| 05/20/2022 | 131 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs to file a response to defendants' motion to strike report of Birny Birnbaum 128 on or before 6/17/2022. Defendants to file a reply on or before 7/8/2022. Once the matter is fully briefed, the Court shall take it under advisement. No appearance necessary on 5/26/2022. As this Court's website directs, the parties must provide courtesy copies in hard copy form of all substantive and/or dispositive motions, including the corresponding legal briefs and attachments. Mailed notice. (ym, ) (Entered: 05/20/2022) |

| | | |
|---|---|---|
| 05/31/2022 | 132 | RESPONSE by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to certify class 119 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N − Filed Under Seal, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Certificate of Service of Documents Filed Under Seal)(Lepinskas, Ronald) (Entered: 05/31/2022) |
| 05/31/2022 | 133 | SEALED DOCUMENT by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company *Response to Plaintiffs' Motion for Class Certification (Unredacted)* (Attachments: # 1 Exhibit N)(Lepinskas, Ronald) (Entered: 05/31/2022) |
| 05/31/2022 | 134 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to seal document sealed document 133 (Lepinskas, Ronald) (Entered: 05/31/2022) |
| 05/31/2022 | 135 | MINUTE entry before the Honorable Sharon Johnson Coleman: Defendants' motion for leave to file documents under seal 134 is granted. Mailed notice. (ym, ) (Entered: 05/31/2022) |
| 06/07/2022 | 136 | MINUTE entry before the Honorable Jeffrey Cole: Video status conference held. Fact discovery is closed. The parties have a parallel action pending in California and a class certification motion pending here. There are also expert discovery motions pending here. 131 . However it appears that Judge Coleman will be resolving those. 131 . At this time, it would seem as if there was no further action to be taken by this Court. Nonetheless before closing the referral, a further status will be held on 10/5/22 at which time there can be additional consultation with counsel. The video status is set for 10/5/22 at 9:30am. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2301, access code 509147929#. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 06/07/2022) |
| 06/14/2022 | 137 | REPLY by Plaintiffs James G Thomas, Roxanne G Thomas to motion to certify class 119 (Attachments: # 1 Index of Exhibits, # 2 Exhibit 23 (Redacted), # 3 Exhibit 24, # 4 Exhibit 25, # 5 Certificate of Service)(Schug, Robert) (Entered: 06/14/2022) |
| 06/14/2022 | 138 | SEALED EXHIBIT by Plaintiffs James G Thomas, Roxanne G Thomas regarding reply 137 (Schug, Robert) (Entered: 06/14/2022) |
| 06/14/2022 | 139 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to seal document exhibit 138 (Schug, Robert) (Entered: 06/14/2022) |
| 06/14/2022 | 140 | NOTICE of Motion by Robert L. Schug for presentment of motion to seal document 139 before Honorable Sharon Johnson Coleman on 6/17/2022 at 11:00 AM. (Schug, Robert) (Entered: 06/14/2022) |
| 06/14/2022 | 141 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs James G Thomas, Roxanne G Thomas' motion for leave to file document under seal 139 is granted. No appearance necessary on 6/17/2022. Mailed notice. (ym, ) (Entered: 06/14/2022) |
| 06/16/2022 | 142 | MOTION by Plaintiff James G Thomas to set a briefing schedule *Joint Motion to Extend Briefing Schedule* (Becvar, Teresa) (Entered: 06/16/2022) |
| 06/16/2022 | 143 | NOTICE of Motion by Teresa M. Becvar for presentment of motion by filer to set a briefing schedule 142 before Honorable Sharon Johnson Coleman on 6/27/2022 at 11:00 AM. (Becvar, Teresa) (Entered: 06/16/2022) |
| 06/16/2022 | 144 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff's joint motion to extend briefing schedule 142 is granted. Plaintiff to file a response to defendants' motion to strike 128 on or before 6/22/2022. Defendants to file a reply on or before 7/14/2022. Once the matter is fully briefed, the Court shall take it under |

| | | advisement. No appearance necessary on 6/27/2022. Mailed notice. (ym, ) (Entered: 06/16/2022) |
|---|---|---|
| 06/22/2022 | 145 | RESPONSE by James G Thomas, Roxanne G Thomasin Opposition to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to strike *the Report of Birny Birnbaum* 128 (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1 – Birnbaum Report, # 3 Exhibit 3 – Hammer Depo Excerpts, # 4 Exhibit 4 – Lyons Depo Excerpts, # 5 Exhibit 6 – Cited Westlaw Case, # 6 Certificate of Service on Sealed Documents)(Schug, Robert) (Entered: 06/22/2022) |
| 06/22/2022 | 146 | SEALED DOCUMENT by Plaintiffs James G Thomas, Roxanne G Thomas *Exhibits 2 and 5* (Attachments: # 1 Exhibit 5 – Birnbaum Rebuttal)(Schug, Robert) (Entered: 06/22/2022) |
| 06/22/2022 | 147 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas to seal document sealed document 146 (Schug, Robert) (Entered: 06/22/2022) |
| 06/22/2022 | 148 | NOTICE of Motion by Robert L. Schug for presentment of motion to seal document 147 before Honorable Sharon Johnson Coleman on 6/27/2022 at 10:00 AM. (Schug, Robert) (Entered: 06/22/2022) |
| 06/23/2022 | 149 | MINUTE entry before the Honorable Sharon Johnson Coleman:Plaintiff's motion for leave to file documents under seal 147 is granted.Exhibits 2 and 5, filed as ECF Nos. 146 and 146–1, will remain under seal. No appearance is required on the motion. (ca, ) (Entered: 06/23/2022) |
| 07/01/2022 | 150 | ORDER: The Court, in its discretion, denies defendants' motion for reconsideration brought pursuant to Federal Rule of Civil Procedure 54(b) 110 . Signed by the Honorable Sharon Johnson Coleman on 7/1/2022. Mailed notice. (ym, ) (Entered: 07/01/2022) |
| 07/14/2022 | 151 | REPLY by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to motion to strike 128 *the Expert Report of Birny Birnbaum* (Attachments: # 1 Exhibit L)(Lepinskas, Ronald) (Entered: 07/14/2022) |
| 09/09/2022 | 152 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for judgment on the pleadings *on the Filed Rate Doctrine* (Lepinskas, Ronald) (Entered: 09/09/2022) |
| 09/09/2022 | 153 | MEMORANDUM by GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company in support of motion for judgment on the pleadings 152 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Lepinskas, Ronald) (Entered: 09/09/2022) |
| 09/09/2022 | 154 | NOTICE of Motion by Ronald M. Lepinskas for presentment of motion for judgment on the pleadings 152 before Honorable Sharon Johnson Coleman on 9/14/2022 at 10:30 AM. (Lepinskas, Ronald) (Entered: 09/09/2022) |
| 09/13/2022 | 155 | MINUTE entry before the Honorable Sharon Johnson Coleman: Presentment of defendants' motion for judgment on the pleadings on the filed rate doctrine 152 set for 9/14/2022 at 10:30 AM will proceed by telephone conference. The call–in number is (877)336–1829 and the access code is 5205245. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ym, ) (Entered: 09/13/2022) |
| 09/13/2022 | | (Court only) Set/Reset Deadlines as to Motion Hearing set for 9/14/2022 at 10:30 AM. (ym, ) (Entered: 09/13/2022) |
| 09/14/2022 | 156 | MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone motion hearing held on 9/14/2022. Plaintiff to file a response to defendants' motion for judgment on the pleadings on the filed rate doctrine 152 by 10/12/2022. Defendants to file a reply by 10/26/2022. Once the matter is fully briefed, the Court shall take it |

| | | |
|---|---|---|
| | | under advisement. As this Court's website directs, the parties must provide courtesy copies in hard copy form of all substantive and/or dispositive motions, including the corresponding legal briefs and attachments. Mailed notice. (ym, ) (Entered: 09/14/2022) |
| 09/19/2022 | 157 | MINUTE entry before the Honorable Jeffrey Cole: At the Court's instance, the video status set for 10/5/22 is RESCHEDULED for 10/6/22 at 10:00am. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2301, access code 509147929#. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 09/19/2022) |
| 09/23/2022 | 158 | MOTION by Attorney Chloe A. Raimey to withdraw as attorney for James G Thomas, Roxanne G Thomas. No party information provided (Raimey, Chloe) (Entered: 09/23/2022) |
| 09/26/2022 | 159 | MINUTE entry before the Honorable Sharon Johnson Coleman: Attorney Chloe A. Raimey's motion to withdraw as counsel 158 is granted. Attorney Chloe Alexandria Raimey terminated. Mailed notice. (ym, ) (Entered: 09/26/2022) |
| 10/04/2022 | 160 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas for extension of time to file response/reply as to motion hearing,,, set motion and R&R deadlines/hearings,, 156 *Joint Motion to Extend Briefing Schedule* (Schug, Robert) (Entered: 10/04/2022) |
| 10/04/2022 | 161 | NOTICE of Motion by Robert L. Schug for presentment of motion for extension of time to file response/reply 160 before Honorable Sharon Johnson Coleman on 10/7/2022 at 09:30 AM. (Schug, Robert) (Entered: 10/04/2022) |
| 10/04/2022 | 162 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs' joint motion to extend briefing schedule 160 is granted. Plaintiffs to file a response to defendants' motion for judgment on the pleadings 152 by 10/19/2022. Defendants to file a reply by 11/9/2022. No appearance necessary on 10/7/2022. Mailed notice. (ym, ) (Entered: 10/04/2022) |
| 10/06/2022 | 163 | MINUTE entry before the Honorable Jeffrey Cole: Video status conference held and continued to 1/19/23 at 11:00am. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (571) 353−2301, access code 509147929#. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 10/06/2022) |
| 10/19/2022 | 164 | RESPONSE by James G Thomas, Roxanne G Thomasin Opposition to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for judgment on the pleadings *on the Filed Rate Doctrine* 152 (Schug, Robert) (Entered: 10/19/2022) |
| 11/01/2022 | 165 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas for leave to file *Supplemental Authority* (Attachments: # 1 Plfs' Proposed Notice of Supplemental Authority)(Schug, Robert) (Entered: 11/01/2022) |
| 11/01/2022 | 166 | NOTICE of Motion by Robert L. Schug for presentment of motion for leave to file 165 before Honorable Sharon Johnson Coleman on 11/8/2022 at 10:00 AM. (Schug, Robert) (Entered: 11/01/2022) |
| 11/02/2022 | 167 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for leave to file *Supplemental Authority* (Attachments: # 1 GEICO's Proposed Notice of Supplemental Authority)(Lepinskas, Ronald) (Entered: 11/02/2022) |
| 11/02/2022 | 168 | NOTICE of Motion by Ronald M. Lepinskas for presentment of motion for leave to file 167 before Honorable Sharon Johnson Coleman on 11/8/2022 at 10:00 AM. |

| | | |
|---|---|---|
| | | (Lepinskas, Ronald) (Entered: 11/02/2022) |
| 11/02/2022 | 169 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs' motion for leave to file supplemental authority 165 and defendants' motion for leave to file supplemental authority 167 are both granted. The Court shall give the cases cited in these motions the weight they are due, if any. No appearance necessary on 11/8/2022. Mailed notice. (ym, ) (Entered: 11/02/2022) |
| 11/09/2022 | 170 | REPLY by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to motion for judgment on the pleadings 152 *on the Filed Rate Doctrine* (Attachments: # 1 Exhibit A)(Lepinskas, Ronald) (Entered: 11/09/2022) |
| 11/15/2022 | 171 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for leave to file *Supplemental Authority* (Attachments: # 1 GEICO's Proposed Notice of Supplemental Authority)(Lepinskas, Ronald) (Entered: 11/15/2022) |
| 11/15/2022 | 172 | NOTICE of Motion by Ronald M. Lepinskas for presentment of motion for leave to file 171 before Honorable Sharon Johnson Coleman on 11/21/2022 at 09:45 AM. (Lepinskas, Ronald) (Entered: 11/15/2022) |
| 11/16/2022 | 173 | MINUTE entry before the Honorable Sharon Johnson Coleman: Defendants' motion for leave to file supplemental authority 171 is granted. The Court shall give the cases cited in the motions the weight they are due, if any. No appearance necessary on 11/21/2022. Mailed notice. (ym, ) (Entered: 11/16/2022) |
| 11/16/2022 | 174 | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas for leave to file *Sur−Reply in Opposition to GEICO's Motion for Judgment on the Pleadings on the Filed Rate Doctrine* (Attachments: # 1 Exhibit 1 − Plfs Proposed Sur−Reply)(Schug, Robert) (Entered: 11/16/2022) |
| 11/16/2022 | 175 | NOTICE of Motion by Robert L. Schug for presentment of motion for leave to file, 174 before Honorable Sharon Johnson Coleman on 11/21/2022 at 10:00 AM. (Schug, Robert) (Entered: 11/16/2022) |
| 11/18/2022 | 176 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs' motion for leave to file a Sur−Reply in Opposition to GEICO's Motion for Judgment on the Pleadings on the Filed Rate Doctrine 174 is denied. To the extent the Court finds that Defendants have raised any argument for the first time in reply, these arguments will be given the weight they are due. No appearance necessary on 11/21/2022. Mailed notice. (ym, ) (Entered: 11/18/2022) |
| 12/05/2022 | 177 | MINUTE entry before the Honorable Sharon Johnson Coleman: Oral arguments are set for 1/9/2023 at 11:00 AM as an i−person hearing in courtroom 1241. Mailed notice. (ym, ) (Entered: 12/05/2022) |
| 12/05/2022 | 178 | MINUTE entry before the Honorable Sharon Johnson Coleman: Oral arguments are set for 1/9/2023 at 11:00 AM as an i−person hearing in courtroom 1241. Mailed notice. (ym, ) (Entered: 12/05/2022) |
| 12/05/2022 | 179 | MINUTE entry before the Honorable Sharon Johnson Coleman: Oral arguments are set for 1/9/2023 at 11:00 AM as an in−person hearing in courtroom 1241. Mailed notice. (ym, ) (Entered: 12/05/2022) |
| 01/09/2023 | 180 | MINUTE entry before the Honorable Sharon Johnson Coleman: Oral argument held as to defendants' motion for judgment on the pleadings on the filed rate doctrine 152 on 1/9/2023. The matter is taken under advisement. Mailed notice. (ym, ) (Entered: 01/09/2023) |
| 01/17/2023 | 181 | MINUTE entry before the Honorable Jeffrey Cole: On the Court's own motion, the video status conference set for 1/19/23 is stricken. The next video status conference is set for 2/20/23 at 10:30am. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (650) 479−3207, access code 1807229989#. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to |

| | | future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 01/17/2023) |
|---|---|---|
| 01/25/2023 | 182 | MINUTE entry before the Honorable Jeffrey Cole: On 1/24/23 at my request, my courtroom deputy Yulonda Thomas, emailed counsel for the parties and after briefly reviewing the present status of the case, asked if counsel would be desirous of having a settlement conference. Counsel did not think that at this time, a settlement conference would be beneficial. A video status conference was set for 2/20/23. However 2/20/23 is President's Day and the Court is closed. That status conference is stricken and is RESCHEDULED for 3/22/23 at 11:00am. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (650) 479−3207, access code 1807229989#. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 01/25/2023) |
| 02/06/2023 | 183 | MEMORANDUM Opinion and Order: GEICO's motion 152 for judgment on the pleadings is denied. Signed by the Honorable Sharon Johnson Coleman on 2/6/2023. Mailed notice. (ym, ) (Entered: 02/06/2023) |
| 02/16/2023 | 184 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to Certify Filed−Rate Question For Interlocutory Appeal (Lepinskas, Ronald) (Entered: 02/16/2023) |
| 02/16/2023 | 185 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs to file a response to defendants' motion to certify filed−rate question for interlocutory appeal 184 by 3/2/2023. No reply necessary. Mailed notice. (ym, ) (Entered: 02/16/2023) |
| 03/02/2023 | 186 | RESPONSE by James G Thomas, Roxanne G Thomasin Opposition to MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to Certify Filed−Rate Question For Interlocutory Appeal 184 (Attachments: # 1 Exhibit 1 − Westlaw Cited Cases)(Schug, Robert) (Entered: 03/02/2023) |
| 03/02/2023 | 187 | MOTION by Attorney Charles A. Delbridge to withdraw as attorney for James G Thomas, Roxanne G Thomas. No party information provided (Delbridge, Charles) (Entered: 03/02/2023) |
| 03/02/2023 | 188 | NOTICE of Motion by Charles A Delbridge for presentment of motion to withdraw as attorney 187 before Honorable Sharon Johnson Coleman on 3/8/2023 at 10:00 AM. (Delbridge, Charles) (Entered: 03/02/2023) |
| 03/03/2023 | 189 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs' motion to withdraw Charles A. Delbridge as counsel 187 is granted. Attorney Charles A Delbridge terminated. No appearance necessary on 3/8/2023. Mailed notice. (ym, ) (Entered: 03/03/2023) |
| 03/03/2023 | 190 | MINUTE entry before the Honorable Sharon Johnson Coleman: GEICO's motion to certify filed−rate question for interlocutory appeal 184 is granted. A district court may certify an order for interlocutory appeal if order (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Each criteria is met here. First, there is a controlling question of law that is purely legal: namely, whether under Illinois law, application of the filed−rate doctrine requires that the state agency in question has the authority to set, approve, or disapprove the challenged rates. Second, there is substantial ground for difference of opinion. As this court explained in its Order of February 6, 2023 183 , the legal question here has not been answered by the Illinois Supreme Court, and holdings from an Illinois intermediate appellate court and the Seventh Circuit appear to be at odds with one another. Third, an immediate appeal here may advance the ultimate termination of this litigation. Reversal of this Court's Order denying GEICO's Motion for Judgment on the Pleadings would likely terminate this litigation. Therefore, GEICO's motion 184 is granted, and the Court's Order of February 6, 2023 183 is certified for interlocutory appeal. This matter is hereby stayed, and the pending motions for class certification 119 and to strike the |

| | | |
|---|---|---|
| | | expert report of Birny Birnbaum <u>128</u> are vacated without prejudice, pending a decision on this interlocutory appeal from the Seventh Circuit. Mailed notice. (ym, ) (Entered: 03/03/2023) |
| 03/16/2023 | <u>191</u> | MINUTE entry before the Honorable Jeffrey Cole: In light of Judge Coleman's Order of 3/3/2023 <u>190</u> , the video status conference previously set for 3/22/23 is cancelled. Counsel should contact my courtroom deputy, Yulonda Thomas at 312−408−5178, upon receipt of a decision by the Court of Appeals on the defendant's Interlocutory Appeal. Emailed notice (yt) (Entered: 03/16/2023) |
| 04/05/2023 | <u>192</u> | CERTIFIED copy of order dated 04/05/2023 from the 7th Circuit, Appellate case no.: 23−8007; IT IS ORDERED that the motion to file a reply is GRANTED, and the court reviewed the tendered reply. IT IS FURTHER ORDERED that the petition for permission to appeal is DENIED. Because the controlling issue certified for interlocutory appeal is one of state law, we cannot answer it definitively. Only the Illinois state courts can do that. The district court may want to consider inviting the views of the Illinois Department of Insurance, whose powers and regulatory practices seem to be at the center of the debate. (axk, ) (Entered: 04/05/2023) |
| 04/05/2023 | <u>193</u> | MINUTE entry before the Honorable Sharon Johnson Coleman: An in−person status hearing is set for 5/2/2023 at 10:45 AM. Mailed notice. (ym,) (Entered: 04/05/2023) |
| 04/26/2023 | <u>194</u> | NOTICE by Nicole Mirjanich, R of Change of Address *Notice of change of Name* (Mirjanich, Nicole) (Entered: 04/26/2023) |
| 05/02/2023 | <u>195</u> | MINUTE entry before the Honorable Sharon Johnson Coleman: Status hearing held on 5/2/2023. By agreement of the parties, the Court will have Plaintiffs' motion for class certification <u>119</u> and Defendants' motion to strike report of Burny Birnbaum <u>128</u> . The matters are taken under advisement. Mailed notice. (ym,) (Entered: 05/03/2023) |
| 05/02/2023 | <u>196</u> | MOTION by Plaintiffs James G Thomas, Roxanne G Thomas for class certification. (ym,) (Entered: 05/03/2023) |
| 05/02/2023 | <u>197</u> | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to strike report of Birny Birnbaum. (ym,) (Entered: 05/03/2023) |
| 05/04/2023 | <u>198</u> | MINUTE entry before the Honorable Jeffrey Cole: Video Status Conference is set for 5/11/23 at 11:00am. Instructions will be emailed to counsel. Members of the public and media will be able to call in to listen to this hearing. Please call (650) 479−3207, access code 1807229989#. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Emailed notice (yt) (Entered: 05/04/2023) |
| 05/09/2023 | <u>199</u> | MINUTE entry before the Honorable Jeffrey Cole: Plaintiff's counsel has sent an email to my courtroom deputy, Yulonda Thomas, on behalf of all the parties. In it, counsel states that the parties request that the Court adjourn the status hearing scheduled for 5/11/23 at 11:00am. The email states that "Judge Coleman reinstated Plaintiffs' motion for class certification and GEICO's motion to strike the report of Plaintiffs' expert." (See ECF Nos. 195, 196, 197.) Since the email asserts "there is no open discovery while the Court considers these motions," the emailrequests that "the status hearing be adjourned for a date after the motions are decided." Accordingly, the 5/11/23 video status conference is stricken until after the motions have been decided by the District Court. Emailed notice (yt) (Entered: 05/09/2023) |
| 12/28/2023 | <u>200</u> | ANNUAL REMINDER: Pursuant to <u>Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information</u> |

| | | previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023) |
|---|---|---|
| 01/04/2024 | 201 | MINUTE entry before the Honorable Sharon Johnson Coleman: Oral arguments as to plaintiffs' motion for class certification 196 and defendants' motion to strike report of Birny Birnbaum 197 is set for 1/16/2024 at 1:30 PM as an in−person hearing in courtroom 1241. Mailed notice. (ym) (Entered: 01/04/2024) |
| 01/16/2024 | 202 | MINUTE entry before the Honorable Sharon Johnson Coleman: Oral arguments held on 1/16/2024 as to plaintiffs' motion for class certification 196 and defendants' motion to strike report of Briny Birnbaum 197 . The Court takes the matters under advisement. Mailed notice. (ym) (Entered: 01/16/2024) |
| 01/25/2024 | 203 | MOTION by Plaintiff James G Thomas for leave to file *Notice of Supplemental Authority*<br><br>Presented before District Judge<br><br>(Attachments: # 1 Exhibit Exhibit A)(Becvar, Teresa) (Entered: 01/25/2024) |
| 01/25/2024 | 204 | NOTICE of Motion by Teresa M. Becvar for presentment of motion for leave to file 203 before Honorable Sharon Johnson Coleman on 2/6/2024 at 10:00 AM. (Becvar, Teresa) (Entered: 01/25/2024) |
| 01/25/2024 | 205 | MOTION by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company for leave to file *Notice of Supplemental Authority*<br><br>Presented before District Judge<br><br>(Attachments: # 1 Exhibit A − D)(Lepinskas, Ronald) (Entered: 01/25/2024) |
| 01/25/2024 | 206 | NOTICE of Motion by Ronald M. Lepinskas for presentment of motion for leave to file, 205 before Honorable Sharon Johnson Coleman on 2/6/2024 at 10:00 AM. (Lepinskas, Ronald) (Entered: 01/25/2024) |
| 02/05/2024 | 207 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs' motion for leave to file supplemental authority 203 and defendants' motion for leave to file supplemental authority 205 are both denied. No appearance necessary on 2/6/2024. Mailed notice. (ym) (Entered: 02/05/2024) |
| 03/12/2024 | 208 | MEMORANDUM Opinion and Order: The Court grants Defendants' motion to strike Birnbaum's expert report 197 and denies Plaintiffs' motion for class certification 196 . The Court gives Plaintiffs 30 days to cure these deficiencies. Signed by the Honorable Sharon Johnson Coleman on 3/12/2024. Mailed notice. (ym) (Entered: 03/12/2024) |
| 03/12/2024 | 209 | MINUTE entry before the Honorable Sharon Johnson Coleman: On January 16, 2024, during oral argument, Plaintiffs requested for issuance of notice be postponed for 90 days to get discovery related to Birnbaum needing GEICO's records to assess the end date of the methodology calculation. Because the Court granted the Defendants' motion to strike 208 , Plaintiffs' oral motion is moot. Mailed notice. (ym) (Entered: 03/12/2024) |
| 04/11/2024 | 210 | SUPPLEMENT to order on motion to certify class,, order on motion to strike,, memorandum opinion and order,, set case scheduling order, 208 *Plaintiffs' Supplemental Brief Supporting the Reliability of the Damages Methodology of Expert Birny Birnbaum* (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D)(Becvar, Teresa) (Entered: 04/11/2024) |
| 04/14/2024 | 211 | TRANSCRIPT OF PROCEEDINGS held on 1/16/2024 before the Honorable Sharon Johnson Coleman. Order Number: 48285, 48445. Court Reporter Contact Information: TRACEY D. McCULLOUGH, 312−435−5570, tracey_mccullough@ilnd.uscourts.gov. |

| | | |
|---|---|---|
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 5/6/2024. Redacted Transcript Deadline set for 5/15/2024. Release of Transcript Restriction set for 7/15/2024. (Mccullough, Tracey) (Entered: 04/14/2024) |
| 04/17/2024 | 212 | MINUTE entry before the Honorable Sharon Johnson Coleman: Defendants to file a response to plaintiffs' supplemental brief supporting the reliability of the damages methodology of expert Birny Birnbaum 210 by 5/8/2024. Plaintiffs to file a reply by 5/22/2024. Once the matter is fully briefed, the Court shall take it under advisement. Mailed notice. (ym) (Entered: 04/17/2024) |
| 05/08/2024 | 213 | RESPONSE by Defendants GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company to supplement, 210 (Lepinskas, Ronald) (Entered: 05/08/2024) |
| 05/22/2024 | 214 | REPLY by Plaintiff James G Thomas to supplement, 210 *Plaintiffs' Reply Brief Supporting the Reliability of The Damages Methodology of Expert Birny Birnbaum* (Attachments: # 1 Exhibit Exhibit A)(Becvar, Teresa) (Entered: 05/22/2024) |
| 08/28/2024 | 215 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiffs request this Court to reconsider its judgment granting Defendant's motion to strike expert Birny Birnbaum's testimony 208 . Plaintiffs label their current motion as a "supplemental brief," but request the Court reconsider its March 12, 2024, opinion. Therefore, the Court applies a motion to reconsider standard to this present motion. A court has broad discretion to revisit its interlocutory orders. See Solis v. Current Dev. Corp., 557 F.3d 772, 780 (7th Cir. 2009). A court will grant a motion to reconsider only for "compelling reasons," like a change in, or clarification of, the law, "not for addressing arguments that a party should have raised earlier." Id. Plaintiffs are not entitled to another bite at the apple. The Court was clear in its order when it stated that Birnbaum fails to cite a recognized methodology that mirrors Birnbaum's reasonable premium relief. When the Court gave Plaintiffs leave to "cure the deficiencies," it was to allow Plaintiffs to point to a methodology that Birnbaum relies on, which is reflective of reasonable premium relief. It was not an invitation for Plaintiffs to rehash old arguments, and insert some new, that do not address the Court's core discomfort with the presentation of Birnbaum's methodology. The Court acknowledges that Plaintiffs argue that Birnbaum's supplemental declaration suggests "the difference between the premium calculated using the initial proposed rates versus the lower reasonable rates could be considered 'damages' to consumers who paid the excessive rates." But, again, such statement does not point to a methodology that says so, instead it is Birnbaum's statement. As the Court explained in its order, it cannot simply rely on Birnbaum's say so, "it is the opinion connected to existing data only by the ipse dixit of the expert that is properly excluded." See Gopalratnam v. Hewlett–Packard Co., 877 F.3d 771, 781 (7th Cir. 2017). The Court respectfully denies Plaintiffs motion 210 . Mailed notice. (ym) (Entered: 08/28/2024) |
| 08/29/2024 | 216 | MINUTE entry before the Honorable Sharon Johnson Coleman: An in–person status hearing is set for 9/16/2024 at 10:00 AM. Mailed notice. (ym) (Entered: 08/29/2024) |